Electronically Filed
6/17/2019 4:00 PM
Fourth Judicial District, Ada County
Phil McGrane, Clerk of the Court
By: Timothy Lamb, Deputy Clerk

Wayne Meuleman, ISB #1419
Joe Meuleman, ISB #8029
Joseph F. Southers, ISB #9568
MEULEMAN LAW GROUP PLLC
950 West Bannock Street Suite 490
Boise, Idaho 83702
(208) 472-0066 Telephone
(208) 472-0067 Facsimile
wmeuleman@meulemanlaw.com
jmeuleman@meulemanlaw.com
jsouthers@meulemanlaw.com
I:\8335.006\PLD\Amended Complaint 190617.docx

Attorneys for Plaintiffs

## IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT

## OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

| | |
|---|---|
| SBP LLLP, an Idaho limited liability limited partnership; JRS PROPERTIES III LP, an Idaho limited partnership; and J.R. SIMPLOT FOUNDATION, INC., an Idaho corporation,<br><br>      Plaintiffs,<br><br>  vs.<br><br>HOFFMAN CONSTRUCTION COMPANY OF AMERICA, an Oregon corporation,<br><br>      Defendant. | Case No. CV01-19-10818<br><br>**AMENDED COMPLAINT AND APPLICATION TO STAY ARBITRATION** |

Plaintiffs SBP LLLP, an Idaho limited liability limited partnership ("SBP");

JRS Properties III LP, an Idaho limited partnership ("Properties"); and J.R. Simplot

Foundation, Inc., an Idaho corporation ("Foundation") (collectively, "Plaintiffs"),

by and through their counsel of record, Meuleman Law Group PLLC, for causes of

action against Defendant Hoffman Construction Company of America

("Hoffman"), complain and allege as follows:

AMENDED COMPLAINT AND APPLICATION TO STAY ARBITRATION –
Page 1



## PARTIES

1.      SBP is and at all times material hereto an Idaho limited liability limited partnership in good standing and authorized to do business in the State of Idaho.

2.      Properties is and at all times material hereto an Idaho limited partnership in good standing and authorized to do business in the State of Idaho.

3.      Foundation is and at all times material hereto an Idaho corporation in good standing and authorized to do business in the State of Idaho.

4.      Plaintiffs are informed and believe that at all times material hereto, Hoffman is and was an Oregon corporation authorized to do business in the State of Idaho, with an office in Boise, Idaho.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this matter pursuant to Idaho Code § 1-705.

6.      Venue is appropriate in this Court pursuant to Idaho Code § 5-404.

## GENERAL ALLEGATIONS

7.      On or about October 14, 2009, SBP entered into a written agreement ("SBP Agreement") with Hoffman whereby, among other things, Hoffman agreed to provide services and work as construction manager consistent with the interest of SBP to construct certain improvements on real property located in Ada County and owned by SBP commonly known as Office Complex and Related Facilities. A true and correct copy of the executed SBP Agreement, as amended, is attached hereto as Exhibit A.

8.      The SBP Agreement does not include an arbitration provision.

9.      Section 9.1 of the SBP Agreement, entitled Dispute Resolution, states as follows:

> In an effort to resolve any claim, dispute or other matter in question arising out of or related to this Agreement or breach thereof, either party may request mediation in accordance with the Construction Industry Mediation Rules of the American Arbitration Association, the costs of which shall be equally shared by the parties.

10.     On or about January 9, 2012, Properties entered into a written agreement ("Properties Agreement") with Hoffman whereby, among other things, Hoffman agreed to provide services and work as construction manager consistent with the interest of Properties to construct certain improvements on real property located in Ada County and owned by Properties commonly known as Demolition of Existing Structures, Site Preparation and Project Mobilization. A true and correct copy of the executed Properties Agreement is attached hereto as Exhibit B.

11.     The Properties Agreement does not include an arbitration provision.

12.     Section 9.1 of the Properties Agreement, entitled Dispute Resolution, states as follows:

> In an effort to resolve any claim, dispute or other matter in question arising out of or related to this Agreement or breach thereof, either party may request mediation in accordance with the Construction Industry Mediation Rules of the American Arbitration Association, the costs of which shall be equally shared by the parties.

13.     On or about February 8, 2010, Foundation entered into a written agreement ("Foundation Agreement") with Hoffman whereby, among other things, Hoffman agreed to provide services and work as construction manager consistent with the interest of Foundation to construct certain improvements on real property located in Ada County and owned by Foundation commonly known as Simplot Foundation Park and Studio Complex. A true and correct copy of the executed Foundation Agreement is attached hereto as Exhibit C.

14.     The Foundation Agreement does not include an arbitration provision.

15.     Section 9.1 of the Foundation Agreement, entitled Dispute Resolution, states as follows:

> In an effort to resolve any claim, dispute or other matter in question arising out of or related to this Agreement or breach thereof, either party may request mediation in accordance with the Construction Industry Mediation Rules of the American Arbitration Association, the costs of which shall be equally shared by the parties.

16.     On or about June 5, 2019, Hoffman filed a Demand for Arbitration against Plaintiffs with the American Arbitration Association. Hoffman's Demand seeks to arbitrate Hoffman's disputes arising out of the SBP Agreement, Properties Agreement and Foundations Agreement (collectively, "Agreements") in a single arbitration against Plaintiffs.

## FIRST CAUSE OF ACTION
### For Declaratory Relief under Idaho Code § 10-1201, *et seq.*, Construing the SBP Agreement, Properties Agreement and Foundation Agreement Dispute Resolution Provision

17.     Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 16, inclusive, as though fully set forth herein.

18.     SBP and Hoffman have disputed and still dispute whether an arbitration agreement governs their relationship under the SBP Agreement.

19.     Properties and Hoffman have disputed and still dispute whether an arbitration agreement governs their relationship under the Properties Agreement.

20.     Foundation and Hoffman have disputed and still dispute whether an arbitration agreement governs their relationship under the Foundation Agreement.

AMENDED COMPLAINT AND APPLICATION TO STAY ARBITRATION –
Page 4

21.     Pursuant to Idaho Code § 10-1201, Plaintiffs are entitled to declaratory relief by the Court determining that the Agreements do not include agreements to arbitrate with Hoffman.

### SECOND CAUSE OF ACTION
**For Stay of Arbitration Demanded by Hoffman
under Idaho Code § 7-902(b)**

22.     Plaintiffs repeat and reallege each and every allegation set forth in Paragraphs 1 through 21, inclusive, as though fully set forth herein.

23.     Hoffman filed the Demand before Plaintiffs filed this action.

24.     Pursuant to Idaho Code § 7-902(b), this Court has authority to stay the arbitration sought in the Demand because there is no agreement to arbitrate.

### ATTORNEYS' FEES AND COSTS

Plaintiffs have been required to retain the services of an attorney to bring this suit and are entitled to an award of reasonable attorneys' fees and costs incurred pursuant to Idaho Code §§ 10-1210, 12-120 and 12-121, and Rule 54 of the Idaho Rules of Civil Procedure.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for relief against Hoffman as follows:

A.     As to the First Cause of Action, the entry of judgment in favor of Plaintiffs against Hoffman as follows:

1.     For a declaration under Idaho Code § 10-1201 determining that none of the Plaintiffs agreed to arbitrate disputes with Hoffman;

2.     For reasonable attorneys' fees;

3.     For costs of suit herein; and

4.     For such other and further relief as the Court deems just and proper.

B.    As to the Second Cause of Action, the entry of an order under Idaho Code § 7-902(b) staying the arbitration sought in the Demand.

DATED this __17th__ day of June, 2019.

Joe Meuleman, Attorney for Plaintiffs

# ⏚AIA® Document A121™CMc – 2003 and AGC Document 565

## *Standard Form of Agreement Between Owner and Construction Manager* where the *Construction Manager is Also the Constructor*

**AGREEMENT** made as of the First day of December in the year Two Thousand Eight
*(In words, indicate day, month and year.)*

**BETWEEN** the Owner:
*(Name and address)*

SBP LLLP
999 Main Street, Suite 1300
Boise Idaho
USA        83702

and the Construction Manager:
*(Name and address)*

Hoffman Construction Company of America
805 SW Broadway Suite 2100
Portland, Oregon
USA        97205

The Project is:
*(Name, address and brief description)*

Office Complex & Related Facilities
Boise Idaho
Boise Mixed Use Development (Project Idaho)

The Architect is:
*(Name and address)*

Architect Susan Desko AIA -- Lead (Design) Architect
Adamson Associates, AAIArchitects Inc. -- Executive Architect and Payment Certifier

The Owner and Construction Manager agree as set forth below:
**The Project includes approximately 180,000 square feet of office space and
approximately 20,000 square feet of cafeteria, tribute space (office reception) and
conference facilities and approximately 300,000 square feet of parking facilities and
support facilities.**

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

The 1997 Edition of AIA Document A201, General Conditions of the Contract for Construction, is referred to herein. This Agreement requires modification if other general conditions are utilized.

**Init.**

**/**

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 20:55:53 on 05/26/2009 under Order No.1000365170_1 which expires on 1/19/2010, and is not for resale.
User Notes:                                                                                                    (2075910671)

1

**EXHIBIT A**

TABLE OF CONTENTS
ARTICLE 1    GENERAL PROVISIONS
§ 1.1 Relationship of the Parties
§ 1.2 General Conditions

ARTICLE 2    CONSTRUCTION MANAGER'S RESPONSIBILITIES
§ 2.1 Preconstruction Phase
§ 2.2 Guaranteed Maximum Price Proposal and Contract Time
§ 2.3 Construction Phase
§ 2.4 Professional Services
§ 2.5 Hazardous Materials

ARTICLE 3    OWNER'S RESPONSIBILITIES
§ 3.1 Information and Services
§ 3.2 Owner's Designated Representative
§ 3.3 Architect
§ 3.4 Legal Requirements

ARTICLE 4    COMPENSATION AND PAYMENTS FOR PRECONSTRUCTION PHASE SERVICES
§ 4.1 Compensation
§ 4.2 Payments

ARTICLE 5    COMPENSATION FOR CONSTRUCTION PHASE SERVICES
§ 5.1 Compensation
§ 5.2 Guaranteed Maximum Price
§ 5.3 Changes in the Work

ARTICLE 6    COST OF THE WORK FOR CONSTRUCTION PHASE
§ 6.1 Costs to Be Reimbursed
§ 6.2 Costs Not to Be Reimbursed
§ 6.3 Discounts, Rebates and Refunds
§ 6.4 Accounting Records

ARTICLE 7    CONSTRUCTION PHASE
§ 7.1 Progress Payments
§ 7.2 Final Payment

ARTICLE 8    INSURANCE AND BONDS
§ 8.1 Insurance Required of the Construction Manager
§ 8.2 Insurance Required of the Owner
§ 8.3 Performance Bond and Payment Bond

ARTICLE 9    MISCELLANEOUS PROVISIONS
§ 9.1 Dispute Resolution
§ 9.2 Other Provisions

ARTICLE 10    TERMINATION OR SUSPENSION
§ 10.1 Termination Prior to Establishing Guaranteed Maximum Price
§ 10.2 Termination Subsequent to Establishing Guaranteed Maximum Price
§ 10.3 Suspension

ARTICLE 11    OTHER CONDITIONS AND SERVICES

Init.

/

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 20:55:53 on 05/26/2009 under Order No.1000385170_1 which expires on 1/19/2010, and is not for resale.
User Notes:                                                                                                          (2075910671)

## ARTICLE 1   GENERAL PROVISIONS
### § 1.1 RELATIONSHIP OF PARTIES
The Construction Manager accepts the relationship of trust and confidence established with the Owner by this Agreement, and covenants with the Owner to furnish the Construction Manager's reasonable skill and judgment and to cooperate with the Architect in furthering the interests of the Owner. The Construction Manager shall furnish construction administration and management services and use the Construction Manager's best efforts to perform the Project in an expeditious and economical manner consistent with the interests of the Owner and consistent with the level of skill, experience and expertise as represented in the Construction Manager's proposal dated October 15, 2008 (the "CM Proposal") which is incorporated herein by this reference. The Owner shall endeavor to promote harmony and cooperation among the Owner, Architect, Construction Manager and other persons or entities employed by the Owner for the Project.

### § 1.2 GENERAL CONDITIONS
For the Construction Phase, the General Conditions of the contract shall be the AIA® Document A201™–1997, General Conditions of the Contract for Construction, as modified , which is incorporated herein by reference. For the Preconstruction Phase, or in the event that the Preconstruction and Construction Phases proceed concurrently, A201™–1997 shall apply to the Preconstruction Phase only as specifically provided in this Agreement. The term "Contractor" as used in A201™–1997 shall mean the Construction Manager.

## ARTICLE 2   CONSTRUCTION MANAGER'S RESPONSIBILITIES
The Construction Manager shall perform the services described in this Article and in the CM Proposal. The services to be provided under Sections 2.1 and 2.2 constitute the Preconstruction Phase services. If the Owner and Construction Manager agree, after consultation with the Architect, the Construction Phase may commence before the Preconstruction Phase is completed, in which case both phases will proceed concurrently.

### § 2.1 PRECONSTRUCTION PHASE
### § 2.1.1 PRELIMINARY EVALUATION
The Construction Manager shall provide a preliminary evaluation of the Owner's program and Project budget requirements, each in terms of the other.

### § 2.1.2 CONSULTATION
The Construction Manager with the Architect shall jointly schedule and attend regular meetings with the Owner. The Construction Manager shall consult with the Owner and Architect regarding site use and improvements and the selection of materials, building systems and equipment. The Construction Manager shall provide recommendations on construction feasibility; actions designed to minimize adverse effects of labor or material shortages; time requirements for procurement, installation and construction completion; and factors related to construction cost, including estimates of alternative designs or materials, preliminary budgets and possible economies.

### § 2.1.3 PRELIMINARY PROJECT SCHEDULE
When Project requirements described in Section 3.1.1 have been sufficiently identified, the Construction Manager shall prepare, and periodically update, a preliminary Project schedule for the Architect's review and the Owner's approval. The Construction Manager shall obtain the Architect's approval of the portion of the preliminary Project schedule relating to the performance of the Architect's services. The Construction Manager shall coordinate and integrate the preliminary Project schedule with the services and activities of the Owner, Architect and Construction Manager. As design proceeds, the preliminary Project schedule shall be updated to indicate proposed activity sequences and durations, milestone dates for receipt and approval of pertinent information, submittal of a Guaranteed Maximum Price proposal, preparation and processing of shop drawings and samples, delivery of materials or equipment requiring long-lead-time procurement, Owner's occupancy requirements showing portions of the Project having occupancy priority, and proposed date of Substantial Completion. If preliminary Project schedule updates indicate that previously approved schedules may not be met, the Construction Manager shall make appropriate recommendations to the Owner and Architect.

### § 2.1.4 PHASED CONSTRUCTION
The Construction Manager shall make recommendations to the Owner and Architect regarding the phased issuance of Drawings and Specifications to facilitate phased construction of the Work, if such phased construction is appropriate

**Init.**

**/**

**AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 20:55:53 on 05/26/2009 under Order No.1000385170_1 which expires on 1/19/2010, and is not for resale.
User Notes:**                                                                                    (2075910671)

for the Project, taking into consideration such factors as economies, time of performance, availability of labor and materials, and provisions for temporary facilities.

### § 2.1.5 PRELIMINARY COST ESTIMATES

§ 2.1.5.1 When the Owner has sufficiently identified the Project requirements and the Architect has prepared other basic design criteria, the Construction Manager shall prepare, for the review of the Architect and approval of the Owner, a preliminary cost estimate utilizing area, volume or similar conceptual estimating techniques.

§ 2.1.5.2 When Schematic Design Documents have been submitted by the Owner for approval by the Owner, the Construction Manager shall prepare, for the review of the Architect and approval of the Owner, a more detailed estimate with supporting data. During the preparation of the Design Development Documents, the Construction Manager shall update and refine this estimate at appropriate intervals agreed to by the Owner, Architect and Construction Manager.

§ 2.1.5.3 When Design Development Documents have been prepared by the Architect and approved by the Owner, the Construction Manager shall prepare a detailed estimate with supporting data for review by the Architect and approval by the Owner. During the preparation of the Construction Documents, the Construction Manager shall update and refine this estimate at appropriate intervals agreed to by the Owner, Architect and Construction Manager.

§ 2.1.5.4 If any estimate submitted to the Owner exceeds previously approved estimates or the Owner's budget, the Construction Manager shall make appropriate recommendations to the Owner and Architect. In the event such detailed estimate indicates that the Cost of the Work for all or any portion of the Project exceeds the amount previously estimated, the Construction Manager will coordinate with the Architect who shall revise the design in order to reduce the estimated Cost of the Work of the Project or to take other action as may be authorized by the Owner.

### § 2.1.6 SUBCONTRACTORS AND SUPPLIERS

The Construction Manager shall seek to develop subcontractor interest in the Project and shall furnish to the Owner and Architect for their information a list of possible subcontractors, including suppliers who are to furnish materials or equipment fabricated to a special design, from whom proposals will be requested for each principal portion of the Work. The Architect will promptly reply in writing to the Construction Manager if the Architect or Owner know of any objection to such subcontractor or supplier. The receipt of such list shall not require the Owner or Architect to investigate the qualifications of proposed subcontractors or suppliers, nor shall it waive the right of the Owner or Architect later to object to or reject any proposed subcontractor or supplier.

### § 2.1.7 LONG-LEAD-TIME ITEMS

The Construction Manager shall recommend to the Owner and Architect a schedule for procurement of long-lead-time items which will constitute part of the Work as required to meet the Project schedule. If such long-lead-time items are procured by the Owner, they shall be procured on terms and conditions acceptable to the Construction Manager. Upon the Owner's acceptance of the Construction Manager's Guaranteed Maximum Price proposal, all contracts for such items shall be assigned by the Owner to the Construction Manager, who shall accept responsibility for such items as if procured by the Construction Manager. The Construction Manager shall expedite the delivery of long-lead-time items.

### § 2.1.8 EXTENT OF RESPONSIBILITY

The Construction Manager does not warrant or guarantee estimates and schedules except as may be included as part of the Guaranteed Maximum Price. The recommendations and advice of the Construction Manager concerning design alternatives shall be subject to the review and approval of the Owner and the Owner's professional consultants. It is not the Construction Manager's responsibility to ascertain that the Drawings and Specifications are in accordance with applicable laws, statutes, ordinances, building codes, rules and regulations. However, the Construction Manager shall use diligence in its review of the Drawings and Specifications and if that review indicates that any portion of the Drawings or Specifications are at variance therewith, the Construction Manager shall promptly notify the Architect and Owner in writing.

### § 2.1.9 EQUAL EMPLOYMENT OPPORTUNITY AND AFFIRMATIVE ACTION

The Construction Manager shall comply with applicable laws, regulations and special requirements of the Contract Documents regarding equal employment opportunity and affirmative action programs.

**Init.**

**/**

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 20:55:53 on 05/26/2009 under Order No 1000385170_1 which expires on 1/19/2010, and is not for resale.
User Notes:                                                                                    (2075910671)

## § 2.2 GUARANTEED MAXIMUM PRICE PROPOSAL AND CONTRACT TIME

§ 2.2.1 When the Drawings and Specifications are sufficiently complete, the Construction Manager shall propose a Guaranteed Maximum Price, which shall be the sum of the estimated Cost of the Work and the Construction Manager's Fee.

§ 2.2.2 As the Drawings and Specifications may not be finished at the time the Guaranteed Maximum Price proposal is prepared, the Construction Manager shall provide in the Guaranteed Maximum Price for further development of the Drawings and Specifications by the Architect that is consistent with the Contract Documents and reasonably inferable therefrom. Such further development does not include such things as changes in scope, systems, kinds and quality of materials, finishes or equipment, all of which, if required, shall be incorporated by Change Order.

§ 2.2.3 The estimated Cost of the Work shall include the Construction Manager's contingency, a sum established by the Construction Manager for the Construction Manager's exclusive use to cover costs arising under Section 2.2.2 and other costs which are properly reimbursable as Cost of the Work but not the basis for a Change Order.

## § 2.2.4 BASIS OF GUARANTEED MAXIMUM PRICE

The Construction Manager shall include with the Guaranteed Maximum Price proposal a written statement of its basis, which shall include:

  .1  A list of the Drawings and Specifications, including all addenda thereto and the Conditions of the
      Contract, which were used in preparation of the Guaranteed Maximum Price proposal.
  .2  A list of allowances and a statement of their basis.
  .3  A list of the clarifications and assumptions made by the Construction Manager in the preparation of the
      Guaranteed Maximum Price proposal to supplement the information contained in the Drawings and
      Specifications.
  .4  The proposed Guaranteed Maximum Price, including a statement of the estimated cost organized by
      trade categories, allowances, contingency, and other items and the Fee that comprise the Guaranteed
      Maximum Price.
  .5  The Date of Substantial Completion upon which the proposed Guaranteed Maximum Price is based,
      and a schedule of the Construction Documents issuance dates upon which the date of Substantial
      Completion is based.

§ 2.2.5 The Construction Manager shall meet with the Owner and Architect to review the Guaranteed Maximum Price proposal and the written statement of its basis. In the event that the Owner or Architect discover any inconsistencies or inaccuracies in the information presented, they shall promptly notify the Construction Manager, who shall make appropriate adjustments to the Guaranteed Maximum Price proposal, its basis, or both.

§ 2.2.6 Unless the Owner accepts the Guaranteed Maximum Price proposal in writing on or before the date specified in the proposal for such acceptance and so notifies the Construction Manager, the Guaranteed Maximum Price proposal shall not be effective without written acceptance by the Construction Manager.

§ 2.2.7 Prior to the Owner's acceptance of the Construction Manager's Guaranteed Maximum Price proposal and issuance of a Notice to Proceed, the Construction Manager shall not incur any cost to be reimbursed as part of the Cost of the Work, except as the Owner may specifically authorize in writing.

§ 2.2.8 Upon acceptance by the Owner of the Guaranteed Maximum Price proposal, the Guaranteed Maximum Price and its basis shall be set forth in Amendment No. 1. The Guaranteed Maximum Price shall be subject to additions and deductions by a change in the Work as provided in the Contract Documents, and the Date of Substantial Completion shall be subject to adjustment as provided in the Contract Documents.

§ 2.2.9 The Owner shall authorize and cause the Architect to revise the Drawings and Specifications to the extent necessary to reflect the agreed-upon assumptions and clarifications contained in Amendment No. 1. Such revised Drawings and Specifications shall be furnished to the Construction Manager in accordance with schedules agreed to by the Owner, Architect and Construction Manager. The Construction Manager shall promptly notify the Architect and Owner if such revised Drawings and Specifications are inconsistent with the agreed-upon assumptions and clarifications.

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 20:55:53 on 05/26/2009 under Order No.1000385170_1 which expires on 1/19/2010, and is not for resale.
User Notes:                                                                                          (2075910671)

§ **2.2.10** The Guaranteed Maximum Price shall include in the Cost of the Work only those taxes which are enacted at the time the Guaranteed Maximum Price is established.

### § 2.3 CONSTRUCTION PHASE
### § 2.3.1 GENERAL
§ **2.3.1.1** The Construction Phase shall commence on the earlier of:

      (1)   the Owner's acceptance of the Construction Manager's Guaranteed Maximum Price proposal and issuance of a Notice to Proceed, or

      (2)   the Owner's first authorization to the Construction Manager to:

           (a) award a subcontract, or

           (b) undertake construction Work with the Construction Manager's own forces, or

           (c) issue a purchase order for materials or equipment required for the Work.

### § 2.3.2 ADMINISTRATION
§ **2.3.2.1** Except as expressly authorized by the Owner in writing, all Work shall be performed under construction Subcontracts or by other appropriate agreements with the Construction Manager, the terms of such Subcontracts or other appropriate agreements shall be subject to mutual agreement between the Owner and the Construction Manager. The Construction Manager shall obtain bids from Subcontractors and from suppliers of materials or equipment fabricated to a special design for the Work from the list previously reviewed and, after analyzing such bids, shall deliver such bids to the Owner and Architect. The Owner will then determine, with the advice of the Construction Manager and subject to the reasonable objection of the Architect, which bids will be accepted. The Owner may designate specific persons or entities from whom the Construction Manager shall obtain bids; however, if the Guaranteed Maximum Price has been established, the Owner may not prohibit the Construction Manager from obtaining bids from other qualified bidders. The Construction Manager shall not be required to contract with anyone to whom the Construction Manager has reasonable objection.

§ **2.3.2.2** If the Guaranteed Maximum Price has been established and a specific bidder among those whose bids are delivered by the Construction Manager to the Owner and Architect (1) is recommended to the Owner by the Construction Manager; (2) is qualified to perform that portion of the Work; and (3) has submitted a bid which conforms to the requirements of the Contract Documents without reservations or exceptions, but the Owner requires that another bid be accepted, then the Construction Manager may require that a change in the Work be issued to adjust the Contract Time and the Guaranteed Maximum Price by the difference between the bid of the person or entity recommended to the Owner by the Construction Manager and the amount of the subcontract or other agreement actually signed with the person or entity designated by the Owner.

§ **2.3.2.3** Subcontracts and agreements with suppliers furnishing materials or equipment fabricated to a special design shall conform to the payment provisions of Sections 7.1.8 and 7.1.9 and shall not be awarded on the basis of cost plus a fee without the prior consent of the Owner.

§ **2.3.2.4** The Construction Manager shall schedule and conduct meetings at which the Owner, ArchitectConstruction Manager  and specifically invited Subcontractors can discuss the status of the Work. The Construction Manager shall prepare and promptly distribute meeting minutes.

§ **2.3.2.5** Promptly after the Owner's acceptance of the Guaranteed Maximum Price proposal, the Construction Manager shall prepare a schedule in accordance with Section 3.10 of A201™–1997, including the Owner's occupancy requirements.

§ **2.3.2.6** The Construction Manager shall provide monthly written reports to the Owner and Architect on the progress of the entire Work. The Construction Manager shall maintain a daily log containing a record of weather, Subcontractors working on the site, number of workers, Work accomplished, problems encountered and other similar relevant data as the Owner may reasonably require. The log shall be available to the Owner and Architect.

§ **2.3.2.7** The Construction Manager shall develop a system of cost control for the Work, including regular monitoring of actual costs for activities in progress and estimates for uncompleted tasks and proposed changes. The Construction Manager shall identify variances between actual and estimated costs and report the variances to the Owner and Architect at regular intervals.

**Init.**

**/**

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 20:55:53 on 05/26/2009 under Order No.1000385170_1 which expires on 1/19/2010, and is not for resale.
User Notes:                                              (2075910671)

## § 2.4 PROFESSIONAL SERVICES
Section 3.12.10 of A201™–1997 shall apply to both the Preconstruction and Construction Phases.

## § 2.5 HAZARDOUS MATERIALS
Section 10.3 of A201™–1997 shall apply to both the Preconstruction and Construction Phases.

## ARTICLE 3   OWNER'S RESPONSIBILITIES
### § 3.1 INFORMATION AND SERVICES
§ 3.1.1 The Owner shall provide full information in a timely manner regarding the requirements of the Project, including a program which sets forth the Owner's objectives, constraints and criteria, including space requirements and relationships, flexibility and expandability requirements, special equipment and systems, and site requirements.

§ 3.1.2 The Owner shall, at the written request of the Construction Manager prior to commencement of the Construction Phase and thereafter, furnish to the Construction Manager reasonable evidence that financial arrangements have been made to fulfill the Owner's obligations under the Contract. Furnishing of such evidence shall be a condition precedent to commencement or continuation of the Work. After such evidence has been furnished, the Owner shall not materially vary such financial arrangements without prior notice to the Construction Manager.

§ 3.1.3 The Owner shall establish and update an overall budget for the Project, based on consultation with the Construction Manager and Architect, which shall include contingencies for changes in the Work and other costs which are the responsibility of the Owner.

### § 3.1.4 STRUCTURAL AND ENVIRONMENTAL TESTS, SURVEYS AND REPORTS
In the Preconstruction Phase, the Owner shall furnish the following with reasonable promptness and at the Owner's expense. Except to the extent that the Construction Manager knows of any inaccuracy, the Construction Manager shall be entitled to rely upon the accuracy of any such information, reports, surveys, drawings and tests described in Sections 3.1.4.1 through 3.1.4.4 but shall exercise customary precautions relating to the performance of the Work.

§ 3.1.4.1 Reports, surveys, drawings and tests concerning the conditions of the site which are required by law.

§ 3.1.4.2 Surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a written legal description of the site. The surveys and legal information shall include, as applicable, grades and lines of streets, alleys, pavements and adjoining property and structures; adjacent drainage; rights-of-way, restrictions, easements, encroachments, zoning, deed restrictions, boundaries and contours of the site; locations, dimensions and necessary data pertaining to existing buildings, other improvements and trees; and information concerning available utility services and lines, both public and private, above and below grade, including inverts and depths. All information on the survey shall be referenced to a project benchmark.

§ 3.1.4.3 The services of a geotechnical engineer when such services are requested by the Construction Manager. Such services may include but are not limited to test borings, test pits, determinations of soil bearing values, percolation tests, evaluations of hazardous materials, ground corrosion and resistivity tests, including necessary operations for anticipating subsoil conditions, with reports and appropriate professional recommendations.

§ 3.1.4.4 Structural, mechanical, chemical, air and water pollution tests, tests for hazardous materials, and other laboratory and environmental tests, inspections and reports which are required by law.

§ 3.1.4.5 The services of other consultants when such services are reasonably required by the scope of the Project and are requested by the Construction Manager.

### § 3.2 OWNER'S DESIGNATED REPRESENTATIVE
The Owner shall designate in writing a representative who shall have express authority to bind the Owner with respect to all matters requiring the Owner's approval or authorization. This representative shall have the authority to make decisions on behalf of the Owner concerning estimates and schedules, construction budgets, and changes in the Work, and shall render such decisions promptly and furnish information expeditiously, so as to avoid unreasonable delay in the services or Work of the Construction Manager. Except as otherwise provided in Section 4.2.1 of A201™–1997, the Architect does not have such authority.

**Init.**

/

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 20:55:53 on 05/26/2009 under Order No.1000385170_1 which expires on 1/19/2010, and is not for resale.
User Notes:                                                                                                      (2075910671)

### § 3.3 ARCHITECT

The Owner shall retain an Architect and other design professionals to provide Basic Services, including all civil, landscaping, architectural, structural, mechanical and electrical engineering services, other than cost estimating services, described in the edition of AIA® Document B141™, current as of the date of this Agreement. Such services shall be provided in accordance with time schedules agreed to by the Owner, Architect and Construction Manager. Upon request of the Construction Manager, the Owner shall furnish to the Construction Manager a copy of the Owner's Agreement with the Architect, from which compensation provisions may be deleted.

### § 3.4 LEGAL REQUIREMENTS

The Owner shall determine and advise the Architect and Construction Manager of any special legal requirements relating specifically to the Project which differ from those generally applicable to construction in the jurisdiction of the Project. The Owner shall furnish such legal services as are necessary to provide the information and services required under Section 3.1. Construction Manager and its Subcontractors and Suppliers shall perform all Work in conformance with the requirement of the Construction Documents and all applicable building codes and requirements of governmental authorities having jurisdiction over the Project.

### ARTICLE 4    COMPENSATION AND PAYMENTS FOR PRECONSTRUCTION PHASE SERVICES

The Owner shall compensate and make payments to the Construction Manager for Preconstruction Phase services as follows:

### § 4.1 COMPENSATION

§ 4.1.1 For the services described in Sections 2.1 and 2.2, the Construction Manager's compensation shall be calculated as follows:
*(State basis of compensation, whether a stipulated sum, multiple of Direct Personnel Expense, actual cost, etc. Include a statement of reimbursable cost items as applicable.)*

A "Not To Exceed" value of Sixty Thousand ($60,000) for all pre-construction work related to the project scope described in the CM Proposal.

§ 4.1.2 Compensation for Preconstruction Phase Services shall be equitably adjusted if such services extend beyond Twenty Two   months from the date of this Agreement.

§ 4.1.3 If compensation is based on a multiple of Direct Personnel Expense, Direct Personnel Expense is defined as the direct salaries of the Construction Manager's personnel engaged in the Project and the portion of the cost of their mandatory and customary contributions and benefits related thereto, such as employment taxes and other statutory employee benefits, insurance, sick leave, holidays, vacations, pensions and similar contributions and benefits.

### § 4.2 PAYMENTS

§ 4.2.1 Payments shall be made monthly following presentation of the Construction Manager's invoice and, where applicable, shall be in proportion to services performed.

§ 4.2.2 Payments are due and payable  Thirty (  30  ) days from the date the Construction Manager's invoice is received by the Owner. Amounts unpaid after the date on which payment is due shall bear interest at the rate entered below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.

*(Insert rate of interest agreed upon.)*

1.00%  per annum

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Contractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

### ARTICLE 5    COMPENSATION FOR CONSTRUCTION PHASE SERVICES

The Owner shall compensate the Construction Manager for Construction Phase services as follows:

**Init.**

**/**

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 20:55:53 on 05/26/2009 under Order No.1000385170_1 which expires on 1/19/2010, and is not for resale.
User Notes:                                                                                    (20/5910671)

**§ 5.1 COMPENSATION**
§ 5.1.1 For the Construction Manager's performance of the Work as described in Section 2.3, the Owner shall pay the Construction Manager in current funds the Contract Sum consisting of the Cost of the Work as defined in Article 6 and the Construction Manager's Fee determined as follows:
*(State a lump sum, percentage of actual Cost of the Work or other provision for determining the Construction Manager's Fee, and explain how the Construction Manager's Fee is to be adjusted for changes in the Work.)*

2.6% of the Cost of the Work.

**§ 5.2 GUARANTEED MAXIMUM PRICE**
§ 5.2.1 The sum of the Cost of the Work and the Construction Manager's Fee are guaranteed by the Construction Manager not to exceed the amount provided in Amendment No. 1, subject to additions and deductions by changes in the Work as provided in the Contract Documents. Such maximum sum as adjusted by approved changes in the Work is referred to in the Contract Documents as the Guaranteed Maximum Price. Cost which would cause the Guaranteed Maximum Price to be exceeded shall be paid by the Construction Manager without reimbursement by the Owner.

*(Insert specific provisions if the Construction Manager is to participate in any savings.)*

**§ 5.3 CHANGES IN THE WORK**
§ 5.3.1 Adjustments to the Guaranteed Maximum Price on account of changes in the Work subsequent to the execution of Amendment No. 1 may be determined by any of the methods listed in Section 7.3.3 of A201™–1997.

§ 5.3.2 In calculating adjustments to subcontracts (except those awarded with the Owner's prior consent on the basis of cost plus a fee), the terms "cost" and "fee" as used in Section 7.3.3.3 of A201™–1997 and the terms "costs" and "a reasonable allowance for overhead and profit" as used in Section 7.3.6 of A201™–1997 shall have the meanings assigned to them in that document and shall not be modified by this Article 5. Adjustments to subcontracts awarded with the Owner's prior consent on the basis of cost plus a fee shall be calculated in accordance with the terms of those subcontracts.

§ 5.3.3 In calculating adjustments to the Contract, the terms "cost" and "costs" as used in the above-referenced provisions of A201™–1997 shall mean the Cost of the Work as defined in Article 6 of this Agreement, and the term "and a reasonable allowance for main office overhead and profit" shall mean the Construction Manager's Fee as defined in Section 5.1.1 of this Agreement. Project Overhead directly related to the project shall be covered as a reimbursable under Article 6.

*(Paragraph deleted)*
**ARTICLE 6   COST OF THE WORK FOR CONSTRUCTION PHASE**
**§ 6.1 COSTS TO BE REIMBURSED**
§ 6.1.1 The term "Cost of the Work" shall mean costs necessarily incurred by the Construction Manager in the proper performance of the Work. Such costs shall be at rates not higher than those customarily paid at the place of the Project except with prior consent of the Owner. The Cost of the Work shall include only the items set forth in this Article 6.

**§ 6.1.2 LABOR COSTS**
    .1    Wages of construction workers directly employed by the Construction Manager to perform the construction of the Work at the site or, with the Owner's agreement, at off-site workshops.
    .2    DELETED

| Classification | Name |
|---|---|
| To Be Determined | To Be Determined |

**Init.**

**/**

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 20:55:53 on 05/26/2009 under Order No.1000365170_1 which expires on 1/19/2010, and is not for resale.
User Notes:    (2075910671)

    .3    With prior written approval of the Owner, wages and salaries of the Construction Manager's supervisory or administrative personnel engaged on direct project work, at factories, workshops or on the road, in expediting the production or transportation of materials or equipment required for the Work, but only for that portion of their time required for the Work.

    .4    Cost of all labor add-ons insofar as such cost is based on wages, salaries or other remuneration paid to employees of the Construction Manager and included in the Cost of the Project. Labor add-ons include, but are not limited to, taxes, such as social security and unemployment; insurance such as workers' compensation, liability, medical, life and disability; vacation and sick pay and other welfare and employee benefits such as pension plans, employee retirement income plans, and 13th month pay. In lieu of Owner paying actual cost of labor add-ons for Construction Manager's salaried and non-craft hourly employees, Owner shall pay fifty-two percent (52%) of such employees' salary to cover labor add-ons.

### § 6.1.3 SUBCONTRACT COSTS
Payments made by the Construction Manager to Subcontractors in accordance with the requirements of the subcontracts.

### § 6.1.4 COSTS OF MATERIALS AND EQUIPMENT INCORPORATED IN THE COMPLETED CONSTRUCTION
    .1    Costs, including transportation, of materials and equipment incorporated or to be incorporated in the completed construction.

    .2    Costs of materials described in the preceding Section 6.1.4.1 in excess of those actually installed but required to provide reasonable allowance for waste and for spoilage. Unused excess materials, if any, shall be handed over to the Owner at the completion of the Work or, at the Owner's option, shall be sold by the Construction Manager; amounts realized, if any, from such sales shall be credited to the Owner as a deduction from the Cost of the Work.

### § 6.1.5 COSTS OF OTHER MATERIALS AND EQUIPMENT, TEMPORARY FACILITIES AND RELATED ITEMS

    .1    Costs, including transportation, installation, maintenance, dismantling and removal of materials, supplies, temporary facilities, machinery, equipment, and hand tools not customarily owned by the construction workers, which are provided by the Construction Manager at the site and fully consumed in the performance of the Work; and cost less salvage value on such items if not fully consumed, whether sold to others or retained by the Construction Manager. Cost for items previously used by the Construction Manager shall mean fair market value.

    .2    Rental charges for temporary facilities, machinery, equipment and hand tools not customarily owned by the construction workers, which are provided by the Construction Manager at the site, whether rented from the Construction Manager or others, and costs of transportation, installation, minor repairs and replacements, dismantling and removal thereof. Rates and quantities of equipment rented shall be subject to the Owner's prior approval.

    .3    Costs of removal of debris from the site.

    .4    Reproduction costs, , facsimile transmissions and long-distance telephone calls, postage and express delivery charges, telephone at the site and reasonable petty cash expenses of the site office

    .5    With owner prior approval, that portion of the reasonable travel and subsistence expenses of the Construction Manager's personnel incurred while traveling in discharge of duties connected with the Work.

    .6    Cost or rental of temporary portable buildings and toilets as required, also cost of utilities, ice, water, water containers, cups, fire extinguishers, first-aid supplies, safety equipment, safety awards and incentives, safety lunches, drug and alcohol testing, and off-site storage space or facilities.

    .7    Cost of constructing, leasing or rental of buildings required for field offices, tool rooms, crew shacks and warehousing and cost of operating such facilities, including utilities, furniture, office equipment and supplies, telephone service, calls and telegrams, postage and expressage and similar items in connection with the Project.

Init.

/

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 20:55:53 on 05/26/2009 under Order No.1000385170_1 which expires on 1/19/2010, and is not for resale.
User Notes:    (2075910671)

.8 Cost of producing and handling reports, schedules, manuals, drawings, specifications and other documents required for the Project.

.9 Cost of the premiums for all bonds including Construction Manager's bond and bonds for Subcontractors and Suppliers. At Construction Manager's option, Construction Manager may elect to enroll Subcontractors in Subguard in lieu of requiring a performance and payment bond and the premium cost of such Subguard coverage will be billed to and paid by the Project at a rate of .97%* of the subcontract value and any subsequent adjustments.

*Rate is subject to adjustment at annual Subguard policy renewal. Premium costs using the renewal rate will be billed to and paid by the Project.

.10 Cost of outside consultants and professional personnel as may be necessary in connection with the services to be provided by Construction Manager with prior Owner approval.

## § 6.1.6 MISCELLANEOUS COSTS

.1 That portion directly attributable to this Contract of premiums for insurance and bonds.
  *(If charges for self-insurance are to be included, specify the basis of reimbursement.)*

.2 Sales, use or similar taxes imposed by a governmental authority which are related to the Work and for which the Construction Manager is liable.

.3 Fees and assessments for the building permit and for other permits, licenses and inspections for which the Construction Manager is required by the Contract Documents to pay.

.4 Fees of testing laboratories for tests required by the Contract Documents, except those related to non-conforming Work other than that for which payment is permitted by Section 6.1.8.2.

.5 Permit fees, licenses, tests and inspections, royalties, damages for infringement of patents and costs of defending suits therefor. If royalties or losses and damages, including costs of defense, are incurred which arise from a particular design, process or the product of a particular manufacturer or manufacturers specified by the Owner or Architect, such royalties, losses and damages shall be paid by the Owner and not considered as within the GMP.

.6 Costs associated with the provision of the Project InformationWebsite and webcams

.7

.8 . Legal, mediation and arbitration costs, other than those arising from disputes between the Owner and Construction Manager, reasonably incurred by the Construction Manager in the performance of the Work and with the Owner's written permission, which permission shall not be unreasonably withheld.

.9 Expenses incurred in accordance with Construction Manager's standard personnel policy for relocation and temporary living allowances of personnel required for the Work, in case it is necessary to relocate such personnel from distant locations with Owner prior approval.

.10 At Construction Manager's option, Construction Manager may elect to implement a general liability wrap-up program providing Commercial General Liability insurance coverage to subcontractors as well as the Construction Manager and the premium cost of such general liability wrap-up will be billed to and paid by the Project at a rate of 1.4% of total Project cost (cost of work plus Construction Manager's fee).

## § 6.1.7 OTHER COSTS

.1 Other costs incurred in the performance of the Work if and to the extent approved in advance in writing by the Owner.

## § 6.1.8 EMERGENCIES AND REPAIRS TO DAMAGED OR NONCONFORMING WORK

The Cost of the Work shall also include costs described in Section 6.1.1which are incurred by the Construction Manager:

.1 In taking action to prevent threatened damage, injury or loss in case of an emergency affecting the safety of persons and property, as provided in Section 10.6 of A201™–1997.

.2 In repairing or correcting damaged or non-conforming Work executed by the Construction Manager or the Construction Manager's Subcontractors or suppliers, provided that such damaged or non-conforming Work was not caused by the negligence or failure to fulfill a specific responsibility to the Owner set forth in this agreement of the Construction Manager or the Construction Manager's

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 20:55:53 on 05/26/2009 under Order No.1000365170_1 which expires on 1/19/2010, and is not for resale.
User Notes: (2075910671)

foremen, engineers or superintendents, or other supervisory, administrative or managerial personnel of the Construction Manager, or the or the failure of the Construction Manager's personnel to supervise adequately the Work of the Subcontractors or suppliers, and only to the extent that the cost of repair or correction is not recoverable by the Construction Manager from insurance, Subcontractors or suppliers. The Construction Manager shall be reimbursed for 50% (Fifty percent) of the costs without any Construction Manager Fee related to Work that falls under this category of costs.

**§ 6.1.9** The costs described in Sections 6.1.1 through 6.1.8 shall be included in the Cost of the Work notwithstanding any provision of A201™–1997 or other Conditions of the Contract which may require the Construction Manager to pay such costs, unless such costs are excluded by the provisions of Section 6.2.

**§ 6.2 COSTS NOT TO BE REIMBURSED**
**§ 6.2.1** The Cost of the Work shall not include:

.1 Salaries and other compensation of the Construction Manager's personnel stationed at the Construction Manager's principal office or offices other than the site office, except as specifically provided in Sections 6.1.2.2 and 6.1.2.3.

.2 Expenses of the Construction Manager's principal office and offices other than the site office, except as specifically provided in Section 6.1.

.3 Overhead and general expenses, except as may be expressly included in Section 6.1.

.4 The Construction Manager's capital expenses, including interest on the Construction Manager's capital employed for the Work.

.5 Rental costs of machinery and equipment, except as specifically provided in Section 6.1.5.2.

.6 Except as provided in Section 6.1.8.2, costs due to the negligence of the Construction Manager or to the failure of the Construction Manager to fulfill a specific responsibility to the Owner set forth in this agreement.

.7 Costs incurred in the performance of Preconstruction Phase Services.

.8 Except as provided in Section 6.1.7.1, any cost not specifically and expressly described in Section 6.1.

.9 Costs which would cause the Guaranteed Maximum Price to be exceeded.

**§ 6.3 DISCOUNTS, REBATES AND REFUNDS**
**§ 6.3.1** Construction Manager shall notify the Owner of discount opportunities and if the Owner provides payment as necessary to allow the Construction Manager to take the discount, then such cash discounts obtained on payments made by the Construction Manager shall accrue to the Owner.

**§ 6.3.2** Amounts which accrue to the Owner in accordance with the provisions of Section 6.3.1 shall be credited to the Owner as a deduction from the Cost of the Work.

**§ 6.4 ACCOUNTING RECORDS**
**§ 6.4.1** The Construction Manager shall keep full and detailed accounts and exercise such controls as may be necessary for proper financial management under this Contract; the accounting and control systems shall be satisfactory to the Owner. The Owner and the Owner's accountants shall be afforded access to the Construction Manager's records, books, correspondence, instructions, drawings, receipts, subcontracts, purchase orders, vouchers, memoranda and other data relating to this Project, and the Construction Manager shall preserve these for a period of three years after final payment, or for such longer period as may be required by law.

**ARTICLE 7   CONSTRUCTION PHASE PAYMENTS**
**§ 7.1 PROGRESS PAYMENTS**
**§ 7.1.1** Based upon Applications for Payment submitted to the Architect by the Construction Manager and Certificates for Payment issued by the Architect, the Owner shall make progress payments for Work properly performed to the date of such application for payment on account of the Contract Sum to the Construction Manager as provided below and elsewhere in the Contract Documents.

**§ 7.1.2** The period covered by each Application for Payment shall be one calendar month ending on the last day of the month.

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 20:55:53 on 05/26/2009 under Order No.1000385170_1 which expires on 1/19/2010, and is not for resale.
User Notes:                                                                                                         (2075910671)

§ **7.1.3** Provided an Application for Payment is received by the Architect not later than the Thirty-first day of a month, the Owner shall make payment to the Construction Manager not later than the Thirty-first day of the following month. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than Thirty ( 30 ) days after the Architect receives the Application for Payment.

§ **7.1.4** With each Application for Payment, the Construction Manager shall submit payrolls, petty cash accounts, receipted invoices or invoices with check vouchers attached and any other evidence required by the Owner or Architect to demonstrate that cash disbursements already made by the Construction Manager on account of the Cost of the Work equal or exceed (1) progress payments already received by the Construction Manager; less (2) that portion of those payments attributable to the Construction Manager's Fee; plus (3) payrolls for the period covered by the present Application for Payment.

§ **7.1.5** With each Application for Payment, the Construction Manager shall submit the Schedule of Values which matches the estimated Cost of Work as of the date of such Application for Payment allocated among various portions of the Work. Construction Manager's Fee and Contingency allowance shall each be shown as separate line items in the Schedule of Values. In the event the Schedule of Values exceeds the GMP, the Construction Manager shall submit to the Owner a written plan to reduce the Cost of the Work, reduce the Contingency, reduce the Construction Managers Fee or otherwise pay the costs exceeding the GMP.

§ **7.1.6** Applications for Payment shall show the percentage completion of each portion of the Work as of the end of the period covered by the Application for Payment. The percentage completion shall be the lesser of (1) the percentage of that portion of the Work which has actually been completed or (2) the percentage obtained by dividing (a) the expense which has actually been incurred by the Construction Manager on account of that portion of the Work for which the Construction Manager has made or intends to make actual payment prior to the next Application for Payment by (b) the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values.

§ **7.1.7** Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:

.1   The Cost of the Work properly performed and completed plus the cost of material purchased and properly stored during the period applicable to the Application for Payment.

.2

.3   Add the Construction Manager's Fee, less retainage of Five percent ( 5.00% ). The Construction Manager's Fee shall be computed upon the Cost of the Work described in the two preceding Sections at the rate stated in Section 5.1.1 or, if the Construction Manager's Fee is stated as a fixed sum in that Section, shall be an amount which bears the same ratio to that fixed-sum Fee as the Cost of the Work in the two preceding Sections bears to a reasonable estimate of the probable Cost of the Work upon its completion.

.4   Subtract the aggregate of previous payments made by the Owner.

.5   Subtract the shortfall, if any, indicated by the Construction Manager in the documentation required by Section 7.1.4 to substantiate prior Applications for Payment, or resulting from errors subsequently discovered by the Owner's accountants in such documentation.

.6   Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Section 9.5 of A201™–1997.

§ **7.1.8** Except with the Owner's prior approval, payments to Subcontractors shall be subject to retention of not less than Five percent ( 5.00% ). The Owner and the Construction Manager shall agree upon a mutually acceptable procedure for review and approval of payments and retention for subcontractors.

§ **7.1.9** Except with the Owner's prior approval, the Construction Manager shall not make advance payments to suppliers for materials or equipment which have not been delivered and stored at the site.

Init.

/

**AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 20:55:53 on 05/26/2009 under Order No.1000385170_1 which expires on 1/19/2010, and is not for resale.
User Notes:**                                                                                     (2075910671)

§ 7.1.10 In taking action on the Construction Manager's Applications for Payment, the Architect shall be entitled to rely on the accuracy and completeness of the information furnished by the Construction Manager and shall not be deemed to represent that the Architect has made a detailed examination, audit or arithmetic verification of the documentation submitted in accordance with Section 7.1.4 or other supporting data, that the Architect has made exhaustive or continuous on-site inspections or that the Architect has made examinations to ascertain how or for what purposes the Construction Manager has used amounts previously paid on account of the Contract. Such examinations, audits and verifications, if required by the Owner, will be performed by the Owner's accountants acting in the sole interest of the Owner.

§ 7.2 FINAL PAYMENT
§ 7.2.1 Final payment shall be made by the Owner to the Construction Manager when (1) the Contract has been fully performed by the Construction Manager except for the Construction Manager's responsibility to correct nonconforming Work, as provided in Section 12.2.2 of A201™–1997, and to satisfy other requirements, if any, which necessarily survive final payment; (2) a final Application for Payment and a final accounting for the Cost of the Work have been submitted by the Construction Manager and reviewed by the Owner's accountants; and (3) a final Certificate for Payment has then been issued by the Architect; such final payment shall be made by the Owner not more than 30 days after the issuance of the Architect's final Certificate for Payment, or as follows:

Forty Six (46) days following the issuance of the Architect's Final Certificate.

§ 7.2.2 The amount of the final payment shall be calculated as follows:
   .1   Take the sum of the Cost of the Work substantiated by the Construction Manager's final accounting and the Construction Manager's Fee, but not more than the Guaranteed Maximum Price.
   .2   Subtract amounts, if any, for which the Architect withholds, in whole or in part, a final Certificate for Payment as provided in Section 9.5.1 of A201™–1997 or other provisions of the Contract Documents.
   .3   Subtract the aggregate of previous payments made by the Owner.

If the aggregate of previous payments made by the Owner exceeds the amount due the Construction Manager, the Construction Manager shall reimburse the difference to the Owner.

§ 7.2.3 The Owner's accountants will review and report in writing on the Construction Manager's final accounting within 30 days after delivery of the final accounting to the Architect by the Construction Manager. Based upon such Cost of the Work as the Owner's accountants report to be substantiated by the Construction Manager's final accounting, and provided the other conditions of Section 7.2.1 have been met, the Architect will, within seven days after receipt of the written report of the Owner's accountants, either issue to the Owner a final Certificate for Payment with a copy to the Construction Manager or notify the Construction Manager and Owner in writing of the Architect's reasons for withholding a certificate as provided in Section 9.5.1 of A201™–1997 . The time periods stated in this Section 7.2 supersede those stated in Section 9.4.1 of A201™–1997.

§ 7.2.4 If the Owner's accountants report the Cost of the Work as substantiated by the Construction Manager's final accounting to be less than claimed by the Construction Manager, the Construction Manager shall be entitled to proceed in accordance with Article 9 without a further decision of the Architect. Unless agreed to otherwise, a demand for mediation or arbitration of the disputed amount shall be made by the Construction Manager within 60 days after the Construction Manager's receipt of a copy of the Architect's final Certificate for Payment. Failure to make such demand within this 60-day period shall result in the substantiated amount reported by the Owner's accountants becoming binding on the Construction Manager. Pending a final resolution of the disputed amount, the Owner shall pay the Construction Manager the amount certified in the Architect's final Certificate for Payment.

§ 7.2.5

ARTICLE 8   INSURANCE AND BONDS
§ 8.1 INSURANCE REQUIRED OF THE CONSTRUCTION MANAGER
During both phases of the Project, the Construction Manager shall purchase and maintain insurance as set forth in Section 11.1 of A201™–1997. Such insurance shall be written for not less than the following limits, or greater if required by law:

Init.

/

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 20:55:53 on 05/26/2009 under Order No.1000385170_1 which expires on 1/19/2010, and is not for resale.
User Notes:                                                                                                              (2075910671)

14

§ **8.1.1** Workers' Compensation and Employers Liability meeting statutory limits mandated by state and federal laws. If (1) limits in excess of those required by statute are to be provided, or (2) the employer is not statutorily bound to obtain such insurance coverage or (3) additional coverages are required, additional coverages and limits for such insurance shall be as follows:

TBA

§ **8.1.2** Commercial General Liability including coverage for Premises-Operations, Independent Contractors' Protective, Products-Completed Operations, Contractual Liability, Personal Injury and Broad Form Property Damage (including coverage for Explosion, Collapse and Underground hazards):

    $1,000,000.00  Each Occurrence
    $2,000,000.00  General Aggregate
    $1.00  Personal and Advertising Injury
    $5,000,000.00  Products-Completed Operations Aggregate

    .1   The policy shall be endorsed to have the General Aggregate apply to this Project only.
    .2   Products and Completed Operations insurance shall be maintained for a minimum period of at least Three ( 3 ) year(s) after either 90 days following Substantial Completion or final payment, whichever is earlier.
    .3   The Contractual Liability insurance shall include coverage sufficient to meet the obligations in Section 3.18 of A201™–1997.

§ **8.1.3** Automobile Liability (owned, non-owned and hired vehicles) for bodily injury and property damage:
    $1,000,000.00  Each Accident

§ **8.1.4** Other coverage:

TBA

*(If Umbrella Excess Liability coverage is required over the primary insurance or retention, insert the coverage limits. Commercial General Liability and Automobile Liability limits may be attained by individual policies or by a combination of primary policies and Umbrella and/or Excess Liability policies. If Project Management Protective Liability Insurance is to be provided, state the limits here.)*

§ **8.2 INSURANCE REQUIRED OF THE OWNER**
During both phases of the Project, the Owner shall purchase and maintain liability and property insurance, including waivers of subrogation, as set forth in Sections 11.2 and 11.4 of A201™–1997. Such insurance shall be written for not less than the following limits, or greater if required by law:

§ **8.2.1** Property Insurance:
    $25,000.00  Deductible Per Occurrence
    $50,000.00  Aggregate Deductible

§ **8.2.2** Boiler and Machinery insurance with a limit of:  $1,000,000.00 .
*(If not a blanket policy, list the objects to be insured.)*

§ **8.3 PERFORMANCE BOND AND PAYMENT BOND**
§ **8.3.1** The Construction Manager  shall not  *(insert "shall" or "shall not")* furnish bonds covering faithful performance of the Contract and payment of obligations arising thereunder. Bonds may be obtained through the Construction Manager's usual source, and the cost thereof shall be included in the Cost of the Work. The amount of each bond shall be equal to  (    ) of the Contract Sum.

§ **8.3.2** The Construction Manager shall deliver the required bonds to the Owner at least three days before the commencement of any Work at the Project site.

**Init.**

/

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 20:55:53 on 05/26/2009 under Order No.1000385170_1 which expires on 1/19/2010, and is not for resale.
User Notes:                                                                                          (2075910671)

## ARTICLE 9  MISCELLANEOUS PROVISIONS
### § 9.1 DISPUTE RESOLUTION
§ 9.1.1 In an effort to resolve any claim, dispute or other matter in question arising out of or related to this Agreement or breach thereof, either party may request mediation in accordance with the Construction Industry Mediation Rules of the American Arbitration Association, the costs of which shall be equally shared by the parties.

### § 9.2 OTHER PROVISIONS
§ 9.2.1 Unless otherwise noted, the terms used in this Agreement shall have the same meaning as those in A201™–1997, *General Conditions of the Contract for Construction.*

### § 9.2.2 EXTENT OF CONTRACT
This Contract, which includes this Agreement and the other documents incorporated herein by reference, represents the entire and integrated agreement between the Owner and the Construction Manager and supersedes all prior negotiations, representations or agreements, either written or oral. This Agreement may be amended only by written instrument signed by both the Owner and Construction Manager. If anything in any document incorporated into this Agreement is inconsistent with this Agreement, this Agreement shall govern.

### § 9.2.3 OWNERSHIP AND USE OF DOCUMENTS
Article 1.6 of A201™–1997 shall apply to both the Preconstruction and Construction Phases.

### § 9.2.4 GOVERNING LAW
The Contract shall be governed by the law of the place where the Project is located.

### § 9.2.5 ASSIGNMENT
The Owner and Construction Manager respectively bind themselves, their partners, successors, assigns and legal representatives to the other party hereto and to partners, successors, assigns and legal representatives of such other party in respect to covenants, agreements and obligations contained in the Contract Documents. Except as provided in Section 13.2.2 of A201™–1997, neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make such an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.

## ARTICLE 10  TERMINATION OR SUSPENSION
### § 10.1 TERMINATION
§ 10.1.1 The Owner may terminate this Contract at any time with or without cause, and the Construction Manager may terminate this Contract for any of the reasons described in Subparagraph 14.1.1 of AIA Document A201-1997.

§ 10.1.2 If the Owner or Construction Manager terminates this Contract pursuant to this Section 10.1, the Construction Manager shall be equitably compensated for Preconstruction Phase Services performed prior to receipt of notice of termination; provided, however, that the compensation for such services shall not exceed the compensation set forth in Section 4.1.1.

§ 10.1.3 If the Owner or Construction Manager terminates this Contract pursuant to this Section 10.1 after commencement of the Construction Phase, the Construction Manager shall, in addition  to the compensation provided in Section 10.1.2, be paid an amount calculated as follows:

    .1    Take the Cost of the Work incurred by the Construction Manager to the date of termination
    .2    Add the Construction Manager's Fee computed upon the Cost of the Work to the date of termination at the rate stated in Section 5.1 or, if the Construction Manager's Fee is stated as a fixed sum in that Section, an amount which bears the same ratio to that fixed-sum Fee as the Cost of the Work at the time of termination bears to a reasonable estimate of the probable Cost of the Work upon its completion.
    .3    Subtract the aggregate of previous payments made by the Owner on account of the Construction Phase.

The Owner shall also pay the Construction Manager fair compensation, either by purchase or rental at the election of the Owner, for any equipment owned by the Construction Manager which the Owner elects to retain and which is not otherwise included in the Cost of the Work under Section 10.1.3.1. To the extent that the Owner elects to take legal assignment of subcontracts and purchase orders (including rental agreements), the Construction Manager shall, as a condition of receiving the payments referred to in this Article 10, execute and deliver all such papers and take all such steps, including the legal assignment of such subcontracts and other contractual rights of the Construction Manager, as

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 20:55:53 on 05/26/2009 under Order No.1000385170_1 which expires on 1/19/2010, and is not for resale.
User Notes:    (2075910671)

the Owner may require for the purpose of fully vesting in the Owner the rights and benefits of the Construction Manager under such subcontracts or purchase orders.

Subcontracts, purchase orders and rental agreements entered into by the Construction Manager with the Owner's written approval prior to the execution of Amendment No. 1 shall contain provisions permitting assignment to the Owner as described above. If the Owner accepts such assignment, the Owner shall reimburse or indemnify the Construction Manager with respect to all costs arising under the subcontract, purchase order or rental agreement except those which would not have been reimbursable as Cost of the Work if the contract had not been terminated. If the Owner elects not to accept the assignment of any subcontract, purchase order or rental agreement which would have constituted a Cost of the Work had this agreement not been terminated, the Construction Manager shall terminate such subcontract, purchase order or rental agreement and the Owner shall pay the Construction Manager the costs necessarily incurred by the Construction Manager by reason of such termination.

*(Paragraphs deleted)*
**§ 10.3 SUSPENSION**
The Work may be suspended by the Owner as provided in Article 14 of A201™–1997; in such case, the Guaranteed Maximum Price, if established, shall be increased as provided in Section 14.3.2 of A201™–1997 except that the term "cost of performance of the Contract" in that Section shall be understood to mean the Cost of the Work and the term "profit" shall be understood to mean the Construction Manager's Fee as described in Sections 5.1.1 and 5.3.4 of this Agreement.

**ARTICLE 11   OTHER CONDITIONS AND SERVICES**

TBA

This Agreement entered into as of the day and year first written above.

OWNER

_(Signature)_
_(Printed name and title)_
Date
ATTEST

CONSTRUCTION MANAGER

_(Signature)_
_(Printed name and title)_
Date
ATTEST

**AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003** by The American Institute of Architects and The Associated General Contractors of America. **All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 20:55:53 on 05/26/2009 under Order No.1000365170_1 which expires on 1/19/2010, and is not for resale.
User Notes:                                                                                                                  (2075910671)

# AMENDMENT No. 1

This Amendment No. 1 amends and modifies the Standard Form of Agreement Between Owner and Construction Manager dated as of December 1, 2008 (the "Agreement") pertaining to the Project described as the Office Complex & Related Facilities in Boise, Idaho as part of the "Boise Mixed Use Development". This Amendment is effective as of August 2, 2010 between:

The Owner:
SBP LLP
909 Main Street, Suite 1300
Boise, Idaho 83702

and the Construction Manager:
Hoffman Construction Company of America
805 SW Broadway, Suite 2100
Portland, OR 97205

The Owner and the Construction Manager agree that the Agreement shall be amended as follows.

1. **INTENT.** A portion of the Project, to include only the scope of Work described in Paragraph2 below, shall be designed and constructed by the Construction Manager using the design-build contracting method. The Agreement shall generally be deemed to be modified to the extent necessary to carry out the intent and purpose of this Amendment.

2. **DESIGN-BUILD SCOPE.** Construction Manager shall design and build that portion of the Project comprising underground parking facilities of approximately 160,000 square feet and associated improvements generally in conformance with the affected Level B, Garage Level, Overall Plan (the "Design-Build Work"), more particularly described as follows:

   a) The garage structure will be concrete slab on grade, concrete columns and beams and a concrete lid. The typical garage ceiling height will be approximately 11'-8" and shall be configured to allow the future installation of hydraulic parking stackers at agreed upon locations. The garage shall be coordinated with and accessed through the FoundationPark project that is above it.

   b) Removal and disposal of hazmat materials from the site is not included as part of this scope. The Owner is contracting separately for removal and disposal of site hazmat materials.

   c) Demolition and disposal of existing buildings located at the east end of the site is not included as part of the Amendment scope. The Owner is contracting separately for demolition and disposal of the existing buildings at the east end of the site.

1

d) The Design-Build Work shall be deemed to be "Delegated Design" elements as provided in §3.12.10 of the General Conditions of the Contract for Construction.

3.   SCHEDULE.  The Construction Manager shall diligently prosecute the Design-Build Work in accordance with the schedule approved by the Owner, subject to change as provided in the Contract Documents.

4.   COMPENSATION.  For Design-Build Work, the Owner shall pay the Construction Manager in current funds the Contract Sum consisting of the Cost of the Work as defined in Article G of the Agreement plus a Construction Manager's fee of 8.5% of the Cost of the Work.  For the Design-Build Work, the Cost of the Work shall include compensation to design professional(s) engaged by the Construction Manager ("CM's Design Professionals") who are approved in advance by the Owner, pursuant to written professional service agreements acceptable to Owner.  CM's Design Professionals shall be properly licensed in the state of Idaho and shall be required to perform all professional design services in connection with the Design-Build Work in accordance with all applicable building codes, government regulations and laws.

5.   APPLICABILITY.  This Amendment shall only apply to the Agreement insofar as it relates to the scope of Work described in Paragraph 2 above.  As to all other Work on the Project the Agreement shall remain unaltered by this Amendment No. 1.

6.   DESIGN-BUILD RESPONSIBILITIES.  The Construction Manager shall  be fully responsible for all design aspects of the Design-Build Work in accordance with §3.12.10 of the General Conditions of the Contract for Construction.  Construction Manager shall:

### A.  DESIGN ADMINISTRATION SERVICES

1.  General Administration: Manage and coordinate CM's Design Professional's services and those provided by their consultants, review application criteria provided by the Design-Builder, communicate with members of the Project team and issue progress reports to Owner pertaining to CM's Design Professional's services.

2.  Multi-Discipline Coordination: Coordinate services provided by CM's Design Professional and the Design Professional's consultants with those services provided by the Owner and the Owner's consultants and contractors.

3.  Design Services Scheduling: Prepare and periodically update a design services schedule that shall identify milestone dates for decisions required of the Owner and others relating to services furnished by CM's Design Professionals.

4.  Materials, Systems and Equipment Evaluation: Assist the Owner with the evaluation of alternative materials, building systems and equipment, together with other considerations based on the Owner's criteria, the Project budget and aesthetics in developing the design for the Project.

5.  Project Design Presentations: Make presentations to explain the design of the Design-Build Work to the Owner and governmental authorities.

6.  Design-Builder and Owner Submissions: Submit Design Documents and Construction Documents to the Owner at scheduled intervals for purposes of evaluation and approval by the Owner of the schematic design, design development and construction documents phase of the Design-Build Work.

2

7. **Governmental Authorities Submissions:** Assist the Owner in connection with the filing documents required for the approval of governmental authorities having jurisdiction over the Project.

## B. EVALUATION AND ESTIMATING SERVICES

1. **Project Criteria, Schedule and Budget:** Provide an evaluation of the information furnished by the Owner, including the Project criteria, other requirements provided by the Owner, its Architect or consultants, the Project schedule, and the budget for the Cost of the Work.

2. **Site Evaluation:** Provide an evaluation of the Project site based on the information provided by the Owner, the Project criteria and the schedule and budget for the Cost of the Work for the Design-Build Work.

3. **Estimates of the Cost of the Work:** Prepare an estimate of the Cost of the Work for the Design-Build Work and, as the design progresses through the preparation of the Construction Documents, periodically update the estimate of the Cost of the Work for the Design-Build Work.

## C. DESIGN SERVICES

1. **Design Documents:** Provide schematic and design development documents for review and written approval of Owner illustrating the scale and relationship of the design components of the Design-Build Work and specifically identifying deviations, if any, from the Owner's criteria. The schematic design documents may include a site plan, building plans, sections and elevations, study models, and perspective sketches. Selections of major building systems and construction materials shall be noted on the drawings or described in outline specifications.

2. **Construction Documents:** Provide Construction Documents based on the approved Design Documents and updated budget for the Cost of the Work for the Design-Build Work. The construction documents shall set forth the requirements for construction and shall include drawings and specifications that establish the quality levels of materials and systems required for the Design-Build Work.

7. **USE OF DOCUMENTS AND ELECTRONIC DATA.** Construction Manager shall provide to the Owner all designs, design documents, and all related design information (the "Design Documents") in written and in electronic format acceptable to Owner, including the original computer program format used by CM's Design Professional creating the design represented thereby. Construction Manager and its Design Professional hereby grant to Owner the full and unlimited license to use ("Design Documents"). CM shall include an appropriate provision in each agreement it enters into with CM's Design Professional acknowledging the grant of license as provided herein. Owner agrees that use of the Design Documents or information contained therein for any other project shall not include any reference to the Construction Manager or CM's Design Professionals without their written consent and neither the Construction Manager nor CM's Design Professionals shall have any liability for any modifications made to the Design Documents by Owner or others.

3

8.  PROFESSIONAL LIABILITY INSURANCE.  Construction Manager shall, in addition to other insurance required by the Agreement, have and maintain professional liability insurance in an amount of not less than Five Million Dollars ($5,000,000.00) for the period ending two years following final completion of the Design-Build Work.  Construction Manager shall, in addition to other insurance, require its Design Professionals to have and maintain professional liability insurance in an amount of not less than Two Million Dollars ($2,000,000.00) for the period ending two years following final completion of the Design-Build Work.

9.  GUARANTEED MAXIMUM PRICE  Upon written acceptance of design development phase documents for the Design-Build Work by Owner, Construction Manager shall provide a detailed cost estimate for design and construction and a detailed schedule for completion of the Design-Build Work and shall propose to the Owner a guaranteed maximum price ("GMP") for the entire design and construction of the Design-Build Work for Owner's consideration.  Upon agreement of an amount as the GMP, such amount shall be controlling as to the Design-Build Work subject to adjustment as provided in the Agreement.

10.  ASSIGNMENT  It is agreed that the Owner may assign the Agreement, as amended, to JRS III, LLLP or any other entity related to or affiliated with the Owner.

Executed in multiple counterparts on the dates indicated below.

_____
Owner

Debbie S. McDonald, President S&B
(Printed name and title)

Date: 5/13/2010

_____
Construction Manager

Richard S. Linahan
President
(Printed name and title)

Date: 5-5-2010

4



# AMENDMENT No. 2

This Amendment No. 2 amends and modifies the Standard Form of Agreement Between Owner and Construction Manager dated as of December 1, 2008 (the "Agreement") pertaining to the Project described as the Office Complex & Related Facilities in Boise, Idaho as part of the "Boise Mixed Use Development". This Amendment is effective as of January 14, 2015, between:

The Owner:

SBP LLLP
999 Main Street, Suite 1300
Boise, Idaho 83702

And

The Construction Manager:

Hoffman Construction Company of America
805 SW Broadway, Suite 2100
Portland, OR 97205

The Owner and the Construction Manager agree that the Agreement shall be amended as follows.

1. **INTENT.**  This Amendment No. 2 modifies the Agreement only to the extent specifically set forth herein. All provisions of the Agreement, except as modified by this Amendment No. 2, shall remain in full force and effect. Nothing in this Amendment No. 2 is intended to modify any provisions of Amendment No. 1 of the Agreement.

2. **THE PROJECT.**  The description of the "Project" on page 1 of the Agreement is hereby amended as follows:

   The Project is comprised of (i) underground parking facilities and associated improvements designed and constructed by Construction Manager pursuant to Amendment No. 1 of the Agreement and (ii) the Simplot Office Building and Annex together with tenant improvements (the "Office Complex") to be constructed pursuant to this Amendment No. 2 of the Agreement. The Office Complex is more particularly described in the plans and specifications prepared by the Architect as listed below:
   a. Specifications (Core & Shell):
       i. Simplot Office Building, Progress Issue, 6/20/2014 (Core & Shell)
       ii. [#01b] Lighting Fixture Catalog Cut Sheets (Core & Shell)
   b. Drawings (Core & Shell):
       i. Structural, SuperStructure Permit Submittal, 6/9/2014 (Core & Shell)
       ii. Architectural Progress Submittal, 6/20/2014 (Core & Shell)

     iii. Plumbing Progress Submittal, 6/20/2014 (Core & Shell)
     iv. Mechanical Progress Submittal, 6/20/2014 (Core & Shell)
     v. Electrical Progress Submittal, 6/20/2014 (Core & Shell)
     vi. Telecom Progress Submittal, 6/20/2014 (Core & Shell)
     vii. Detail Book, Progress Set, 6/20/2014 (Core & Shell)
     viii. Bid Set Update Submittal, 9/15/2014 (Core & Shell)

3. **THE ARCHITECT.** Identification of the "Architect" on page 1 of the Agreement is hereby amended as follows:

    The Owner's Architect of the Office Complex is Adamson Associates, AAI Architects Inc. It is acknowledged that Adamson Associates, AAI Architects, Inc. is also engaged by the Construction Manager as architect for the underground parking facilities and related improvements pursuant to Amendment No. 1.

4. **GUARANTEED MAXIMUM PRICE.** Section 5.2 of the Agreement is hereby amended as follows:

§5.2.1

    (a) **Office Complex.** The sum of the Cost of the Work and the Construction Manager's Fee for the Office Complex are guaranteed by the Construction Manager not to exceed the sum set forth by Change Order at such time as the Drawings and Specifications are sufficiently complete as provided in § 2.2, subject to additions and deductions by changes in the Work as provided in the Contract Documents. Such maximum sum as adjusted by approved changes in the Work is referred to in the Contract Documents as the Guaranteed Maximum Price. Costs which would cause the Guaranteed Maximum Price to be exceeded shall be paid by the Construction Manager without reimbursement by the Owner.

    (b) **Underground Garage and Related Improvements.** It is acknowledged that the Guaranteed Maximum Price applicable to the improvements designed and constructed pursuant to Amendment No. 1 is governed by the provisions of Amendment No. 1 and is separate from the Guaranteed Maximum Price for the Office Complex pursuant to (a) above.

Executed in counterparts on the dates set forth below.

| OWNER | CONSTRUCTION MANAGER |
|---|---|
| By _Debbie S McDonald_ | By _Richard_ |
| Debbie S. McDonald | RICHARD SILLIMAN |
| Its ~~President~~ General Partner | Its PRESIDENT |
| Date 1/14/15 | Date 1·15·2015 |

# ▩AIA® Document A133™ – 2009

## *Standard Form of Agreement Between Owner and Construction Manager as Constructor* where the basis of payment is the Cost of the Work Plus a Fee with a Guaranteed Maximum Price

AGREEMENT made as of the 9th day of June in the year 2010
*(In words, indicate day, month and year.)*

BETWEEN the Owner:
*(Name, legal status and address)*

JRS Properties III L.P.
999 Main Street, Suite 1300
Boise, Idaho
USA 83702

and the Construction Manager:
*(Name, legal status and address)*

Hoffman Construction Company of America
805 SW Broadway, Suite 2100
Portland, Oregon
USA 97205

for the following Project:
*(Name and address or location)*

Demolition of Existing Structures, Site Preparation and Project Mobilization
Boise, Idaho
Boise Mixed Use Development (Project Idaho)

The Architect:
*(Name, legal status and address)*

Adamson Associates, AAI Architects Inc. –Architect and Payment Certifier

The Construction Manager's Designated Representative:
*(Name, address and other information)*

Daniel Drinkward, Operations Manager

*(Paragraphs deleted)*Hoffman Construction Company of America
805 SW Broadway, Suite 2100
Portland, OR 97205
(503) 221-8968

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed. A vertical line in the left margin of this document indicates where the author has added necessary information and where the author has added to or deleted from the original AIA text.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

AIA Document A201™–2007, General Conditions of the Contract for Construction, is adopted in this document by reference. Do not use with other general conditions unless this document is modified.

Init.

/

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 16:17:45 on 01/04/2012 under Order No.6032969203_1 which expires on 03/22/2012, and is not for resale.
User Notes:                                                                                         (1145127288)

1

The Architect's Designated Representative:
*(Name, address and other information)*

The Owner and Construction Manager agree as set forth below:

*(Paragraphs deleted)*
The Project includes demolition of the buildings at 301 and 333 SW 9th Street and other activities to prepare the JUMP Project Site for construction including but not limited to construction of temporary office space within existing structures, site clearing, surveying, site security, temporary utilities and establishing construction entrances.

Init.

/

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 09:04:09 on 01/03/2012 under Order No.8032969203_1 which expires on 03/22/2012, and is not for resale.
User Notes:                                                                                                (842419511)

TABLE OF CONTENTS

ARTICLE 1       GENERAL PROVISIONS
        § 1.1 Relationship of the Parties
        § 1.2 General Conditions

ARTICLE 2       CONSTRUCTION MANAGER'S RESPONSIBILITIES
        § 2.1 Preconstruction Phase
        § 2.2 Guaranteed Maximum Price Proposal and Contract Time
        § 2.3 Construction Phase
        § 2.4 Professional Services
        § 2.5 Hazardous Materials

ARTICLE 3       OWNER'S RESPONSIBILITIES
        § 3.1 Information and Services
        § 3.2 Owner's Designated Representative
        § 3.3 Architect
        § 3.4 Legal Requirements

ARTICLE 4       COMPENSATION AND PAYMENTS FOR PRECONSTRUCTION PHASE SERVICES
        § 4.1 Compensation
        § 4.2 Payments

ARTICLE 5       COMPENSATION FOR CONSTRUCTION PHASE SERVICES
        § 5.1 Compensation
        § 5.2 Guaranteed Maximum Price
        § 5.3 Changes in the Work

ARTICLE 6       COST OF THE WORK FOR CONSTRUCTION PHASE
        § 6.1 Costs to Be Reimbursed
        § 6.2 Costs Not to Be Reimbursed
        § 6.3 Discounts, Rebates and Refunds
        § 6.4 Accounting Records

ARTICLE 7       CONSTRUCTION PHASE
        § 7.1 Progress Payments
        § 7.2 Final Payment

ARTICLE 8       INSURANCE AND BONDS
        § 8.1 Insurance Required of the Construction Manager
        § 8.2 Insurance Required of the Owner
        § 8.3 Performance Bond and Payment Bond

ARTICLE 9       MISCELLANEOUS PROVISIONS
        § 9.1 Dispute Resolution
        § 9.2 Other Provisions

ARTICLE 10      TERMINATION OR SUSPENSION
        § 10.1 Termination Prior to Establishing Guaranteed Maximum Price
        § 10.2 Termination subsequent to Establishing Guaranteed Maximum Price
        § 10.3 Suspension

ARTICLE 11      OTHER CONDITIONS AND SERVICES

**Init.**

**/**

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 09:04:09 on 01/03/2012 under Order No.8032969203_1 which expires on 03/22/2012, and is not for resale.
User Notes:                                                                                              (842419511)

3

## ARTICLE 1 GENERAL PROVISIONS
### § 1.1 RELATIONSHIP OF PARTIES
The Construction Manager accepts the relationship of trust and confidence established with the Owner by this Agreement, and covenants with the Owner to furnish the Construction Manager's reasonable skill and judgment and to cooperate with the Architect in furthering the interests of the Owner. The Construction Manager shall furnish construction administration and management services and use the Construction Manager's best efforts to perform the Project in an expeditious and economical manner consistent with the interests of the Owner and consistent with the level of skill, experience and expertise as represented in the Construction Manager's proposal dated October 15, 2008 (the "CM Proposal") which is incorporated herein by this reference. The Owner shall endeavor to promote harmony and cooperation among the Owner, Architect, Construction Manager and other persons or entities employed by the Owner for the Project.

### § 1.2 GENERAL CONDITIONS
For the Construction Phase, the General Conditions of the Contract shall be the AIA® Document A201™ -1997, General Conditions of the Contract for Construction as modified, which is incorporated herein by reference. For the Preconstruction Phase, or in the event that the Preconstruction and Construction Phases proceed concurrently, A201™ -1997 shall apply to the Preconstruction Phase only as specifically provided in this Agreement. The term "Contractor" as used in A201™ -1997 shall mean the Construction Manager.

*(Paragraphs deleted)*
## ARTICLE 2 CONSTRUCTION MANAGER'S RESPONSIBILITIES
The Construction Manager shall perform the services described in this Article and in the CM Proposal. The services to be provided under Sections 2.1 and 2.2 constitute the Preconstruction Phase services. If the Owner and Construction Manager agree, after consultation with the Architect, the Construction Phase may commence before the Preconstruction Phase is completed, in which case both phases will proceed concurrently.

### § 2.1 PRECONSTRUCTION PHASE
### § 2.1.1 PRELIMINARY EVALUATION
The Construction Manager shall provide a preliminary evaluation of the Owner's program and Project budget requirements, each in terms of the other.

### § 2.1.2 CONSULTATION
The Construction Manager With the Architect shall jointly schedule and attend regular meetings with the Owner. The Construction Manager shall consult with the Owner and Architect regarding site use and improvements and the selection of materials, building systems and equipment. The Construction Manager shall provide recommendations on construction feasibility; actions designed to minimize adverse effects of labor or material shortages; time requirements for procurement, installation and construction completion; and factors related to construction cost, including estimates of alternative designs or materials, preliminary budgets and possible economies.

### § 2.1.3 PRELIMINARY PROJECT SCHEDULE
When Project requirements in Section 3.1.1 have been sufficiently identified, the Construction Manager shall prepare and periodically update a preliminary Project schedule for the Architect's review and the Owner's approval. The Construction Manager shall obtain the Architect's approval for the portion of the preliminary Project schedule relating to the performance of the Architect's services. The Construction Manager shall coordinate and integrate the preliminary Project schedule with the services and activities of the Owner, Architect and Construction Manager. As design proceeds, the preliminary Project schedule shall be updated to indicate proposed activity sequences and durations, milestone dates for receipt and approval of pertinent information, submittal of a Guaranteed Maximum Price proposal, preparation and processing of shop drawings and samples, delivery of materials or equipment requiring long-lead time procurement, Owner's occupancy requirements showing portions of the Project having occupancy priority, and proposed date of Substantial Completion. If preliminary Project schedule updates indicate the previously approved schedules may not be met, the Construction Manager shall make appropriate recommendations to the Owner and Architect.

### § 2.1.4 PHASED CONSTRUCTION
The Construction Manager shall provide recommendations to the Owner and Architect regarding the phased issuance of Drawings and Specifications to facilitate phased construction of the Work, if such phased construction is

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 09:04:09 on 01/03/2012 under Order No.8032969203_1 which expires on 03/22/2012, and is not for resale.
User Notes: (842419511)

Init.

*/*

appropriate for the Project, taking into consideration such factors as economies, time of performance, availability of labor and materials, and provisions for temporary facilities.

### § 2.1.5 PRELIMINARY COST ESTIMATES

§ 2.1.5.1 When the Owner has sufficiently identified the Project requirements and the Architect has prepared other basic design criteria, the Construction Manager shall prepare, for the review of the Architect and approval of the Owner, a preliminary cost estimate utilizing area, volume or similar conceptual estimating techniques.

§ 2.1.5.2 When Schematic Design Documents have been submitted by the Architect for approval by the Owner, the Construction Manager shall prepare, for the review of the Architect and approval of the Owner, a more detailed estimate with supporting data. During the preparation of the Design Development Documents, the Construction Manager shall update and refine this estimate at appropriate intervals agreed to by the Owner, Architect and Construction Manager.

§ 2.1.5.3 When Design Development Documents have been prepared by the Architect and approved by the Owner, the Construction Manager shall prepare a detailed estimate with supporting data for review by the Architect and approval by the Owner. During the preparation of the Construction Documents, the Construction Manager shall update and refine this estimate at appropriate intervals agreed to by the Owner, Architect and Construction Manager.

§ 2.1.5.4 If any estimate submitted to the Owner exceeds previously approved estimates or the Owner's budget, the Construction Manager shall make appropriate recommendations to the Owner and Architect. In the event such detailed estimate indicates that the Cost of the Work for all or any portion of the Project exceeds the amount previously estimated, the Construction Manager will coordinate with the Architect who shall revise the design in order to reduce the estimated Cost of the Work of the Project or to take other action as may be authorized by the Owner.

### § 2.1.6 SUBCONTRACTORS AND SUPPLIERS

The Construction Manager shall seek to develop subcontractor interest in the Project and shall furnish to the Owner and Architect for their information a list of possible subcontractors, including suppliers who are to furnish materials or equipment fabricated to a special design, from whom proposals will be requested for each principal portion of the Work. The architect will promptly reply in writing to the Construction manager if the Architect or Owner knows of any objection to such subcontractor or supplier. The receipt of such list shall not require the Owner or Architect to investigate the qualifications of proposed subcontractors or suppliers, nor shall it waive the right of the Owner or Architect later to object to or reject any proposed subcontractor or supplier.

### § 2.1.7 LONG-LEAD-TIME ITEMS

The Construction Manager shall Recommend to the Owner and Architect a schedule for procurement of long-lead-time items which will constitute part of the Work as required to meet the Project schedule. If such long-lead-time items are procured by the Owner, they shall be procured on terms and conditions acceptable to the Construction Manager. Upon the Owner's acceptance of the Construction Manager's Guaranteed Maximum Price proposal, all contracts for such items shall be assigned by the Owner to the Construction Manager, who shall accept responsibility for such items as if procured by the Construction Manager. The Construction Manager shall expedite the deliver of long-lead-time items.

### § 2.1.8 EXTENT OF RESPONSIBILITY

The Construction Manager does not warrant or guarantee estimates and schedules except as may be included as part of the Guaranteed Maximum Price. The recommendations and advice of the Construction Manager concerning design alternative shall be subject to the review and approval of the Owner and the Owner's professional consultants. It is not the Construction Manager's responsibility to ascertain that the Drawings and Specifications are in accordance with applicable laws, statutes, ordinances, building codes, rules and regulations. However, the Construction Manager shall use diligence in its review of the Drawings and Specifications and if that review indicates that any portion of the Drawings or Specifications are at variance therewith, the Construction Manager shall promptly notify the Architect and Owner in writing.

### § 2.1.9 EQUAL EMPLOYMENT OPPORTUNITY AND AFFIRMATIVE ACTION

The Construction Manager shall comply with applicable laws, regulations and special requirements of the Contract Documents regarding equal employment opportunity and affirmative action programs.

Init.

/

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 09:04:09 on 01/03/2012 under Order No.8032969203_1 which expires on 03/22/2012, and is not for resale. User Notes:                                                                                                                                  (842419511)

5

## § 2.2 GUARANTEED MAXIMUM PRICE PROPOSAL AND CONTRACT TIME
§ 2.2.1 When the Drawings and Specifications are sufficiently complete, the Construction Manager shall propose a Guaranteed Maximum Price, which shall be the sum of the estimated Cost of the Work and the Construction Manager's Fee.

§ 2.2.2 As the Drawings and Specifications may not be finished at the time the Guaranteed Maximum Price proposal is prepared, the Construction Manager shall provide in the Guaranteed Maximum Price for further development of the Drawings and Specifications by the Architect that is consistent with the Contract Documents and reasonably inferable therefrom. Such further development does not include such things as changes in scope, systems, kinds and quality of materials, finishes or equipment, all of which, if required, shall be incorporated by Change Order.

*(Paragraphs deleted)*
§ 2.2.3 The estimated Cost of the Work shall include the Construction Manager's contingency, a sum established by the Construction Manager for the Construction Manager's exclusive use to cover costs arising under Section 2.2.2 and other costs which are properly reimbursable as Cost of the Work but not the basis for a Change Order.

## § 2.2.4 BASIS OF GUARANTEED MAXIMUM PRICE
The Construction Manager shall include with the Guaranteed Maximum Price proposal a written statement of its basis, which shall include the following:
   .1   A list of the Drawings and Specifications, including all Addenda thereto, and the Conditions of the Contract, which were used in preparation of the Guaranteed Maximum Price proposal.
   .2   a List of allowances and a statement of their basis.
   .3   A list of the clarifications and assumptions made by the Construction Manager in the preparation of the Guaranteed Maximum Price proposal to supplement the information contained in the Drawings and Specifications.
   .4   The proposed Guaranteed Maximum Price, including a statement of the estimated cost organized by trade categories, allowances, contingency, and other items and the Fee that comprise the Guaranteed Maximum Price.
   .5   The Date of Substantial Completion upon which the proposed Guaranteed Maximum Price is based; and a schedule of the construction Documents issuance dates upon which the date of Substantial Completion is based.

§ 2.2.5 The Construction Manager shall meet with the Owner and Architect to review the Guaranteed Maximum Price proposal and the written statement of its basis. In the event that the Owner or Architect discovers any inconsistencies or inaccuracies in the information presented, they shall promptly notify the Construction Manager, who shall make appropriate adjustments to the Guaranteed Maximum Price proposal, its basis, or both.

§ 2.2.6 Unless the Owner accepts the Guaranteed Maximum Price proposal in writing on or before the date specified in the proposal for such acceptance and so notifies the Construction Manager the Guaranteed Maximum Price proposal shall not be effective without written acceptance by the Construction Manager.

§ 2.2.7 Prior to the Owner's acceptance of the Construction Manager's Guaranteed Maximum Price proposal and issuance of a Notice to Proceed, the Construction Manager shall not incur any cost to be reimbursed as part of the Cost of the Work, except as the Owner may specifically authorize in writing.

§ 2.2.8 Upon acceptance by the Owner of the Guaranteed Maximum Price proposal, the Guaranteed Maximum Price and its basis shall be set forth in Amendment No. 1. The Guaranteed Maximum Price shall be subject to additions and deductions by a change in the Work as provided in the Contract Documents, and the Date of Substantial Completion shall be subject to adjustment as provided in the Contract Documents.

§ 2.2.9 The Owner shall authorize and cause the Architect to revise the Drawings and Specifications to the extent necessary to reflect the agreed-upon assumptions and clarifications contained in Amendment No. 1. Such revised Drawings and Specifications shall be furnished to the Construction Manager in accordance with schedules agreed to by the Owner, Architect and Construction Manager. The Construction Manager shall promptly notify the Architect and Owner if such revised Drawings and Specifications are inconsistent with the agreed-upon assumptions and clarifications.

Init.

/

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 09:04:09 on 01/03/2012 under Order No.8032969203_1 which expires on 03/22/2012, and is not for resale.
User Notes:                                                                                                                    (842419511)

6

§ **2.2.10** The Guaranteed Maximum Price shall include in the Cost of the Work only those taxes which are enacted at the time the Guaranteed Maximum Price is established.

### § 2.3 CONSTRUCTION PHASE
### § 2.3.1 GENERAL
§ **2.3.1.1** The Construction Phase shall commence on the earlier of:

    (1)    the Owner's acceptance of the Construction Manager's Guaranteed Maximum Price proposal and issuance of a Notice to Proceed, or

    (2)    the Owner's first authorization to the Construction Manager to:
        (a) award a subcontract, or
        (b) undertake construction Work with the Construction Manager's own forces, or
        (c) issue a purchase order for materials or equipment required for the Work.

*(Paragraph deleted)*
### § 2.3.2 ADMINISTRATION
§ **2.3.2.1** Except as expressly authorized by the Owner in writing, all Work shall be performed under construction Subcontracts or by other appropriate agreements with the Construction Manager, the terms of such Subcontracts or other appropriate agreements shall be subject to mutual agreement between the Owner and the Construction Manager. The Construction Manager shall obtain bids from Subcontractors and from suppliers of materials or equipment fabricated to a special design for the Work from the list previously reviewed and, after analyzing such bids, shall deliver such bids to the Owner and Architect.  The Owner will then determine, with the advice of the Construction Manager and subject to the reasonable objection of the Architect, which bids will be accepted. The Owner may designate specific persons or entities from whom the Construction Manager shall obtain bids; however, if the Guaranteed Maximum Price has been established, the Owner may not prohibit the Construction Manager from obtaining bids from other qualified bidders. The Construction Manager shall not be required to contract with anyone to whom the Construction Manager has reasonable objection.

§ **2.3.2.2** If the Guaranteed Maximum Price has been established and a specific bidder among those whose bids are delivered by the Construction Manager to the Owner and Architect (1) is recommended to the Owner by the Construction Manager; (2) is qualified to perform that portion of the Work; and (3) has submitted a bid which conforms to the requirements of the Contract Documents without reservations or exceptions, but the Owner requires that another bid be accepted, then the Construction Manager may require that a change in the Work be issued to adjust the Contract Time and the Guaranteed Maximum Price by the difference between the bid of the person or entity recommended to the Owner by the Construction Manager and the amount of the subcontract or other agreement actually signed with the person or entity designated by the Owner.

§ **2.3.2.3** Subcontracts and agreements with suppliers furnishing materials or equipment fabricated to a special design shall conform to the payment provisions of Sections 7.1.8 and 7.1.9 and shall not be awarded on the basis of cost plus a fee without the prior consent of the Owner.

§ **2.3.2.4** The Construction Manager shall schedule and conduct meetings at which the Owner, Architect, Construction Manager  and specifically invited Subcontractors can discuss the status of the Work. The Construction Manager shall prepare and promptly distribute meeting minutes.

§ **2.3.2.5** Promptly after the Owner's acceptance of the Guaranteed Maximum Price proposal, the Construction Manager shall prepare a schedule in accordance with Section 3.10 of A201™–1997, including the Owner's occupancy requirements.

§ **2.3.2.6** The Construction Manager shall provide monthly written reports to the Owner and Architect on the progress of the entire Work. The Construction Manager shall maintain a daily log containing a record of weather, Subcontractors working on the site, number of workers, Work accomplished, problems encountered and other similar relevant data as the Owner may reasonably require. The log shall be available to the Owner and Architect.

§ **2.3.2.7** The Construction Manager shall develop a system of cost control for the Work, including regular monitoring of actual costs for activities in progress and estimates for uncompleted tasks and proposed changes. The Construction Manager shall identify variances between actual and estimated costs and report the variances to the Owner and Architect at regular intervals.

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 09:04:09 on 01/03/2012 under Order No.8032969203_1 which expires on 03/22/2012, and is not for resale.
User Notes:           (842419511)

*(Paragraph deleted)*
### § 2.4 PROFESSIONAL SERVICES
Section 3.12.10 of A201™–1997 shall apply to both the Preconstruction and Construction Phases.

### § 2.5 HAZARDOUS MATERIALS
Section 10.3 of A201™–1997 shall apply to both the Preconstruction and Construction Phases.

## ARTICLE 3   OWNER'S RESPONSIBILITIES
### § 3.1 INFORMATION AND SERVICES
§ 3.1.1 The Owner shall provide full information in a timely manner regarding the requirements of the Project, including a program which sets forth the Owner's objectives, constraints and criteria, including space requirements and relationships, flexibility and expandability requirements, special equipment and systems, and site requirements.

§ 3.1.2 The Owner shall, at the written request of the Construction Manager prior to commencement of the Construction Phase and thereafter, furnish to the Construction Manager reasonable evidence that financial arrangements have been made to fulfill the Owner's obligations under the Contract. Furnishing of such evidence shall be a condition precedent to commencement or continuation of the Work. After such evidence has been furnished, the Owner shall not materially vary such financial arrangements without prior notice to the Construction Manager.

§ 3.1.3 The Owner shall establish and update an overall budget for the Project, based on consultation with the Construction Manager and Architect, which shall include contingencies for changes in the Work and other costs which are the responsibility of the Owner.

### § 3.1.4 STRUCTURAL AND ENVIRONMENTAL TESTS, SURVEYS AND REPORTS
In the Preconstruction Phase, the Owner shall furnish the following with reasonable promptness and at the Owner's expense. Except to the extent that the Construction Manager knows of any inaccuracy, the Construction Manager shall be entitled to rely upon the accuracy of any such information, reports, surveys, drawings and tests described in Sections 3.1.4.1 through 3.1.4.4 but shall exercise customary precautions relating to the performance of the Work.

§ 3.1.4.1 Reports, surveys, drawings and tests concerning the conditions of the site which are required by law.

§ 3.1.4.2 Surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a written legal description of the site. The surveys and legal information shall include, as applicable, grades and lines of streets, alleys, pavements and adjoining property and structures; adjacent drainage; rights-of-way, restrictions, easements, encroachments, zoning, deed restrictions, boundaries and contours of the site; locations, dimensions and necessary data pertaining to existing buildings, other improvements and trees; and information concerning available utility services and lines, both public and private, above and below grade, including inverts and depths. All information on the survey shall be referenced to a project benchmark.

§ 3.1.4.3 The services of a geotechnical engineer when such services are requested by the Construction Manager. Such services may include but are not limited to test borings, test pits, determinations of soil bearing values, percolation tests, evaluations of hazardous materials, ground corrosion and resistivity tests, including necessary operations for anticipating subsoil conditions, with reports and appropriate professional recommendations.

§ 3.1.4.4 Structural, mechanical, chemical, air and water pollution tests, tests for hazardous materials, and other laboratory and environmental tests, inspections and reports which are required by law.

§ 3.1.4.5 The services of other consultants when such services are reasonably required by the scope of the Project and are requested by the Construction Manager.

### § 3.2 OWNER'S DESIGNATED REPRESENTATIVE
The Owner shall designate in writing a representative who shall have express authority to bind the Owner with respect to all matters requiring the Owner's approval or authorization. This representative shall have the authority to make decisions on behalf of the Owner concerning estimates and schedules, construction budgets, and changes in the Work, and shall render such decisions promptly and furnish information expeditiously, so as to avoid unreasonable delay in

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 09:04:09 on 01/03/2012 under Order No.8032969203_1 which expires on 03/22/2012, and is not for resale. User Notes:                                                                                                                                          (842419511)

the services or Work of the Construction Manager. Except as otherwise provided in Section 4.2.1 of A201™–1997, the Architect does not have such authority.

*(Paragraph deleted)*
### § 3.3 ARCHITECT
The CM shall retain an Architect and other design professionals to provide Basic Services, including all civil, landscaping, architectural, structural, mechanical and electrical engineering services, other than cost estimating services, described in the edition of AIA® Document B143™ 2004, current as of the date of this Agreement. Such services shall be provided in accordance with time schedules agreed to by the Owner, and Construction Manager.

*(Paragraphs deleted)*
### § 3.4 LEGAL REQUIREMENTS
The Owner shall determine and advise the Architect and Construction Manager of any special legal requirements relating specifically to the Project which differ from those generally applicable to construction in the jurisdiction of the Project. The Owner shall furnish such legal services as are necessary to provide the information and services required under Section 3.1. Construction Manager and its Subcontractors and Suppliers shall perform all Work in conformance with the requirement of the Construction Documents and all applicable building codes and requirements of governmental authorities having jurisdiction over the Project.

### ARTICLE 4   COMPENSATION AND PAYMENTS FOR PRECONSTRUCTION PHASE SERVICES
The Owner shall compensate and make payments to the Construction Manager for Preconstruction Phase services as follows:

### § 4.1 COMPENSATION
§ 4.1.1 For the services described in Sections 2.1 and 2.2, the Construction Manager's compensation shall be calculated as follows:
*(State basis of compensation, whether a stipulated sum, , multiple of Direct Personnel Expense, actual cost, etc. Include a statement of reimbursable cost items as applicable.)*

A "Not To Exceed" value of Seven Hundred and fourteen Thousand Seven Hundred and Thirty Six ($714,736) for all demolition and early site work related to the project scope.

§ 4.1.2 If compensation is based on a multiple of Direct Personnel Expense, Direct Personnel Expense is defined as the direct salaries of the Construction Manager's personnel engaged in the Project and the portion of the cost of their mandatory and customary contributions and benefits related thereto, such as employment taxes and other statutory employee benefits, insurance, sick leave, holidays, vacations, pensions and similar contributions and benefits.

### § 4.2 PAYMENTS
§ 4.2.1 Payments shall be made monthly following presentation of the Construction manager's invoice and, where applicable, shall be in proportion to services performed.

§ 4.2.2 Payments are due and payable Thirty (30) days from the date of the Construction Manager's invoice is received by the Owner. Amounts unpaid after the date on which payment is due shall bear interest at the rate entered below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.
*(Insert rate of interest agreed upon.)*

1.00% per annum

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Contractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

### ARTICLE 5   COMPENSATION FOR CONSTRUCTION PHASE SERVICES
The Owner shall compensate the Construction Manager for Construction Phase services as follows:

Init.

/

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:04:09 on 01/03/2012 under Order No.8032969203_1 which expires on 03/22/2012, and is not for resale. User Notes:                                                                                                                                          (842419511)

§ 5.1 COMPENSATION

§ 5.1.1 For the Construction Manager's performance of the Work as described in Section 2.3, the Owner shall pay the Construction Manager in current funds the Contract Sum consisting of the Cost of the Work as defined in Article 6 and the Construction Manager's Fee determined as follows:

*(State a lump sum, percentage of actual Cost of the Work or other provision for determining the Construction Manager's Fee, and explain how the Construction Manager's Fee is to be adjusted for changes in the Work.)*

2.6% of the Cost of the Work.

*(Table deleted)*
*(Paragraphs deleted)*
§ 5.2 GUARANTEED MAXIMUM PRICE

§ 5.2.1 The sum of the Cost of the Work and the Construction Manager's Fee are guaranteed by the Construction Manager not to exceed the amount provided in Amendment No. 1, subject to additions and deductions by changes in the Work as provided in the Contract Documents. Such maximum sum as adjusted by approved changes in the Work is referred to in the Contract Documents as the Guaranteed Maximum Price. Cost which would cause the Guaranteed Maximum Price to be exceeded shall be paid by the Construction Manager without reimbursement by the Owner.

The Construction Manager will not participate in any GMP savings.

*(Insert specific provisions if the Construction Manager is to participate in any savings.)*

*(Paragraph deleted)*
§ 5.3 CHANGES IN THE WORK

§ 5.3.1 Adjustments to the Guaranteed Maximum Price on account of changes in the Work subsequent to the execution of Amendment No. 1 may be determined by any of the methods listed in Section 7.3.3 of A201™–1997.

§ 5.3.2 In calculating adjustments to subcontracts (except those awarded with the Owner's prior consent on the basis of cost plus a fee), the terms "cost" and "fee" as used in Section 7.3.3.3 of A201™–1997 and the terms "costs" and "a reasonable allowance for overhead and profit" as used in Section 7.3.6 of A201™–1997 shall have the meanings assigned to them in that document and shall not be modified by this Article 5. Adjustments to subcontracts awarded with the Owner's prior consent on the basis of cost plus a fee shall be calculated in accordance with the terms of those subcontracts.

§ 5.3.3 In calculating adjustments to the Contract, the terms "cost" and "costs" as used in the above-referenced provisions of A201™–1997 shall mean the Cost of the Work as defined in Article 6 of this Agreement, and the term "and a reasonable allowance for main office overhead and profit" shall mean the Construction Manager's Fee as defined in Section 5.1.1 of this Agreement. Project Overhead directly related to the project shall be covered as a reimbursable under Article 6.

*(Paragraphs deleted)*
ARTICLE 6   COST OF THE WORK FOR CONSTRUCTION PHASE
§ 6.1 COSTS TO BE REIMBURSED

§ 6.1.1 The term "Cost of the Work" shall mean costs necessarily incurred by the Construction Manager in the proper performance of the Work. Such costs shall be at rates not higher than those customarily paid at the place of the Project except with prior consent of the Owner. The Cost of the Work shall include only the items set forth in this Article 6.

§ 6.1.2 LABOR COSTS
    .1    Wages of construction workers directly employed by the Construction Manager to perform the construction of the Work at the site or, with the Owner's agreement, at off-site workshops.
    .2    DELETED

Init.

/

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 09:04:09 on 01/03/2012 under Order No.8032969203_1 which expires on 03/22/2012, and is not for resale.
User Notes:    (842419511)

10

To Be Determined                          To Be Determined

    .3    With prior written approval of the Owner, wages and salaries of the Construction Manager's supervisory or administrative personnel engaged on direct project work, at factories, workshops or on the road, in expediting the production or transportation of materials or equipment required for the Work, but only for that portion of their time required for the Work.

    .4    Cost of all labor add-ons insofar as such cost is based on wages, salaries or other remuneration paid to employees of the Construction Manager and included in the Cost of the Project.  Labor add-ons include, but are not limited to, taxes, such as social security and unemployment; insurance such as workers' compensation, liability, medical, life and disability; vacation and sick pay and other welfare and employee benefits such as pension plans, employee retirement income plans, and 13th month pay. In lieu of Owner paying actual cost of labor add-ons for Construction Manager's salaried and non-craft hourly employees, Owner shall pay fifty-two percent (52%) of such employees' salary to cover labor add-ons.

## § 6.1.3 SUBCONTRACT COSTS
Payments made by the Construction Manager to Subcontractors in accordance with the requirements of the subcontracts.

## § 6.1.4 COSTS OF MATERIALS AND EQUIPMENT INCORPORATED IN THE COMPLETED CONSTRUCTION
    .1    Costs, including transportation, of materials and equipment incorporated or to be incorporated in the completed construction.

    .2    Costs of materials described in the preceding Section 6.1.4.1 in excess of those actually installed but required to provide reasonable allowance for waste and for spoilage. Unused excess materials, if any, shall be handed over to the Owner at the completion of the Work or, at the Owner's option, shall be sold by the Construction Manager; amounts realized, if any, from such sales shall be credited to the Owner as a deduction from the Cost of the Work.

## § 6.1.5 COSTS OF OTHER MATERIALS AND EQUIPMENT, TEMPORARY FACILITIES AND RELATED ITEMS
    .1    Costs, including transportation, installation, maintenance, dismantling and removal of materials, supplies, temporary facilities, machinery, equipment, and hand tools not customarily owned by the construction workers, which are provided by the Construction Manager at the site and fully consumed in the performance of the Work; and cost less salvage value on such items if not fully consumed, whether sold to others or retained by the Construction Manager. Cost for items previously used by the Construction Manager shall mean fair market value.

    .2    Rental charges for temporary facilities, machinery, equipment and hand tools not customarily owned by the construction workers, which are provided by the Construction Manager at the site, whether rented from the Construction Manager or others, and costs of transportation, installation, minor repairs and replacements, dismantling and removal thereof. Rates and quantities of equipment rented shall be subject to the Owner's prior approval.

    .3    Costs of removal of debris from the site.

    .4    Reproduction costs,  facsimile transmissions and long-distance telephone calls, postage and express delivery charges, telephone at the site and reasonable petty cash expenses of the site office

    .5    With owner prior approval, that portion of the reasonable travel and subsistence expenses of the Construction Manager's personnel incurred while traveling in discharge of duties connected with the Work.

    .6    Cost or rental of temporary portable buildings and toilets as required, also cost of utilities, ice, water, water containers, cups, fire extinguishers, first-aid supplies, safety equipment, safety awards and incentives, safety lunches, drug and alcohol testing, and off-site storage space or facilities.

    .7    Cost of constructing, leasing or rental of buildings required for field offices, tool rooms, crew shacks and warehousing and cost of operating such facilities, including utilities, furniture, office equipment and supplies, telephone service, calls and telegrams, postage and expressage and similar items in connection with the Project.

    .8    Cost of producing and handling reports, schedules, manuals, drawings, specifications and other documents required for the Project.

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 09:04:09 on 01/03/2012 under Order No.8032969203_1 which expires on 03/22/2012, and is not for resale. User Notes:                                                                                                                          (842419511)

.9 Cost of the premiums for all bonds including Construction Manager's bond and bonds for Subcontractors and Suppliers. At Construction Manager's option, Construction Manager may elect to enroll Subcontractors in Subguard in lieu of requiring a performance and payment bond and the premium cost of such Subguard coverage will be billed to and paid by the Project at a rate of .97%* of the subcontract value and any subsequent adjustments.

*Rate is subject to adjustment at annual Subguard policy renewal. Premium costs using the renewal rate will be billed to and paid by the Project.

.10 Cost of outside consultants and professional personnel as may be necessary in connection with the services to be provided by Construction Manager with prior Owner approval.

## § 6.1.6 MISCELLANEOUS COSTS

.1 That portion directly attributable to this Contract of premiums for insurance and bonds. *(If charges for self-insurance are to be included, specify the basis of reimbursement.)*

.2 Sales, use or similar taxes imposed by a governmental authority which are related to the Work and for which the Construction Manager is liable.

.3 Fees and assessments for the building permit and for other permits, licenses and inspections for which the Construction Manager is required by the Contract Documents to pay.

.4 Fees of testing laboratories for tests required by the Contract Documents, except those related to non-conforming Work other than that for which payment is permitted by Section 6.1.8.2.

.5 Permit fees, licenses, tests and inspections, royalties, damages for infringement of patents and costs of defending suits therefor. If royalties or losses and damages, including costs of defense, are incurred which arise from a particular design, process or the product of a particular manufacturer or manufacturers specified by the Owner or Architect, such royalties, losses and damages shall be paid by the Owner and not considered as within the GMP.

.6 Costs associated with the provision of the Project Information Website and webcams

.7 Legal, mediation and arbitration costs, other than those arising from disputes between the Owner and Construction Manager, reasonably incurred by the Construction Manager in the performance of the Work and with the Owner's written permission, which permission shall not be unreasonably withheld.

.8 Expenses incurred in accordance with Construction Manager's standard personnel policy for relocation and temporary living allowances of personnel required for the Work, in case it is necessary to relocate such personnel from distant locations with Owner prior approval.

.9 At Construction Manager's option, Construction Manager may elect to implement a general liability wrap-up program providing Commercial General Liability insurance coverage to subcontractors as well as the Construction Manager and the premium cost of such general liability wrap-up will be billed to and paid by the Project at a rate of 1.4% of total Project cost (cost of work plus Construction Manager's fee).

## § 6.1.7 OTHER COSTS

.1 Other costs incurred in the performance of the Work if and to the extent approved in advance in writing by the Owner.

## § 6.1.8 EMERGENCIES AND REPAIRS TO DAMAGED OR NONCONFORMING WORK

The Cost of the Work shall also include costs described in Section 6.1.1 which are incurred by the Construction Manager:

.1 In taking action to prevent threatened damage, injury or loss in case of an emergency affecting the safety of persons and property, as provided in Section 10.6 of A201™–1997.

.2 In repairing or correcting damaged or non-conforming Work executed by the Construction Manager or the Construction Manager's Subcontractors or suppliers, provided that such damaged or non-conforming Work was not caused by the negligence or failure to fulfill a specific responsibility to the Owner set forth in this agreement of the Construction Manager or the Construction Manager's foremen, engineers or superintendents, or other supervisory, administrative or managerial personnel of the Construction Manager, or the or the failure of the Construction Manager's personnel to supervise adequately the Work of the Subcontractors or suppliers, and only to the extent that the cost of repair or

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:04:09 on 01/03/2012 under Order No.8032959203_1 which expires on 03/22/2012, and is not for resale. User Notes:                                                                                                                                (842419511)

correction is not recoverable by the Construction Manager from insurance, Subcontractors or suppliers. The Construction Manager shall be reimbursed for 50% (Fifty percent) of the costs without any Construction Manager Fee related to Work that falls under this category of costs.

§ **6.1.9** The costs described in Sections 6.1.1 through 6.1.8 shall be included in the Cost of the Work notwithstanding any provision of A201™–1997 or other Conditions of the Contract which may require the Construction Manager to pay such costs, unless such costs are excluded by the provisions of Section 6.2.

§ **6.2 COSTS NOT TO BE REIMBURSED**
§ **6.2.1** The Cost of the Work shall not include:

.1   Salaries and other compensation of the Construction Manager's personnel stationed at the Construction Manager's principal office or offices other than the site office, except as specifically provided in Sections 6.1.2.2 and 6.1.2.3.

.2   Expenses of the Construction Manager's principal office and offices other than the site office, except as specifically provided in Section 6.1.

.3   Overhead and general expenses, except as may be expressly included in Section 6.1.

.4   The Construction Manager's capital expenses, including interest on the Construction Manager's capital employed for the Work.

.5   Rental costs of machinery and equipment, except as specifically provided in Section 6.1.5.2.

.6   Except as provided in Section 6.1.8.2, costs due to the negligence of the Construction Manager or to the failure of the Construction Manager to fulfill a specific responsibility to the Owner set forth in this agreement.

.7   Costs incurred in the performance of Preconstruction Phase Services.

.8   Except as provided in Section 6.1.7.1, any cost not specifically and expressly described in Section 6.1.

.9   Costs which would cause the Guaranteed Maximum Price to be exceeded.

*(Paragraphs deleted)*
§ **6.3 DISCOUNTS, REBATES AND REFUNDS**
§ **6.3.1** Construction Manager shall notify the Owner of discount opportunities and if the Owner provides payment as necessary to allow the Construction Manager to take the discount, then such cash discounts obtained on payments made by the Construction Manager shall accrue to the Owner.

§ **6.3.2** Amounts which accrue to the Owner in accordance with the provisions of Section 6.3.1 shall be credited to the Owner as a deduction from the Cost of the Work.

§ **6.4 ACCOUNTING RECORDS**
§ **6.4.1** The Construction Manager shall keep full and detailed accounts and exercise such controls as may be necessary for proper financial management under this Contract; the accounting and control systems shall be satisfactory to the Owner. The Owner and the Owner's accountants shall be afforded access to the Construction Manager's records, books, correspondence, instructions, drawings, receipts, subcontracts, purchase orders, vouchers, memoranda and other data relating to this Project, and the Construction Manager shall preserve these for a period of three years after final payment, or for such longer period as may be required by law.

*(Paragraphs deleted)*
**ARTICLE 7   CONSTRUCTION PHASE PAYMENTS**

*(Paragraphs deleted)*
§ **7.1 PROGRESS PAYMENTS**
§ **7.1.1** Based upon Applications for Payment submitted to the Architect by the Construction Manager and Certificates for Payment issued by the Architect, the Owner shall make progress payments for Work properly performed to the date of such application for payment on account of the Contract Sum to the Construction Manager as provided below and elsewhere in the Contract Documents.

§ **7.1.2** The period covered by each Application for Payment shall be one calendar month ending on the last day of the month.

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 09:04:09 on 01/03/2012 under Order No.8032969203_1 which expires on 03/22/2012, and is not for resale. User Notes:                                                                                                                                    (842419511)

13

§ 7.1.3 Provided an Application for Payment is received by the Architect not later than the Thirty-first day of a month, the Owner shall make payment to the Construction Manager not later than the Thirty-first day of the following month. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than Thirty ( 30 ) days after the Architect receives the Application for Payment.

§ 7.1.4 With each Application for Payment, the Construction Manager shall submit payrolls, petty cash accounts, receipted invoices or invoices with check vouchers attached and any other evidence required by the Owner or Architect to demonstrate that cash disbursements already made by the Construction Manager on account of the Cost of the Work equal or exceed (1) progress payments already received by the Construction Manager; less (2) that portion of those payments attributable to the Construction Manager's Fee; plus (3) payrolls for the period covered by the present Application for Payment.

§ 7.1.5 With each Application for Payment, the Construction Manager shall submit the Schedule of Values which matches the estimated Cost of Work as of the date of such Application for Payment allocated among various portions of the Work. Construction Manager's Fee and Contingency allowance shall each be shown as separate line items in the Schedule of Values. In the event the Schedule of Values exceeds the GMP, the Construction Manager shall submit to the Owner a written plan to reduce the Cost of the Work, reduce the Contingency, reduce the Construction Managers Fee or otherwise pay the costs exceeding the GMP.

§ 7.1.6 Applications for Payment shall show the percentage completion of each portion of the Work as of the end of the period covered by the Application for Payment. The percentage completion shall be the lesser of (1) the percentage of that portion of the Work which has actually been completed or (2) the percentage obtained by dividing (a) the expense which has actually been incurred by the Construction Manager on account of that portion of the Work for which the Construction Manager has made or intends to make actual payment prior to the next Application for Payment by (b) the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values.

§ 7.1.7 Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:
- .1 The Cost of the Work properly performed and completed plus the cost of material purchased and properly stored during the period applicable to the Application for Payment.

- .2 Add the Construction Manager's Fee, less retainage of Five percent ( 5.00% ). The Construction Manager's Fee shall be computed upon the Cost of the Work described in the two preceding Sections at the rate stated in Section 5.1.1 or, if the Construction Manager's Fee is stated as a fixed sum in that Section, shall be an amount which bears the same ratio to that fixed-sum Fee as the Cost of the Work in the two preceding Sections bears to a reasonable estimate of the probable Cost of the Work upon its completion.

*(Paragraph deleted)*
- .3 Subtract the aggregate of previous payments made by the Owner.
- .4 Subtract the shortfall, if any, indicated by the Construction Manager in the documentation required by Section 7.1.4 to substantiate prior Applications for Payment, or resulting from errors subsequently discovered by the Owner's accountants in such documentation.
- .5 Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Section 9.5 of A201™–1997.

§ 7.1.8 Except with the Owner's prior approval, payments to Subcontractors shall be subject to retention of not less than Five percent ( 5.00% ). The Owner and the Construction Manager shall agree upon a mutually acceptable procedure for review and approval of payments and retention for subcontracts.

§ 7.1.9 Except with the Owner's prior approval, the Construction Manager shall not make advance payments to suppliers for materials or equipment which have not been delivered and stored at the site.

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 09:04:09 on 01/03/2012 under Order No.8032969203_1 which expires on 03/22/2012, and is not for resale. User Notes:                                                                                                    (842419511)

§ 7.1.10 In taking action on the Construction Manager's Applications for Payment, the Architect shall be entitled to rely on the accuracy and completeness of the information furnished by the Construction Manager and shall not be deemed to represent that the Architect has made a detailed examination, audit or arithmetic verification of the documentation submitted in accordance with Section 7.1.4 or other supporting data, that the Architect has made exhaustive or continuous on-site inspections or that the Architect has made examinations to ascertain how or for what purposes the Construction Manager has used amounts previously paid on account of the Contract. Such examinations, audits and verifications, if required by the Owner, will be performed by the Owner's accountants acting in the sole interest of the Owner.

### § 7.2 FINAL PAYMENT

§ 7.2.1 Final payment shall be made by the Owner to the Construction Manager when (1) the Contract has been fully performed by the Construction Manager except for the Construction Manager's responsibility to correct nonconforming Work, as provided in Section 12.2.2 of A201™–1997, and to satisfy other requirements, if any, which necessarily survive final payment; (2) a final Application for Payment and a final accounting for the Cost of the Work have been submitted by the Construction Manager and reviewed by the Owner's accountants; and (3) a final Certificate for Payment has then been issued by the Architect; such final payment shall be made by the Owner not more than 30 days after the issuance of the Architect's final Certificate for Payment, or as follows:

Forty Six (46) days following the issuance of the Architect's Final Certificate.

§ 7.2.2 The amount of the final payment shall be calculated as follows:
.1 Take the sum of the Cost of the Work substantiated by the Construction Manager's final accounting and the Construction Manager's Fee, but not more than the Guaranteed Maximum Price.
.2 Subtract amounts, if any, for which the Architect withholds, in whole or in part, a final Certificate for Payment as provided in Section 9.5.1 of A201™–1997 or other provisions of the Contract Documents.

.3 Subtract the aggregate of previous payments made by the Owner.

If the aggregate of previous payments made by the Owner exceeds the amount due the Construction Manager, the Construction Manager shall reimburse the difference to the Owner.

§ 7.2.3 The Owner's accountants will review and report in writing on the Construction Manager's final accounting within 30 days after delivery of the final accounting to the Architect by the Construction Manager. Based upon such Cost of the Work as the Owner's accountants report to be substantiated by the Construction Manager's final accounting, and provided the other conditions of Section 7.2.1 have been met, the Architect will, within seven days after receipt of the written report of the Owner's accountants, either issue to the Owner a final Certificate for Payment with a copy to the Construction Manager or notify the Construction Manager and Owner in writing of the Architect's reasons for withholding a certificate as provided in Section 9.5.1 of A201™–1997 . The time periods stated in this Section 7.2 supersede those stated in Section 9.4.1 of A201™–1997.

§ 7.2.4 If the Owner's accountants report the Cost of the Work as substantiated by the Construction Manager's final accounting to be less than claimed by the Construction Manager, the Construction Manager shall be entitled to proceed in accordance with Article 9 without a further decision of the Architect. Unless agreed to otherwise, a demand for mediation or arbitration of the disputed amount shall be made by the Construction Manager within 60 days after the Construction Manager's receipt of a copy of the Architect's final Certificate for Payment. Failure to make such demand within this 60-day period shall result in the substantiated amount reported by the Owner's accountants becoming binding on the Construction Manager. Pending a final resolution of the disputed amount, the Owner shall pay the Construction Manager the amount certified in the Architect's final Certificate for Payment.

### ARTICLE 8   INSURANCE AND BONDS
*(Paragraph deleted)*
*(Table deleted)*
*(Paragraphs deleted)*

Init.

/

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:04:09 on 01/03/2012 under Order No.8032969203_1 which expires on 03/22/2012, and is not for resale.
User Notes:                                                                                                                                          (842419511)

### § 8.1 INSURANCE REQUIRED OF THE CONSTRUCTION MANAGER

During both phases of the Project, the Construction Manager shall purchase and maintain insurance as set forth in Section 11.1 of A201™–1997. Such insurance shall be written for not less than the following limits, or greater if required by law:

**§ 8.1.1** Workers' Compensation and Employers Liability meeting statutory limits mandated by state and federal laws. If (1) limits in excess of those required by statute are to be provided, or (2) the employer is not statutorily bound to obtain such insurance coverage or (3) additional coverages are required, additional coverages and limits for such insurance shall be as follows:

TBA

**§ 8.1.2** Commercial General Liability including coverage for Premises-Operations, Independent Contractors' Protective, Products-Completed Operations, Contractual Liability, Personal Injury and Broad Form Property Damage (including coverage for Explosion, Collapse and Underground hazards):

    $25,000,000.00  Each Occurrence
    $25,000,000.00  General Aggregate
    $25,000,000.00  Personal and Advertising Injury
    $25,000,000.00  Products-Completed Operations Aggregate.

    .1    The policy shall be endorsed to have the General Aggregate apply to this Project only.
    .2    Products and Completed Operations insurance shall be maintained for a minimum period of at least Three ( 3 ) year(s) after either 90 days following Substantial Completion or final payment, whichever is earlier.
    .3    The Contractual Liability insurance shall include coverage sufficient to meet the obligations in Section 3.18 of A201™–1997.

**§ 8.1.3** Automobile Liability (owned, non-owned and hired vehicles) for bodily injury and property damage:
    $5,000,000.00  Each Accident

**§ 8.1.4** Other coverage:

TBA

*(If Umbrella Excess Liability coverage is required over the primary insurance or retention, insert the coverage limits. Commercial General Liability and Automobile Liability limits may be attained by individual policies or by a combination of primary policies and Umbrella and/or Excess Liability policies. If Project Management Protective Liability Insurance is to be provided, state the limits here.)*

### § 8.2 INSURANCE REQUIRED OF THE OWNER

During both phases of the Project, the Owner shall purchase and maintain liability and property insurance, including waivers of subrogation, as set forth in Sections 11.2 and 11.4 of A201™–1997. Such insurance shall be written for not less than the following limits, or greater if required by law:

**§ 8.2.1** Property Insurance:
    $25,000.00  Deductible Per Occurrence
    $50,000.00  Aggregate Deductible

**§ 8.2.2** Boiler and Machinery Insurance with a limit of: $1,000,000.00.
*(If not a blanket policy, list the objects to be insured.)*

### § 8.3 PERFORMANCE BOND AND PAYMENT BOND

**§ 8.3.1** The Construction Manager shall not *(insert "shall" or "shall not")* furnish bonds covering faithful performance of the Contract and payment of obligations arising thereunder. Bonds may be obtained through the

**Init.**

**/**

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 11:37:56 on 01/05/2012 under Order No.8032969203_1 which expires on 03/22/2012, and is not for resale.
User Notes:    (1213485928)

**16**

Construction Manager's usual source, and the cost thereof shall be included in the Cost of the Work. The amount of each bond shall be equal to      (      ) of the Contract Sum.

§ 8.3.2 The Construction Manager shall deliver the required bonds to the Owner at least three days before the commencement of any Work at the Project site.

### ARTICLE 9    MISCELLANEOUS PROVISIONS
### § 9.1 DISPUTE RESOLUTION
*(Paragraphs deleted)*
§ 9.1.1 In an effort to resolve any claim, dispute or other matter in question arising out of or related to this Agreement or breach thereof, either party may request mediation in accordance with the Construction Industry Mediation Rules of the American Arbitration Association, the costs of which shall be equally shared by the parties.

### § 9.2 OTHER PROVISIONS
§ 9.2.1 Unless otherwise noted, the terms used in this Agreement shall have the same meaning as those in A201™–1997, *General Conditions of the Contract for Construction.*

### § 9.2.2 EXTENT OF CONTRACT
This Contract, which includes this Agreement and the other documents incorporated herein by reference, represents the entire and integrated agreement between the Owner and the Construction Manager and supersedes all prior negotiations, representations or agreements, either written or oral. This Agreement may be amended only by written instrument signed by both the Owner and Construction Manager. If anything in any document incorporated into this Agreement is inconsistent with this Agreement, this Agreement shall govern.

### § 9.2.3 OWNERSHIP AND USE OF DOCUMENTS
Article 1.6 of A201™–1997 shall apply to both the Preconstruction and Construction Phases.

### § 9.2.4 GOVERNING LAW
The Contract shall be governed by the law of the place where the Project is located.

### § 9.2.5 ASSIGNMENT
The Owner and Construction Manager respectively bind themselves, their partners, successors, assigns and legal representatives to the other party hereto and to partners, successors, assigns and legal representatives of such other party in respect to covenants, agreements and obligations contained in the Contract Documents. Except as provided in Section 13.2.2 of A201™–1997, neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make such an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.

### ARTICLE 10    TERMINATION OR SUSPENSION
### § 10.1 TERMINATION
§ 10.1.1 The Owner may terminate this Contract at any time with or without cause, and the Construction Manager may terminate this Contract for any of the reasons described in Subparagraph 14.1.1 of AIA Document A201-1997.

§ 10.1.2 If the Owner or Construction Manager terminates this Contract pursuant to this Section 10.1, the Construction Manager shall be equitably compensated for Preconstruction Phase Services performed prior to receipt of notice of termination; provided, however, that the compensation for such services shall not exceed the compensation set forth in Section 4.1.1.

§ 10.1.3 If the Owner or Construction Manager terminates this Contract pursuant to this Section 10.1 after commencement of the Construction Phase, the Construction Manager shall, in addition   to the compensation provided in Section 10.1.2, be paid an amount calculated as follows:

    .1   Take the Cost of the Work incurred by the Construction Manager to the date of termination

    .2   Add the Construction Manager's Fee computed upon the Cost of the Work to the date of termination at the rate stated in Section 5.1 or, if the Construction Manager's Fee is stated as a fixed sum in that Section, an amount which bears the same ratio to that fixed-sum Fee as the Cost of the Work at the time of termination bears to a reasonable estimate of the probable Cost of the Work upon its completion.

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. **WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law.** This document was produced by AIA software at 09:04:09 on 01/03/2012 under Order No.8032969203_1 which expires on 03/22/2012, and is not for resale.
User Notes:                                                                                                                    (842419511)

**17**

.3    Subtract the aggregate of previous payments made by the Owner on account of the Construction Phase.

The Owner shall also pay the Construction Manager fair compensation, either by purchase or rental at the election of the Owner, for any equipment owned by the Construction Manager which the Owner elects to retain and which is not otherwise included in the Cost of the Work under Section 10.1.3.1. To the extent that the Owner elects to take legal assignment of subcontracts and purchase orders (including rental agreements), the Construction Manager shall, as a condition of receiving the payments referred to in this Article 10, execute and deliver all such papers and take all such steps, including the legal assignment of such subcontracts and other contractual rights of the Construction Manager, as the Owner may require for the purpose of fully vesting in the Owner the rights and benefits of the Construction Manager under such subcontracts or purchase orders.

Subcontracts, purchase orders and rental agreements entered into by the Construction Manager with the Owner's written approval prior to the execution of Amendment No. 1 shall contain provisions permitting assignment to the Owner as described above. If the Owner accepts such assignment, the Owner shall reimburse or indemnify the Construction Manager with respect to all costs arising under the subcontract, purchase order or rental agreement except those which would not have been reimbursable as Cost of the Work if the contract had not been terminated. If the Owner elects not to accept the assignment of any subcontract, purchase order or rental agreement which would have constituted a Cost of the Work had this agreement not been terminated, the Construction Manager shall terminate such subcontract, purchase order or rental agreement and the Owner shall pay the Construction Manager the costs necessarily incurred by the Construction Manager by reason of such termination.

*(Paragraphs deleted)*
### § 10.3 SUSPENSION
The Work may be suspended by the Owner as provided in Article 14 of A201™–1997; in such case, the Guaranteed Maximum Price, if established, shall be increased as provided in Section 14.3.2 of A201™–1997 except that the term "cost of performance of the Contract" in that Section shall be understood to mean the Cost of the Work and the term "profit" shall be understood to mean the Construction Manager's Fee as described in Sections 5.1.1 and 5.3.4 of this Agreement.

### ARTICLE 11   OTHER CONDITIONS AND SERVICES

TBA

This Agreement is entered into as of the day and year first written above.

**OWNER** *(Signature)*
Scott R. Simplot, Manager
JRS Management L.L.C. General Partner
of JRS Properties III L.P.
*(Printed name and title)*

January 9, 2012
*(Date)*
Janene A. Kathin
XXXXXX (Witness)

**CONSTRUCTION MANAGER** *(Signature)*

DAN HANAMAN, EXECUTIVE VICE PRESIDENT
*(Printed name and title)*

JANUARY 3, 2012
*(Date)*
Gayle DuVall
*(Attest)*

*(Table deleted)(Paragraphs deleted)*

Init.

AIA Document A133™ – 2009 (formerly A121™CMc – 2003). Copyright © 1991, 2003 and 2009 by The American Institute of Architects. All rights reserved. WARNING: This AIA® Document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this AIA® Document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 09:04:09 on 01/03/2012 under Order No.8032969203_1 which expires on 03/22/2012, and is not for resale.
User Notes:                                                                                           (842419511)

# AIA° Document A121™CMc – 2003 and AGC Document 565

## *Standard Form of Agreement Between Owner and Construction Manager* where the Construction Manager is Also the Constructor

**AGREEMENT** made as of the First day of December in the year Two Thousand Eight
*(In words, indicate day, month and year.)*

**BETWEEN** the Owner:
*(Name and address)*

JR Simplot Foundation, Inc.
999 Main Street, Suite 1300
P.O. Box 27
Boise, Idaho
USA    83702

and the Construction Manager:
*(Name and address)*

Hoffman Construction Company of America
805 SW Broadway Suite 2100
Portland, Oregon
USA    97205

The Project is:
*(Name, address and brief description)*

Simplot Foundation Park and Studio Complex
Boise Idaho

The Architect is:
*(Name and address)*

Architect Susan Deako AIA – Lead (Design) Architect
Adamson Associates, AAI Architects Inc. – Executive Architect and Payment Certifier

The Owner and Construction Manager agree as set forth below:
The Project includes:
- Approximately 20,000 square feet as a Foundation Center and;
- Approximately 10,000 square feet of Foundation Studios and;
- Approximately 300,000 square feet of future expansion space and;
- Approximately 4 acres of Foundation Park, which includes an approximately 1,000 seat outdoor amphitheatre and adjacent support facilities and;
- Approximately 10,000 square feet of retail space finished to a grey space level for future tenant improvements.

**ADDITIONS AND DELETIONS:**
The author of this document has added information needed for its completion. The author may also have revised the text of the original AIA standard form. An *Additions and Deletions Report* that notes added information as well as revisions to the standard form text is available from the author and should be reviewed.

This document has important legal consequences. Consultation with an attorney is encouraged with respect to its completion or modification.

The 1997 Edition of AIA Document A201, General Conditions of the Contract for Construction, is referred to herein. This Agreement requires modification if other general conditions are utilized.

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 11:44:35 on 02/03/2009 under Order No.1000385170_1 which expires on 1/19/2010, and is not for resale.
User Notes:                                                                    (2861618915)

1

**EXHIBIT C**

**TABLE OF CONTENTS**

**ARTICLE 1  GENERAL PROVISIONS**
 § 1.1 Relationship of the Parties
 § 1.2 General Conditions

**ARTICLE 2  CONSTRUCTION MANAGER'S RESPONSIBILITIES**
 § 2.1 Preconstruction Phase
 § 2.2 Guaranteed Maximum Price Proposal and Contract Time
 § 2.3 Construction Phase
 § 2.4 Professional Services
 § 2.5 Hazardous Materials

**ARTICLE 3  OWNER'S RESPONSIBILITIES**
 § 3.1 Information and Services
 § 3.2 Owner's Designated Representative
 § 3.3 Architect
 § 3.4 Legal Requirements

**ARTICLE 4  COMPENSATION AND PAYMENTS FOR PRECONSTRUCTION PHASE SERVICES**
 § 4.1 Compensation
 § 4.2 Payments

**ARTICLE 5  COMPENSATION FOR CONSTRUCTION PHASE SERVICES**
 § 5.1 Compensation
 § 5.2 Guaranteed Maximum Price
 § 5.3 Changes in the Work

**ARTICLE 6  COST OF THE WORK FOR CONSTRUCTION PHASE**
 § 6.1 Costs to Be Reimbursed
 § 6.2 Costs Not to Be Reimbursed
 § 6.3 Discounts, Rebates and Refunds
 § 6.4 Accounting Records

**ARTICLE 7  CONSTRUCTION PHASE**
 § 7.1 Progress Payments
 § 7.2 Final Payment

**ARTICLE 8  INSURANCE AND BONDS**
 § 8.1 Insurance Required of the Construction Manager
 § 8.2 Insurance Required of the Owner
 § 8.3 Performance Bond and Payment Bond

**ARTICLE 9  MISCELLANEOUS PROVISIONS**
 § 9.1 Dispute Resolution
 § 9.2 Other Provisions

**ARTICLE 10  TERMINATION OR SUSPENSION**
 § 10.1 Termination Prior to Establishing Guaranteed Maximum Price
 § 10.2 Termination Subsequent to Establishing Guaranteed Maximum Price
 § 10.3 Suspension

**ARTICLE 11  OTHER CONDITIONS AND SERVICES**

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated
General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties.
Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and
will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 11:44:35 on 02/03/2009
under Order No.1000385170_1 which expires on 1/13/2010, and is not for resale.
User Notes: (2861618915)

2

## ARTICLE 1  GENERAL PROVISIONS
### § 1.1 RELATIONSHIP OF PARTIES
The Construction Manager accepts the relationship of trust and confidence established with the Owner by this Agreement, and covenants with the Owner to furnish the Construction Manager's reasonable skill and judgment and to cooperate with the Architect in furthering the interests of the Owner. The Construction Manager shall furnish construction administration and management services and use the Construction Manager's best efforts to perform the Project in an expeditious and economical manner consistent with the interests of the Owner and consistent with the level of skill, experience and expertise as represented in the Construction Manager's proposal dated October 15, 2008 (the "CM Proposal") which is incorporated herein by this reference. The Owner shall endeavor to promote harmony and cooperation among the Owner, Architect, Construction Manager and other persons or entities employed by the Owner for the Project.

### § 1.2 GENERAL CONDITIONS
For the Construction Phase, the General Conditions of the contract shall be the AIA® Document A201™–1997, General Conditions of the Contract for Construction, as modified , which is incorporated herein by reference. For the Preconstruction Phase, or in the event that the Preconstruction and Construction Phases proceed concurrently, A201™–1997 shall apply to the Preconstruction Phase only as specifically provided in this Agreement. The term "Contractor" as used in A201™–1997 shall mean the Construction Manager.

## ARTICLE 2  CONSTRUCTION MANAGER'S RESPONSIBILITIES
The Construction Manager shall perform the services described in this Article and in the CM Proposal. The services to be provided under Sections 2.1 and 2.2 constitute the Preconstruction Phase services. If the Owner and Construction Manager agree, after consultation with the Architect, the Construction Phase may commence before the Preconstruction Phase is completed, in which case both phases will proceed concurrently.

### § 2.1 PRECONSTRUCTION PHASE
### § 2.1.1 PRELIMINARY EVALUATION
The Construction Manager shall provide a preliminary evaluation of the Owner's program and Project budget requirements, each in terms of the other.

### § 2.1.2 CONSULTATION
The Construction Manager with the Architect shall jointly schedule and attend regular meetings with the Owner. The Construction Manager shall consult with the Owner and Architect regarding site use and improvements and the selection of materials, building systems and equipment. The Construction Manager shall provide recommendations on construction feasibility; actions designed to minimize adverse effects of labor or material shortages; time requirements for procurement, installation and construction completion; and factors related to construction cost, including estimates of alternative designs or materials, preliminary budgets and possible economies.

### § 2.1.3 PRELIMINARY PROJECT SCHEDULE
When Project requirements described in Section 3.1.1 have been sufficiently identified, the Construction Manager shall prepare, and periodically update, a preliminary Project schedule for the Architect's review and the Owner's approval. The Construction Manager shall obtain the Architect's approval of the portion of the preliminary Project schedule relating to the performance of the Architect's services. The Construction Manager shall coordinate and integrate the preliminary Project schedule with the services and activities of the Owner, Architect and Construction Manager. As design proceeds, the preliminary Project schedule shall be updated to indicate proposed activity sequences and durations, milestone dates for receipt and approval of pertinent information, submittal of a Guaranteed Maximum Price proposal, preparation and processing of shop drawings and samples, delivery of materials or equipment requiring long-lead-time procurement, Owner's occupancy requirements showing portions of the Project having occupancy priority, and proposed date of Substantial Completion. If preliminary Project schedule updates indicate that previously approved schedules may not be met, the Construction Manager shall make appropriate recommendations to the Owner and Architect.

### § 2.1.4 PHASED CONSTRUCTION
The Construction Manager shall make recommendations to the Owner and Architect regarding the phased issuance of Drawings and Specifications to facilitate phased construction of the Work, if such phased construction is

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 11:44:35 on 02/03/2009 under Order No.1000385170_1 which expires on 1/19/2010, and is not for resale.
User Notes:                                                                                                                    (2861618915)

appropriate for the Project, taking into consideration such factors as economies, time of performance, availability of labor and materials, and provisions for temporary facilities.

### § 2.1.5 PRELIMINARY COST ESTIMATES

§ 2.1.5.1 When the Owner has sufficiently identified the Project requirements and the Architect has prepared other basic design criteria, the Construction Manager shall prepare, for the review of the Architect and approval of the Owner, a preliminary cost estimate utilizing area, volume or similar conceptual estimating techniques.

§ 2.1.5.2 When Schematic Design Documents have been submitted by the Architect for approval by the Owner, the Construction Manager shall prepare, for the review of the Architect and approval of the Owner, a more detailed estimate with supporting data. During the preparation of the Design Development Documents, the Construction Manager shall update and refine this estimate at appropriate intervals agreed to by the Owner, Architect and Construction Manager.

§ 2.1.5.3 When Design Development Documents have been prepared by the Architect and approved by the Owner, the Construction Manager shall prepare a detailed estimate with supporting data for review by the Architect and approval by the Owner. During the preparation of the Construction Documents, the Construction Manager shall update and refine this estimate at appropriate intervals agreed to by the Owner, Architect and Construction Manager.

§ 2.1.5.4 If any estimate submitted to the Owner exceeds previously approved estimates or the Owner's budget, the Construction Manager shall make appropriate recommendations to the Owner and Architect. In the event such detailed estimate indicates that the Cost of the Work for all or any portion of the Project exceeds the amount previously estimated, the Construction Manager will coordinate with the Architect who shall revise the design in order to reduce the estimated Cost of the Work of the Project or to take other action as may be authorized by the Owner.

### § 2.1.6 SUBCONTRACTORS AND SUPPLIERS

The Construction Manager shall seek to develop subcontractor interest in the Project and shall furnish to the Owner and Architect for their information a list of possible subcontractors, including suppliers who are to furnish materials or equipment fabricated to a special design, from whom proposals will be requested for each principal portion of the Work. The Architect will promptly reply in writing to the Construction Manager if the Architect or Owner know of any objection to such subcontractor or supplier. The receipt of such list shall not require the Owner or Architect to investigate the qualifications of proposed subcontractors or suppliers, nor shall it waive the right of the Owner or Architect later to object to or reject any proposed subcontractor or supplier.

### § 2.1.7 LONG-LEAD-TIME ITEMS

The Construction Manager shall recommend to the Owner and Architect a schedule for procurement of long-lead-time items which will constitute part of the Work as required to meet the Project schedule. If such long-lead-time items are procured by the Owner, they shall be procured on terms and conditions acceptable to the Construction Manager. Upon the Owner's acceptance of the Construction Manager's Guaranteed Maximum Price proposal, all contracts for such items shall be assigned by the Owner to the Construction Manager, who shall accept responsibility for such items as if procured by the Construction Manager. The Construction Manager shall expedite the delivery of long-lead-time items.

### § 2.1.8 EXTENT OF RESPONSIBILITY

The Construction Manager does not warrant or guarantee estimates and schedules except as may be included as part of the Guaranteed Maximum Price. The recommendations and advice of the Construction Manager concerning design alternatives shall be subject to the review and approval of the Owner and the Owner's professional consultants. It is not the Construction Manager's responsibility to ascertain that the Drawings and Specifications are in accordance with applicable laws, statutes, ordinances, building codes, rules and regulations. However, the Construction Manager shall use diligence in its review of the Drawings and Specifications and if that review indicates that any portion of the Drawings or Specifications are at variance therewith, the Construction Manager shall promptly notify the Architect and Owner in writing.

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 11:44:35 on 02/03/2009 under Order No.1000385170_1 which expires on 1/13/2010, and is not for resale.
User Notes:                                                                                     (2861618915)

4

### § 2.1.9 EQUAL EMPLOYMENT OPPORTUNITY AND AFFIRMATIVE ACTION
The Construction Manager shall comply with applicable laws, regulations and special requirements of the Contract Documents regarding equal employment opportunity and affirmative action programs.

### § 2.2 GUARANTEED MAXIMUM PRICE PROPOSAL AND CONTRACT TIME
§ 2.2.1 When the Drawings and Specifications are sufficiently complete, the Construction Manager shall propose a Guaranteed Maximum Price, which shall be the sum of the estimated Cost of the Work and the Construction Manager's Fee.

§ 2.2.2 As the Drawings and Specifications may not be finished at the time the Guaranteed Maximum Price proposal is prepared, the Construction Manager shall provide in the Guaranteed Maximum Price for further development of the Drawings and Specifications by the Architect that is consistent with the Contract Documents and reasonably inferable therefrom. Such further development does not include such things as changes in scope, systems, kinds and quality of materials, finishes or equipment, all of which, if required, shall be incorporated by Change Order.

§ 2.2.3 The estimated Cost of the Work shall include the Construction Manager's contingency, a sum established by the Construction Manager for the Construction Manager's exclusive use to cover costs arising under Section 2.2.2 and other costs which are properly reimbursable as Cost of the Work but not the basis for a Change Order.

### § 2.2.4 BASIS OF GUARANTEED MAXIMUM PRICE
The Construction Manager shall include with the Guaranteed Maximum Price proposal a written statement of its basis, which shall include:
- .1   A list of the Drawings and Specifications, including all addenda thereto and the Conditions of the Contract, which were used in preparation of the Guaranteed Maximum Price proposal.
- .2   A list of allowances and a statement of their basis.
- .3   A list of the clarifications and assumptions made by the Construction Manager in the preparation of the Guaranteed Maximum Price proposal to supplement the information contained in the Drawings and Specifications.
- .4   The proposed Guaranteed Maximum Price, including a statement of the estimated cost organized by trade categories, allowances, contingency, and other items and the Fee that comprise the Guaranteed Maximum Price.
- .5   The Date of Substantial Completion upon which the proposed Guaranteed Maximum Price is based, and a schedule of the Construction Documents issuance dates upon which the date of Substantial Completion is based.

§ 2.2.5 The Construction Manager shall meet with the Owner and Architect to review the Guaranteed Maximum Price proposal and the written statement of its basis. In the event that the Owner or Architect discover any inconsistencies or inaccuracies in the information presented, they shall promptly notify the Construction Manager, who shall make appropriate adjustments to the Guaranteed Maximum Price proposal, its basis, or both.

§ 2.2.6 Unless the Owner accepts the Guaranteed Maximum Price proposal in writing on or before the date specified in the proposal for such acceptance and so notifies the Construction Manager, the Guaranteed Maximum Price proposal shall not be effective without written acceptance by the Construction Manager.

§ 2.2.7 Prior to the Owner's acceptance of the Construction Manager's Guaranteed Maximum Price proposal and issuance of a Notice to Proceed, the Construction Manager shall not incur any cost to be reimbursed as part of the Cost of the Work, except as the Owner may specifically authorize in writing.

§ 2.2.8 Upon acceptance by the Owner of the Guaranteed Maximum Price proposal, the Guaranteed Maximum Price and its basis shall be set forth in Amendment No. 1. The Guaranteed Maximum Price shall be subject to additions and deductions by a change in the Work as provided in the Contract Documents, and the Date of Substantial Completion shall be subject to adjustment as provided in the Contract Documents.

§ 2.2.9 The Owner shall authorize and cause the Architect to revise the Drawings and Specifications to the extent necessary to reflect the agreed-upon assumptions and clarifications contained in Amendment No. 1. Such revised Drawings and Specifications shall be furnished to the Construction Manager in accordance with schedules agreed to

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 11:44:35 on 02/03/2009 under Order No.1000385170_1 which expires on 1/19/2010, and is not for resale.
User Notes:                                                                                                    (2861618915)

by the Owner, Architect and Construction Manager. The Construction Manager shall promptly notify the Architect and Owner if such revised Drawings and Specifications are inconsistent with the agreed-upon assumptions and clarifications.

**§ 2.2.10** The Guaranteed Maximum Price shall include in the Cost of the Work only those taxes which are enacted at the time the Guaranteed Maximum Price is established.

## § 2.3 CONSTRUCTION PHASE
### § 2.3.1 GENERAL
**§ 2.3.1.1** The Construction Phase shall commence on the earlier of:
  (1)  the Owner's acceptance of the Construction Manager's Guaranteed Maximum Price proposal and
        issuance of a Notice to Proceed, or
  (2)  the Owner's first authorization to the Construction Manager to:
        (a) award a subcontract, or
        (b) undertake construction Work with the Construction Manager's own forces, or
        (c) issue a purchase order for materials or equipment required for the Work.

### § 2.3.2 ADMINISTRATION
**§ 2.3.2.1** Except as expressly authorized by the Owner in writing, all Work shall be performed under construction Subcontracts or by other appropriate agreements with the Construction Manager, the terms of such Subcontracts or other appropriate agreements shall be subject to mutual agreement between the Owner and the Construction Manager. The Construction Manager shall obtain bids from Subcontractors and from suppliers of materials or equipment fabricated to a special design for the Work from the list previously reviewed and, after analyzing such bids, shall deliver such bids to the Owner and Architect.   The Owner will then determine, with the advice of the Construction Manager and subject to the reasonable objection of the Architect, which bids will be accepted. The Owner may designate specific persons or entities from whom the Construction Manager shall obtain bids; however, if the Guaranteed Maximum Price has been established, the Owner may not prohibit the Construction Manager from obtaining bids from other qualified bidders. The Construction Manager shall not be required to contract with anyone to whom the Construction Manager has reasonable objection.

**§ 2.3.2.2** If the Guaranteed Maximum Price has been established and a specific bidder among those whose bids are delivered by the Construction Manager to the Owner and Architect (1) is recommended to the Owner by the Construction Manager; (2) is qualified to perform that portion of the Work; and (3) has submitted a bid which conforms to the requirements of the Contract Documents without reservations or exceptions, but the Owner requires that another bid be accepted, then the Construction Manager may require that a change in the Work be issued to adjust the Contract Time and the Guaranteed Maximum Price by the difference between the bid of the person or entity recommended to the Owner by the Construction Manager and the amount of the subcontract or other agreement actually signed with the person or entity designated by the Owner.

**§ 2.3.2.3** Subcontracts and agreements with suppliers furnishing materials or equipment fabricated to a special design shall conform to the payment provisions of Sections 7.1.8 and 7.1.9 and shall not be awarded on the basis of cost plus a fee without the prior consent of the Owner.

**§ 2.3.2.4** The Construction Manager shall schedule and conduct meetings at which the Owner, ArchitectConstruction Manager and specifically invited Subcontractors can discuss the status of the Work. The Construction Manager shall prepare and promptly distribute meeting minutes.

**§ 2.3.2.5** Promptly after the Owner's acceptance of the Guaranteed Maximum Price proposal, the Construction Manager shall prepare a schedule in accordance with Section 3.10 of A201™–1997, including the Owner's occupancy requirements.

**§ 2.3.2.6** The Construction Manager shall provide monthly written reports to the Owner and Architect on the progress of the entire Work. The Construction Manager shall maintain a daily log containing a record of weather, Subcontractors working on the site, number of workers, Work accomplished, problems encountered and other similar relevant data as the Owner may reasonably require. The log shall be available to the Owner and Architect.

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 11:44:35 on 02/03/2009 under Order No.1000385170_1 which expires on 1/19/2010, and is not for resale.
User Notes:                                                                                                      (2861618915)

**§ 2.3.2.7** The Construction Manager shall develop a system of cost control for the Work, including regular monitoring of actual costs for activities in progress and estimates for uncompleted tasks and proposed changes. The Construction Manager shall identify variances between actual and estimated costs and report the variances to the Owner and Architect at regular intervals.

### § 2.4 PROFESSIONAL SERVICES
Section 3.12.10 of A201™–1997 shall apply to both the Preconstruction and Construction Phases.

### § 2.5 HAZARDOUS MATERIALS
Section 10.3 of A201™–1997 shall apply to both the Preconstruction and Construction Phases.

### ARTICLE 3  OWNER'S RESPONSIBILITIES
### § 3.1 INFORMATION AND SERVICES
**§ 3.1.1** The Owner shall provide full information in a timely manner regarding the requirements of the Project, including a program which sets forth the Owner's objectives, constraints and criteria, including space requirements and relationships, flexibility and expandability requirements, special equipment and systems, and site requirements.

**§ 3.1.2** The Owner shall, at the written request of the Construction Manager prior to commencement of the Construction Phase and thereafter, furnish to the Construction Manager reasonable evidence that financial arrangements have been made to fulfill the Owner's obligations under the Contract. Furnishing of such evidence shall be a condition precedent to commencement or continuation of the Work. After such evidence has been furnished, the Owner shall not materially vary such financial arrangements without prior notice to the Construction Manager.

**§ 3.1.3** The Owner shall establish and update an overall budget for the Project, based on consultation with the Construction Manager and Architect, which shall include contingencies for changes in the Work and other costs which are the responsibility of the Owner.

### § 3.1.4 STRUCTURAL AND ENVIRONMENTAL TESTS, SURVEYS AND REPORTS
In the Preconstruction Phase, the Owner shall furnish the following with reasonable promptness and at the Owner's expense. Except to the extent that the Construction Manager knows of any inaccuracy, the Construction Manager shall be entitled to rely upon the accuracy of any such information, reports, surveys, drawings and tests described in Sections 3.1.4.1 through 3.1.4.4 but shall exercise customary precautions relating to the performance of the Work.

**§ 3.1.4.1** Reports, surveys, drawings and tests concerning the conditions of the site which are required by law.

**§ 3.1.4.2** Surveys describing physical characteristics, legal limitations and utility locations for the site of the Project, and a written legal description of the site. The surveys and legal information shall include, as applicable, grades and lines of streets, alleys, pavements and adjoining property and structures; adjacent drainage; rights-of-way, restrictions, easements, encroachments, zoning, deed restrictions, boundaries and contours of the site; locations, dimensions and necessary data pertaining to existing buildings, other improvements and trees; and information concerning available utility services and lines, both public and private, above and below grade, including inverts and depths. All information on the survey shall be referenced to a project benchmark.

**§ 3.1.4.3** The services of a geotechnical engineer when such services are requested by the Construction Manager. Such services may include but are not limited to test borings, test pits, determinations of soil bearing values, percolation tests, evaluations of hazardous materials, ground corrosion and resistivity tests, including necessary operations for anticipating subsoil conditions, with reports and appropriate professional recommendations.

**§ 3.1.4.4** Structural, mechanical, chemical, air and water pollution tests, tests for hazardous materials, and other laboratory and environmental tests, inspections and reports which are required by law.

**§ 3.1.4.5** The services of other consultants when such services are reasonably required by the scope of the Project and are requested by the Construction Manager.

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 11:44:35 on 02/03/2009 under Order No.1000385170_1 which expires on 1/19/2010, and is not for resale.
User Notes:                                                                                                      (2861618915)

### § 3.2 OWNER'S DESIGNATED REPRESENTATIVE

The Owner shall designate in writing a representative who shall have express authority to bind the Owner with respect to all matters requiring the Owner's approval or authorization. This representative shall have the authority to make decisions on behalf of the Owner concerning estimates and schedules, construction budgets, and changes in the Work, and shall render such decisions promptly and furnish information expeditiously, so as to avoid unreasonable delay in the services or Work of the Construction Manager. Except as otherwise provided in Section 4.2.1 of A201™–1997, the Architect does not have such authority.

### § 3.3 ARCHITECT

The Owner shall retain an Architect and other design professionals to provide Basic Services, including all civil, landscaping, architectural, structural, mechanical and electrical engineering services, other than cost estimating services, described in the edition of AIA® Document B141™, current as of the date of this Agreement. Such services shall be provided in accordance with time schedules agreed to by the Owner, Architect and Construction Manager. Upon request of the Construction Manager, the Owner shall furnish to the Construction Manager a copy of the Owner's Agreement with the Architect, from which compensation provisions may be deleted.

### § 3.4 LEGAL REQUIREMENTS

The Owner shall determine and advise the Architect and Construction Manager of any special legal requirements relating specifically to the Project which differ from those generally applicable to construction in the jurisdiction of the Project. The Owner shall furnish such legal services as are necessary to provide the information and services required under Section 3.1. Construction Manager and its Subcontractors and Suppliers shall perform all Work in conformance with the requirement of the Construction Documents and all applicable building codes and requirements of governmental authorities having jurisdiction over the Project.

### ARTICLE 4 COMPENSATION AND PAYMENTS FOR PRECONSTRUCTION PHASE SERVICES

The Owner shall compensate and make payments to the Construction Manager for Preconstruction Phase services as follows:

### § 4.1 COMPENSATION

§ 4.1.1 For the services described in Sections 2.1 and 2.2, the Construction Manager's compensation shall be calculated as follows:

*(State basis of compensation, whether a stipulated sum, multiple of Direct Personnel Expense, actual cost, etc. Include a statement of reimbursable cost items as applicable.)*

A "Not To Exceed" value of Thirty Thousand ($30,000) for all pre-construction work related to the project scope described in the CM Proposal.

§ 4.1.2 Compensation for Preconstruction Phase Services shall be equitably adjusted if such services extend beyond Twenty-Two months from the date of this Agreement.

§ 4.1.3 If compensation is based on a multiple of Direct Personnel Expense, Direct Personnel Expense is defined as the direct salaries of the Construction Manager's personnel engaged in the Project and the portion of the cost of their mandatory and customary contributions and benefits related thereto, such as employment taxes and other statutory employee benefits, insurance, sick leave, holidays, vacations, pensions and similar contributions and benefits.

### § 4.2 PAYMENTS

§ 4.2.1 Payments shall be made monthly following presentation of the Construction Manager's invoice and, where applicable, shall be in proportion to services performed.

§ 4.2.2 Payments are due and payable Thirty ( 30 ) days from the date the Construction Manager's invoice is received by the Owner. Amounts unpaid after the date on which payment is due shall bear interest at the rate entered below, or in the absence thereof, at the legal rate prevailing from time to time at the place where the Project is located.

*(Insert rate of interest agreed upon.)*

1.00% per annum

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 11:44:35 on 02/03/2009 under Order No.1000385170_1 which expires on 1/19/2010, and is not for resale.
User Notes:                                                                                                              (2861618915)

8

*(Usury laws and requirements under the Federal Truth in Lending Act, similar state and local consumer credit laws and other regulations at the Owner's and Contractor's principal places of business, the location of the Project and elsewhere may affect the validity of this provision. Legal advice should be obtained with respect to deletions or modifications, and also regarding requirements such as written disclosures or waivers.)*

### ARTICLE 5   COMPENSATION FOR CONSTRUCTION PHASE SERVICES
The Owner shall compensate the Construction Manager for Construction Phase services as follows:

### § 5.1 COMPENSATION
§ 5.1.1 For the Construction Manager's performance of the Work as described in Section 2.3, the Owner shall pay the Construction Manager in current funds the Contract Sum consisting of the Cost of the Work as defined in Article 6 and the Construction Manager's Fee determined as follows:

*(State a lump sum, percentage of actual Cost of the Work or other provision for determining the Construction Manager's Fee, and explain how the Construction Manager's Fee is to be adjusted for changes in the Work.)*

2.6% of the Cost of the Work

### § 5.2 GUARANTEED MAXIMUM PRICE
§ 5.2.1 The sum of the Cost of the Work and the Construction Manager's Fee are guaranteed by the Construction Manager not to exceed the amount provided in Amendment No. 1, subject to additions and deductions by changes in the Work as provided in the Contract Documents. Such maximum sum as adjusted by approved changes in the Work is referred to in the Contract Documents as the Guaranteed Maximum Price. Cost which would cause the Guaranteed Maximum Price to be exceeded shall be paid by the Construction Manager without reimbursement by the Owner.

*(Insert specific provisions if the Construction Manager is to participate in any savings.)*

### § 5.3 CHANGES IN THE WORK
§ 5.3.1 Adjustments to the Guaranteed Maximum Price on account of changes in the Work subsequent to the execution of Amendment No. 1 may be determined by any of the methods listed in Section 7.3.3 of A201™–1997.

§ 5.3.2 In calculating adjustments to subcontracts (except those awarded with the Owner's prior consent on the basis of cost plus a fee), the terms "cost" and "fee" as used in Section 7.3.3.3 of A201™–1997 and the terms "costs" and "a reasonable allowance for overhead and profit" as used in Section 7.3.6 of A201™–1997 shall have the meanings assigned to them in that document and shall not be modified by this Article 5. Adjustments to subcontracts awarded with the Owner's prior consent on the basis of cost plus a fee shall be calculated in accordance with the terms of those subcontracts.

§ 5.3.3 In calculating adjustments to the Contract, the terms "cost" and "costs" as used in the above-referenced provisions of A201™–1997 shall mean the Cost of the Work as defined in Article 6 of this Agreement, and the term "and a reasonable allowance for main office overhead and profit" shall mean the Construction Manager's Fee as defined in Section 5.1.1 of this Agreement. Project Overhead directly related to the project shall be covered as a reimbursable under Article 6.

### ARTICLE 6   COST OF THE WORK FOR CONSTRUCTION PHASE
### § 6.1 COSTS TO BE REIMBURSED
§ 6.1.1 The term "Cost of the Work" shall mean costs necessarily incurred by the Construction Manager in the proper performance of the Work. Such costs shall be at rates not higher than those customarily paid at the place of the

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 11:44:35 on 02/03/2009 under Order No.1000385170_1 which expires on 1/19/2010, and is not for resale.
User Notes:                                                                                                      (2861618915)

9

Project except with prior consent of the Owner. The Cost of the Work shall include only the items set forth in this Article 6.

## § 6.1.2 LABOR COSTS
    .1    Wages of construction workers directly employed by the Construction Manager to perform the construction of the Work at the site or, with the Owner's agreement, at off-site workshops.
    .2    DELETED

| Classification | Name |
| --- | --- |
| To Be Determined | To Be Determined |

    .3    With prior written approval of the Owner, wages and salaries of the Construction Manager's supervisory or administrative personnel engaged on direct project work, at factories, workshops or on the road, in expediting the production or transportation of materials or equipment required for the Work, but only for that portion of their time required for the Work.
    .4    Cost of all labor add-ons insofar as such cost is based on wages, salaries or other remuneration paid to employees of the Construction Manager and included in the Cost of the Project. Labor add-ons include, but are not limited to, taxes, such as social security and unemployment; insurance such as workers' compensation, liability, medical, life and disability; vacation and sick pay and other welfare and employee benefits such as pension plans, employee retirement income plans, and 13th month pay. In lieu of Owner paying actual cost of labor add-ons for Construction Manager's salaried and non-craft hourly employees, Owner shall pay fifty-two percent (52%) of such employees' salary to cover labor add-ons.

## § 6.1.3 SUBCONTRACT COSTS
Payments made by the Construction Manager to Subcontractors in accordance with the requirements of the subcontracts.

## § 6.1.4 COSTS OF MATERIALS AND EQUIPMENT INCORPORATED IN THE COMPLETED CONSTRUCTION
    .1    Costs, including transportation, of materials and equipment incorporated or to be incorporated in the completed construction.
    .2    Costs of materials described in the preceding Section 6.1.4.1 in excess of those actually installed but required to provide reasonable allowance for waste and for spoilage. Unused excess materials, if any, shall be handed over to the Owner at the completion of the Work or, at the Owner's option, shall be sold by the Construction Manager; amounts realized, if any, from such sales shall be credited to the Owner as a deduction from the Cost of the Work.

## § 6.1.5 COSTS OF OTHER MATERIALS AND EQUIPMENT, TEMPORARY FACILITIES AND RELATED ITEMS
    .1    Costs, including transportation, installation, maintenance, dismantling and removal of materials, supplies, temporary facilities, machinery, equipment, and hand tools not customarily owned by the construction workers, which are provided by the Construction Manager at the site and fully consumed in the performance of the Work; and cost less salvage value on such items if not fully consumed, whether sold to others or retained by the Construction Manager. Cost for items previously used by the Construction Manager shall mean fair market value.
    .2    Rental charges for temporary facilities, machinery, equipment and hand tools not customarily owned by the construction workers, which are provided by the Construction Manager at the site, whether rented from the Construction Manager or others, and costs of transportation, installation, minor repairs and replacements, dismantling and removal thereof. Rates and quantities of equipment rented shall be subject to the Owner's prior approval.

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 11:44:35 on 02/03/2009 under Order No.1000385170_1 which expires on 1/19/2010, and is not for resale.
User Notes:                                                                                                    (2861618915)

10

.3    Costs of removal of debris from the site.

.4    Reproduction costs, , facsimile transmissions and long-distance telephone calls, postage and express delivery charges, telephone at the site and reasonable petty cash expenses of the site office

.5    With owner prior approval, that portion of the reasonable travel and subsistence expenses of the Construction Manager's personnel incurred while traveling in discharge of duties connected with the Work.

.6    Cost or rental of temporary portable buildings and toilets as required, also cost of utilities, ice, water, water containers, cups, fire extinguishers, first-aid supplies, safety equipment, safety awards and incentives, safety lunches, drug and alcohol testing, and off-site storage space or facilities.

.7    Cost of constructing, leasing or rental of buildings required for field offices, tool rooms, crew shacks and warehousing and cost of operating such facilities, including utilities, furniture, office equipment and supplies, telephone service, calls and telegrams, postage and expressage and similar items in connection with the Project.

.8    Cost of producing and handling reports, schedules, manuals, drawings, specifications and other documents required for the Project.

.9    Cost of the premiums for all bonds including Construction Manager's bond and bonds for Subcontractors and Suppliers. At Construction Manager's option, Construction Manager may elect to enroll Subcontractors in Subguard in lieu of requiring a performance and payment bond and the premium cost of such Subguard coverage will be billed to and paid by the Project at a rate of .97%\* of the subcontract value and any subsequent adjustments.

\*Rate is subject to adjustment at annual Subguard policy renewal. Premium costs using the renewal rate will be billed to and paid by the Project.

.10  Cost of outside consultants and professional personnel as may be necessary in connection with the services to be provided by Construction Manager with prior Owner approval.

## § 6.1.6 MISCELLANEOUS COSTS

.1    That portion directly attributable to this Contract of premiums for insurance and bonds.
*(If charges for self-insurance are to be included, specify the basis of reimbursement.)*

.2    Sales, use or similar taxes imposed by a governmental authority which are related to the Work and for which the Construction Manager is liable.

.3    Fees and assessments for the building permit and for other permits, licenses and inspections for which the Construction Manager is required by the Contract Documents to pay.

.4    Fees of testing laboratories for tests required by the Contract Documents, except those related to non-conforming Work other than that for which payment is permitted by Section 6.1.8.2.

.5    Permit fees, licenses, tests and inspections, royalties, damages for infringement of patents and costs of defending suits therefor. If royalties or losses and damages, including costs of defense, are incurred which arise from a particular design, process or the product of a particular manufacturer or manufacturers specified by the Owner or Architect, such royalties, losses and damages shall be paid by the Owner and not considered as within the GMP.

.6    Costs associated with the provision of the Project InformationWebsite and webcams

.7

.8    . Legal, mediation and arbitration costs, other than those arising from disputes between the Owner and Construction Manager, reasonably incurred by the Construction Manager in the performance of the Work and with the Owner's written permission, which permission shall not be unreasonably withheld.

.9    Expenses incurred in accordance with Construction Manager's standard personnel policy for relocation and temporary living allowances of personnel required for the Work, in case it is necessary to relocate such personnel from distant locations with Owner prior approval.

.10  At Construction Manager's option, Construction Manager may elect to implement a general liability wrap-up program providing Commercial General Liability insurance coverage to subcontractors as well as the Construction Manager and the premium cost of such general liability wrap-up will be billed to and paid by the Project at a rate of 1.4% of total Project cost (cost of work plus Construction Manager's fee).

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 11:44:35 on 02/03/2009 under Order No.1000385170_1 which expires on 1/19/2010, and is not for resale.
User Notes:    (2861618915)

11

### § 6.1.7 OTHER COSTS
.1　Other costs incurred in the performance of the Work if and to the extent approved in advance in writing by the Owner.

### § 6.1.8 EMERGENCIES AND REPAIRS TO DAMAGED OR NONCONFORMING WORK
The Cost of the Work shall also include costs described in Section 6.1.1which are incurred by the Construction Manager:
.1　In taking action to prevent threatened damage, injury or loss in case of an emergency affecting the safety of persons and property, as provided in Section 10.6 of A201™-1997.
.2　In repairing or correcting damaged or non-conforming Work executed by the Construction Manager or the Construction Manager's Subcontractors or suppliers, provided that such damaged or non-conforming Work was not caused by the negligence or failure to fulfill a specific responsibility to the Owner set forth in this agreement of the Construction Manager or the Construction Manager's foremen, engineers or superintendents, or other supervisory, administrative or managerial personnel of the Construction Manager, or the or the failure of the Construction Manager's personnel to supervise adequately the Work of the Subcontractors or suppliers, and only to the extent that the cost of repair or correction is not recoverable by the Construction Manager from insurance, Subcontractors or suppliers. The Construction Manager shall be reimbursed for 50% (Fifty percent) of the costs without any Construction Manager Fee related to Work that falls under this category of costs.

### § 6.1.9 The costs described in Sections 6.1.1 through 6.1.8 shall be included in the Cost of the Work notwithstanding any provision of A201™-1997 or other Conditions of the Contract which may require the Construction Manager to pay such costs, unless such costs are excluded by the provisions of Section 6.2.

### § 6.2 COSTS NOT TO BE REIMBURSED
§ 6.2.1 The Cost of the Work shall not include:
.1　Salaries and other compensation of the Construction Manager's personnel stationed at the Construction Manager's principal office or offices other than the site office, except as specifically provided in Sections 6.1.2.2 and 6.1.2.3.
.2　Expenses of the Construction Manager's principal office and offices other than the site office, except as specifically provided in Section 6.1.
.3　Overhead and general expenses, except as may be expressly included in Section 6.1.
.4　The Construction Manager's capital expenses, including interest on the Construction Manager's capital employed for the Work.
.5　Rental costs of machinery and equipment, except as specifically provided in Section 6.1.5.2.
.6　Except as provided in Section 6.1.8.2,  costs due to the negligence of the Construction Manager or to the failure of the Construction Manager to fulfill a specific responsibility to the Owner set forth in this agreement.
.7　Costs incurred in the performance of Preconstruction Phase Services.
.8　Except as provided in Section 6.1.7.1, any cost not specifically and expressly described in Section 6.1.
.9　Costs which would cause the Guaranteed Maximum Price to be exceeded.

### § 6.3 DISCOUNTS, REBATES AND REFUNDS
§ 6.3.1 Construction Manager shall notify the Owner of discount opportunities and if the Owner provides payment as necessary to allow the Construction Manager to take the discount, then such cash discounts obtained on payments made by the Construction Manager shall accrue to the Owner.

§ 6.3.2 Amounts which accrue to the Owner in accordance with the provisions of Section 6.3.1 shall be credited to the Owner as a deduction from the Cost of the Work.

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 11:44:35 on 02/03/2009 under Order No.1000385170_1 which expires on 1/19/2010, and is not for resale.
User Notes:　(2861618915)

### § 6.4 ACCOUNTING RECORDS
§ 6.4.1 The Construction Manager shall keep full and detailed accounts and exercise such controls as may be necessary for proper financial management under this Contract; the accounting and control systems shall be satisfactory to the Owner. The Owner and the Owner's accountants shall be afforded access to the Construction Manager's records, books, correspondence, instructions, drawings, receipts, subcontracts, purchase orders, vouchers, memoranda and other data relating to this Project, and the Construction Manager shall preserve these for a period of three years after final payment, or for such longer period as may be required by law.

### ARTICLE 7  CONSTRUCTION PHASE PAYMENTS
### § 7.1 PROGRESS PAYMENTS
§ 7.1.1 Based upon Applications for Payment submitted to the Architect by the Construction Manager and Certificates for Payment issued by the Architect, the Owner shall make progress payments for Work properly performed to the date of such application for payment on account of the Contract Sum to the Construction Manager as provided below and elsewhere in the Contract Documents.

§ 7.1.2 The period covered by each Application for Payment shall be one calendar month ending on the last day of the month.

§ 7.1.3 Provided an Application for Payment is received by the Architect not later than the Thirty-first day of a month, the Owner shall make payment to the Construction Manager not later than the Thirty-first day of the following month. If an Application for Payment is received by the Architect after the application date fixed above, payment shall be made by the Owner not later than Thirty ( 30 ) days after the Architect receives the Application for Payment.

§ 7.1.4 With each Application for Payment, the Construction Manager shall submit payrolls, petty cash accounts, receipted invoices or invoices with check vouchers attached and any other evidence required by the Owner or Architect to demonstrate that cash disbursements already made by the Construction Manager on account of the Cost of the Work equal or exceed (1) progress payments already received by the Construction Manager; less (2) that portion of those payments attributable to the Construction Manager's Fee; plus (3) payrolls for the period covered by the present Application for Payment.

§ 7.1.5 With each Application for Payment, the Construction Manager shall submit  the Schedule of Values which matches the estimated Cost of Work as of the date of such Application for Payment allocated among various portions of the Work.  Construction Manager's Fee and Contingency allowance shall each be shown as separate line items in the Schedule of Values.  In the event the Schedule of Values exceeds the GMP, the Construction Manager shall submit to the Owner a written plan to reduce the Cost of the Work, reduce the Contingency, reduce the Construction Managers Fee or otherwise pay the costs exceeding the GMP.

§ 7.1.6 Applications for Payment shall show the percentage completion of each portion of the Work as of the end of the period covered by the Application for Payment. The percentage completion shall be the lesser of (1) the percentage completion of that portion of the Work which has actually been completed or (2) the percentage obtained by dividing (a) the expense which has actually been incurred by the Construction Manager on account of that portion of the Work for which the Construction Manager has made or intends to make actual payment prior to the next Application for Payment by (b) the share of the Guaranteed Maximum Price allocated to that portion of the Work in the schedule of values.

§ 7.1.7 Subject to other provisions of the Contract Documents, the amount of each progress payment shall be computed as follows:
    .1    The Cost of the Work properly performed and completed plus the cost of material purchased and properly stored during the period applicable to the Application for Payment.
    .2
    .3    Add the Construction Manager's Fee, less retainage of five percent ( 5.00% ). The Construction Manager's Fee shall be computed upon the Cost of the Work described in the two preceding Sections at the rate stated in Section 5.1.1 or, if the Construction Manager's Fee is stated as a fixed sum in that

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 11:44:35 on 02/03/2009 under Order No.1000385170_1 which expires on 1/19/2010, and is not for resale.
User Notes:                                                                                                      (2861618915)

Section, shall be an amount which bears the same ratio to that fixed-sum Fee as the Cost of the Work in the two preceding Sections bears to a reasonable estimate of the probable Cost of the Work upon its completion.

.4    Subtract the aggregate of previous payments made by the Owner.

.5    Subtract the shortfall, if any, indicated by the Construction Manager in the documentation required by Section 7.1.4 to substantiate prior Applications for Payment, or resulting from errors subsequently discovered by the Owner's accountants in such documentation.

.6    Subtract amounts, if any, for which the Architect has withheld or nullified a Certificate for Payment as provided in Section 9.5 of A201™–1997.

**§ 7.1.8** Except with the Owner's prior approval, payments to Subcontractors shall be subject to retention of not less than five percent ( 5.00% ). The Owner and the Construction Manager shall agree upon a mutually acceptable procedure for review and approval of payments and retention for subcontracts.

**§ 7.1.9** Except with the Owner's prior approval, the Construction Manager shall not make advance payments to suppliers for materials or equipment which have not been delivered and stored at the site.

**§ 7.1.10** In taking action on the Construction Manager's Applications for Payment, the Architect shall be entitled to rely on the accuracy and completeness of the information furnished by the Construction Manager and shall not be deemed to represent that the Architect has made a detailed examination, audit or arithmetic verification of the documentation submitted in accordance with Section 7.1.4 or other supporting data, that the Architect has made exhaustive or continuous on-site inspections or that the Architect has made examinations to ascertain how or for what purposes the Construction Manager has used amounts previously paid on account of the Contract. Such examinations, audits and verifications, if required by the Owner, will be performed by the Owner's accountants acting in the sole interest of the Owner.

## § 7.2 FINAL PAYMENT

**§ 7.2.1** Final payment shall be made by the Owner to the Construction Manager when (1) the Contract has been fully performed by the Construction Manager except for the Construction Manager's responsibility to correct nonconforming Work, as provided in Section 12.2.2 of A201™–1997, and to satisfy other requirements, if any, which necessarily survive final payment; (2) a final Application for Payment and a final accounting for the Cost of the Work have been submitted by the Construction Manager and reviewed by the Owner's accountants; and (3) a final Certificate for Payment has then been issued by the Architect; such final payment shall be made by the Owner not more than 30 days after the issuance of the Architect's final Certificate for Payment, or as follows:

Forty Six (46) days following the issuance of the Architect's Final Certificate.

**§ 7.2.2** The amount of the final payment shall be calculated as follows:

.1    Take the sum of the Cost of the Work substantiated by the Construction Manager's final accounting and the Construction Manager's Fee, but not more than the Guaranteed Maximum Price.

.2    Subtract amounts, if any, for which the Architect withholds, in whole or in part, a final Certificate for Payment as provided in Section 9.5.1 of A201™–1997 or other provisions of the Contract Documents.

.3    Subtract the aggregate of previous payments made by the Owner.

If the aggregate of previous payments made by the Owner exceeds the amount due the Construction Manager, the Construction Manager shall reimburse the difference to the Owner.

**§ 7.2.3** The Owner's accountants will review and report in writing on the Construction Manager's final accounting within 30 days after delivery of the final accounting to the Architect by the Construction Manager. Based upon such Cost of the Work as the Owner's accountants report to be substantiated by the Construction Manager's final accounting, and provided the other conditions of Section 7.2.1 have been met, the Architect will, within seven days after receipt of the written report of the Owner's accountants, either issue to the Owner a final Certificate for Payment with a copy to the Construction Manager or notify the Construction Manager and Owner in writing of the Architect's reasons for withholding a certificate as provided in Section 9.5.1 of A201™–1997 . The time periods stated in this Section 7.2 supersede those stated in Section 9.4.1 of A201™–1997.

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 11:44:35 on 02/03/2009 under Order No.1000385170_1 which expires on 1/19/2010, and is not for resale.
User Notes:                                                                                                    (2861618915)

**§ 7.2.4** If the Owner's accountants report the Cost of the Work as substantiated by the Construction Manager's final accounting to be less than claimed by the Construction Manager, the Construction Manager shall be entitled to proceed in accordance with Article 9 without a further decision of the Architect. Unless agreed to otherwise, a demand for mediation or arbitration of the disputed amount shall be made by the Construction Manager within 60 days after the Construction Manager's receipt of a copy of the Architect's final Certificate for Payment. Failure to make such demand within this 60-day period shall result in the substantiated amount reported by the Owner's accountants becoming binding on the Construction Manager. Pending a final resolution of the disputed amount, the Owner shall pay the Construction Manager the amount certified in the Architect's final Certificate for Payment.

**§ 7.2.5**

## ARTICLE 8  INSURANCE AND BONDS
### § 8.1 INSURANCE REQUIRED OF THE CONSTRUCTION MANAGER
During both phases of the Project, the Construction Manager shall purchase and maintain insurance as set forth in Section 11.1 of A201™–1997. Such insurance shall be written for not less than the following limits, or greater if required by law:

**§ 8.1.1** Workers' Compensation and Employers Liability meeting statutory limits mandated by state and federal laws. If (1) limits in excess of those required by statute are to be provided, or (2) the employer is not statutorily bound to obtain such insurance coverage or (3) additional coverages are required, additional coverages and limits for such insurance shall be as follows:

TBA

**§ 8.1.2** Commercial General Liability including coverage for Premises-Operations, Independent Contractors' Protective, Products-Completed Operations, Contractual Liability, Personal Injury and Broad Form Property Damage (including coverage for Explosion, Collapse and Underground hazards):
$1,000,000.00 Each Occurrence
$2,000,000.00 General Aggregate
$1.00 Personal and Advertising Injury
$5,000,000.00 Products-Completed Operations Aggregate

   .1   The policy shall be endorsed to have the General Aggregate apply to this Project only.
   .2   Products and Completed Operations insurance shall be maintained for a minimum period of at least Three ( 3 ) year(s) after either 90 days following Substantial Completion or final payment, whichever is earlier.
   .3   The Contractual Liability insurance shall include coverage sufficient to meet the obligations in Section 3.18 of A201™–1997.

**§ 8.1.3** Automobile Liability (owned, non-owned and hired vehicles) for bodily injury and property damage:
$1,000,000.00 Each Accident

**§ 8.1.4** Other coverage:

TBA

*(If Umbrella Excess Liability coverage is required over the primary insurance or retention, insert the coverage limits. Commercial General Liability and Automobile Liability limits may be attained by individual policies or by a combination of primary policies and Umbrella and/or Excess Liability policies. If Project Management Protective Liability Insurance is to be provided, state the limits here.)*

### § 8.2 INSURANCE REQUIRED OF THE OWNER
During both phases of the Project, the Owner shall purchase and maintain liability and property insurance, including waivers of subrogation, as set forth in Sections 11.2 and 11.4 of A201™–1997. Such insurance shall be written for not less than the following limits, or greater if required by law:

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 11:44:35 on 02/03/2009 under Order No.1000385170_1 which expires on 1/19/2010, and is not for resale.
User Notes:    **15**
(2861618915)

**§ 8.2.1** Property Insurance:
███████ Deductible Per Occurrence
███████ Aggregate Deductible

**§ 8.2.2** Boiler and Machinery insurance with a limit of: ███████.
*(If not a blanket policy, list the objects to be insured.)*

### § 8.3 PERFORMANCE BOND AND PAYMENT BOND

**§ 8.3.1** The Construction Manager ██████ *(insert "shall" or "shall not")* furnish bonds covering faithful performance of the Contract and payment of obligations arising thereunder. Bonds may be obtained through the Construction Manager's usual source, and the cost thereof shall be included in the Cost of the Work. The amount of each bond shall be equal to ██ ( ██ ) of the Contract Sum.

**§ 8.3.2** The Construction Manager shall deliver the required bonds to the Owner at least three days before the commencement of any Work at the Project site.

### ARTICLE 9  MISCELLANEOUS PROVISIONS

#### § 9.1 DISPUTE RESOLUTION

**§ 9.1.1** In an effort to resolve any claim, dispute or other matter in question arising out of or related to this Agreement or breach thereof, either party may request mediation in accordance with the Construction Industry Mediation Rules of the American Arbitration Association, the costs of which shall be equally shared by the parties.

#### § 9.2 OTHER PROVISIONS

**§ 9.2.1** Unless otherwise noted, the terms used in this Agreement shall have the same meaning as those in A201™–1997, *General Conditions of the Contract for Construction.*

#### § 9.2.2 EXTENT OF CONTRACT

This Contract, which includes this Agreement and the other documents incorporated herein by reference, represents the entire and integrated agreement between the Owner and the Construction Manager and supersedes all prior negotiations, representations or agreements, either written or oral. This Agreement may be amended only by written instrument signed by both the Owner and Construction Manager. If anything in any document incorporated into this Agreement is inconsistent with this Agreement, this Agreement shall govern.

#### § 9.2.3 OWNERSHIP AND USE OF DOCUMENTS

Article 1.6 of A201™–1997 shall apply to both the Preconstruction and Construction Phases.

#### § 9.2.4 GOVERNING LAW

The Contract shall be governed by the law of the place where the Project is located.

#### § 9.2.5 ASSIGNMENT

The Owner and Construction Manager respectively bind themselves, their partners, successors, assigns and legal representatives to the other party hereto and to partners, successors, assigns and legal representatives of such other party in respect to covenants, agreements and obligations contained in the Contract Documents. Except as provided in Section 13.2.2 of A201™–1997, neither party to the Contract shall assign the Contract as a whole without written consent of the other. If either party attempts to make such an assignment without such consent, that party shall nevertheless remain legally responsible for all obligations under the Contract.

### ARTICLE 10  TERMINATION OR SUSPENSION

#### § 10.1 TERMINATION

**§ 10.1.1** The Owner may terminate this Contract at any time with or without cause, and the Construction Manager may terminate this Contract for any of the reasons described in Subparagraph 14.1.1 of AIA Document A201-1997.

AIA Document A121™CMc – 2003 and AGC Document 565. **Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 11:44:35 on 02/03/2009 under Order No.1000365170_1 which expires on 1/19/2010, and is not for resale.**
**User Notes:**                                                                                                      (2861618915)

**§ 10.1.2** If the Owner or Construction Manager terminates this Contract pursuant to this Section 10.1, the Construction Manager shall be equitably compensated for Preconstruction Phase Services performed prior to receipt of notice of termination; provided, however, that the compensation for such services shall not exceed the compensation set forth in Section 4.1.1.

**§ 10.1.3** If the Owner or Construction Manager terminates this Contract pursuant to this Section 10.1 after commencement of the Construction Phase, the Construction Manager shall, in addition   to the compensation provided in Section 10.1.2, be paid an amount calculated as follows:

    .1    Take the Cost of the Work incurred by the Construction Manager to the date of termination

    .2    Add the Construction Manager's Fee computed upon the Cost of the Work to the date of termination at the rate stated in Section 5.1 or, if the Construction Manager's Fee is stated as a fixed sum in that Section, an amount which bears the same ratio to that fixed-sum Fee as the Cost of the Work at the time of termination bears to a reasonable estimate of the probable Cost of the Work upon its completion.

    .3    Subtract the aggregate of previous payments made by the Owner on account of the Construction Phase.

The Owner shall also pay the Construction Manager fair compensation, either by purchase or rental at the election of the Owner, for any equipment owned by the Construction Manager which the Owner elects to retain and which is not otherwise included in the Cost of the Work under Section 10.1.3.1. To the extent that the Owner elects to take legal assignment of subcontracts and purchase orders (including rental agreements), the Construction Manager shall, as a condition of receiving the payments referred to in this Article 10, execute and deliver all such papers and take all such steps, including the legal assignment of such subcontracts and other contractual rights of the Construction Manager, as the Owner may require for the purpose of fully vesting in the Owner the rights and benefits of the Construction Manager under such subcontracts or purchase orders.

Subcontracts, purchase orders and rental agreements entered into by the Construction Manager with the Owner's written approval prior to the execution of Amendment No. 1 shall contain provisions permitting assignment to the Owner as described above. If the Owner accepts such assignment, the Owner shall reimburse or indemnify the Construction Manager with respect to all costs arising under the subcontract, purchase order or rental agreement except those which would not have been reimbursable as Cost of the Work if the contract had not been terminated. If the Owner elects not to accept the assignment of any subcontract, purchase order or rental agreement which would have constituted a Cost of the Work had this agreement not been terminated, the Construction Manager shall terminate such subcontract, purchase order or rental agreement and the Owner shall pay the Construction Manager the costs necessarily incurred by the Construction Manager by reason of such termination.

**§ 10.3 SUSPENSION**
The Work may be suspended by the Owner as provided in Article 14 of A201™–1997; in such case, the Guaranteed Maximum Price, if established, shall be increased as provided in Section 14.3.2 of A201™–1997 except that the term "cost of performance of the Contract" in that Section shall be understood to mean the Cost of the Work and the term "profit" shall be understood to mean the Construction Manager's Fee as described in Sections 5.1.1 and 5.3.4 of this Agreement.

**ARTICLE 11   OTHER CONDITIONS AND SERVICES**

TBA

AIA Document A121™CMc – 2003 and AGC Document 565. **Copyright © 1991** and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. **WARNING: This document is protected by U.S. Copyright Law and International Treaties.** Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 11:44:35 on 02/03/2009 under Order No.1000385170_1 which expires on 1/19/2010, and is not for resale.
User Notes:           (2861618915)

This Agreement entered into as of the day and year first written above.

| OWNER | CONSTRUCTION MANAGER |
|---|---|
| *(Signature)* | *(Signature)* |
| *(Printed name and title)* | *(Printed name and title)* |
| Date | Date |
| ATTEST | ATTEST |

AIA Document A121™CMc – 2003 and AGC Document 565. Copyright © 1991 and 2003 by The American Institute of Architects and The Associated General Contractors of America. All rights reserved. WARNING: This document is protected by U.S. Copyright Law and International Treaties. Unauthorized reproduction or distribution of this document, or any portion of it, may result in severe civil and criminal penalties, and will be prosecuted to the maximum extent possible under the law. This document was produced by AIA software at 11:44:35 on 02/03/2009 under Order No.1000385170_1 which expires on 1/19/2010, and is not for resale.
User Notes:                                                                                              (2861618915)