Wayne Meuleman, ISB #1419
Joe Meuleman, ISB #8029
Joseph F. Southers, ISB #9568
MEULEMAN LAW GROUP PLLC
950 West Bannock Street Suite 490
Boise, Idaho 83702
(208) 472-0066 Telephone
(208) 472-0067 Facsimile
wmeuleman@meulemanlaw.com
jmeuleman@meulemanlaw.com
jsouthers@meulemanlaw.com
I:\8335.007\PLD_USDC\Dismiss - Rsp.docx

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SBP LLLP, an Idaho limited liability limited partnership; JRS PROPERTIES III LP, an Idaho limited partnership; and J.R. SIMPLOT FOUNDATION, INC., an Idaho corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>HOFFMAN CONSTRUCTION COMPANY OF AMERICA, an Oregon corporation,<br><br>Defendant. | Case No. 1:19-CV-00266<br><br>**RESPONSE TO HOFFMAN CONSTRUCTION COMPANY OF AMERICA'S MOTION TO DISMISS [DKT. 6]** |

## I.
## INTRODUCTION

This dispute arises from three separate contracts that Hoffman Construction Company of America ("Hoffman") entered into with SBP LLLP ("SBP"), JRS Properties III LP ("JRS"), and J.R. Simplot Foundation, Inc. ("Foundation") (collectively, the "Owners") to construct the JUMP facility and the J.R. Simplot Company headquarters located in Boise, Idaho and related improvements. Hoffman filed a blanket demand for arbitration against the Owners with the American Arbitration Association. The Owners filed an action in Idaho state court requesting a stay of the arbitration and a

determination that they did not agree to arbitrate disputes with Hoffman. Hoffman removed the Owners' lawsuit and filed this motion to dismiss.

Hoffman's motion should be denied because this Court has jurisdiction to determine whether an agreement to arbitrate exists between the Owners and Hoffman. The evidence in the record shows that no arbitration agreement exists. Indeed, Hoffman and the Owners specifically deleted the language in the contracts that would have required arbitration.

## II.
## STATEMENT OF FACTS

The Owners disagree with Hoffman's characterization and interpretation of the facts and, therefore, provides the following:

1. The signed agreements between the parties (collectively, "Agreements") are modified standard American Institute of Architects ("AIA") forms A121 and A133. Declaration of Mark Bowen in Support of Response to Hoffman Construction Company of America's Motion to Dismiss ("Bowen Decl."), ¶ 3-5.

2. Cade Lawrence of Hoffman ("Lawrence") sent the Owners' representative an email dated February 4, 2009, attaching the 1991 version of AIA A121 document with Hoffman's comments to certain sections of the A121. Bowen Decl., ¶ 6, Ex. 1. Lawrence's comments to Section 9.2.1, titled Dispute Resolution, recommends "the use of binding arbitration" with his initials, CLL. *Id.*, Ex. 1, p. 22. Although Hoffman initially proposed using the 1991 version of A121, the parties agreed to use the 2003 version of A121 as the base form for the Agreements because the 1991 version was no longer published. *Id.*, ¶ 6. Section 9.2.1 of the 1997 version of A121 to which Lawrence comments by his email is identical to the language of Section 9.1.1 of the 2003 version of A121 and Section 9.1.1 of the 2009 version of the A133. *Id.* The Owners rejected Hoffman's proposal to add the arbitration language to the Agreements. *Id.*

3. Lawrence sent the Owners' representative an email dated February 23, 2009, attaching both the A121 and the A201-1997 documents. Bowen Decl., ¶ 7, Ex. 2. Among several comments and proposed revisions, Hoffman proposed adding the following to Section 9.1.1 of A121: "If Mediation does not settle the claim, dispute or other matter, Arbitration shall be utilized in accordance with A201 1997, Article 4.6." *Id.*, Ex. 2, p. 19. The Owners rejected Hoffman's proposal to add the arbitration language to the Agreements. *Id.*

4. On or about July 28, 2009, Hoffman signed a written agreement with SBP by which it agreed to provide services and work as construction manager consistent with the interest of SBP to construct certain improvements on real property located in Ada County and owned by SBP. Declaration of Cristina Reyes in Support of Hoffman Construction Company of America's Motion to Dismiss ("Reyes Decl."), Dkt. 9-3, pp. 2-18. Subsequent to Hoffman's signature, on or about October 14, 2009, SBP signed the agreement ("SBP Agreement"). *Id.*, Dkt. 9-3 at p. 18. The SBP Agreement is based on AIA Document A121, as modified by the parties. Bowen Decl., ¶¶ 3-5.

5. On or about February 8, 2010, Foundation entered into a written agreement ("Foundation Agreement") with Hoffman whereby, among other things, Hoffman agreed to provide services and work as construction manager consistent with the interest of Foundation to construct certain improvements on real property located in Ada County and owned by Foundation commonly known as Simplot Foundation Park and Studio Complex. Dkt. 9-1, pp. 2-19. The Foundation Agreement was based on AIA Document A121, as modified by the parties. Bowen Decl., ¶¶ 3-5.

6. On or about January 3, 2012, Hoffman signed a written agreement with JRS ("JRS Agreement"), which was signed by JRS on January 9, 2012, whereby Hoffman agreed to provide services and work as construction manager consistent with the interest of JRS to demolish and construct certain improvements on real property located

in Ada County and owned by JRS. Dkt. 9-6. The JRS Agreement was based on AIA Document A133, as modified by the parties. Bowen Decl., ¶¶ 3-5.

7. Section 1.2 of the Agreements provides that "[f]or the Construction Phase, the General Conditions of the contract shall be the AIA Document A201-1997, General Conditions of the Contract for Construction, *as modified*, which is incorporated herein by reference." Dkt. 9-1, p. 4; Dkt. 9-3, p. 4; Dkt. 9-6, p. 5 (emphasis added).

8. Hoffman and the Owner modified Section 9.1.1 of the Agreements, entitled Dispute Resolution, to exclude the following standard A121 and A133 language, which would have incorporated by reference the dispute resolution sections of the A201: "During both the Preconstruction and Construction Phases, Claims, disputes or other matters in question between the parties to this Agreement shall be resolved as provided in Sections 4.3 through 4.6 of A201 – 1997…" Bowen Decl., ¶¶ 5, 8, Dkt. 9-3, p. 27. Section 9.1.1 as modified in the Agreements states:

> In an effort to resolve any claim, dispute or other matter in question arising out of or related to this Agreement or breach thereof, either party may request mediation in accordance with the Construction Industry Mediation Rules of the American Arbitration Association, the costs of which shall be equally shared by the parties.

Dkt. 9-1, p. 17; Dkt. 9-3, p. 17; Dkt. 9-6, p. 18.

9. The Owners and Hoffman executed the Agreements based on the omission of any agreement to arbitrate disputes and deletion of language in the standard 2003 A121 and 2009 A133, which would have incorporated by reference Sections 4.3 through 4.6 of the A201. Bowen Decl., ¶ 8.

10. The intent of the Owners and Hoffman was to exclude arbitration from the Agreements. *Id.*, ¶ 9.

11. Section 9.2.2 of the Agreements states:

> This Contract, which includes this Agreement and the other documents incorporated herein by reference, represents the entire and integrated agreement between the Owner and the Construction Manager and supersedes all prior negotiations, representations or agreements, either written or oral. This Agreement may be amended only by written

instrument signed by both the Owner and Construction Manager. If anything in any document incorporated into this Agreement is inconsistent with this Agreement, this Agreement shall govern.

Dkt. 9-1, p. 17; Dkt. 9-3, p. 17; Dkt. 9-6, p. 18.

12. On or about June 5, 2019, Hoffman filed a Demand for Arbitration against the Owners with the American Arbitration Association. Hoffman's Demand seeks to arbitrate Hoffman's disputes arising out of each respective Agreement in a single arbitration against the Owners. Dkt. 9-9, pp. 2-9.

## III.
## ARGUMENT

A.  **The Court has jurisdiction to decide whether the parties agreed to arbitrate because the Owners challenge the existence of any agreement to arbitrate.**

Hoffman contends that the Federal Arbitration Act ("Act") governs this case. Memorandum, p. 4. Even assuming that is correct, the Court has jurisdiction to determine whether an agreement to arbitrate exists.

The court's role under the Act is limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue. *Chiron Corp.* v. *Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). Although the FAA sets forth a policy favoring arbitration, "a party cannot be required to submit to arbitration of any dispute which he has not agreed so to submit." *United Steelworkers of Am.* v. *Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960). Whether a party has submitted to arbitration is first and foremost a matter of contractual interpretation that must hinge on the intent of the parties. *Id.* Thus, challenges to the existence of a contract as a whole must be determined by the court prior to ordering arbitration. *Three Valleys Mun. Water Dist.* v. *E.F. Hutton & Co.*, 925 F.2d 1136, 1140-41 (9th Cir. 1991).

Hoffman cites to *Henry Schein, Inc.* v. *Archer and White Sales, Inc.*, ___ U.S. ___, 139 S.Ct. 524 (2019) and argues that the Construction Industry Arbitration Rules of the American Arbitration Association (2015 edition) ("2015 Rules") require that an

arbitrator determine whether the parties agreed to arbitrate. Dkt. 7, pp. 5-6. *Schein* is distinguishable.

In *Schein*, the Supreme Court reviewed whether the Fifth Circuit properly affirmed the district court's denial of a motion to compel arbitration where the demand for arbitration included a "wholly groundless" claim excluded from the arbitration provision in the parties' contract. *Henry Schein, Inc.*, 139 S.Ct. at 528-29. The Court analyzed the narrow question of "whether the 'wholly groundless' exception is consistent with the Federal Arbitration Act." *Id.* at 528. It held "that the 'wholly groundless' exception is inconsistent with the text of the Act and with our precedent." *Id.* at 529. The Court went on to hold: "When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract." *Id.* at 531. But the Court expressly limited its holding as follows: "We express no view about whether the contract at issue in this case in fact delegated the arbitrability question to an arbitrator." *Id.* It remanded the case to the Fifth Circuit to resolve that issue and instructed: "Under our cases, courts 'should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so.'" *Id.* (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U. S. 938, 944 (1995)).

Unlike the dispute in *Schein*, the Owners and Hoffman dispute whether an agreement to arbitrate even exists. It is well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide. *First Options*, 514 U.S., at 944. ("When deciding whether the parties agreed to arbitrate a certain matter ... courts generally ... should apply ordinary ... principles that govern the formation of contracts"). The Supreme Court has also held that "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *See AT&T Technologies, Inc.*

v. *Communications Workers*, 475 U.S. 643, 649 (1986). The Ninth Circuit has similarly held that, "whether the court or the arbitrator decides arbitrability is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Mohamed* v. *Uber Technologies, Inc.*, 848 F.3d 1201, 1208 (9th Cir. 2016) (internal quotations and citation omitted).

The 2015 Rules, upon which Hoffman relies, cannot provide the basis of a clear and unmistakable agreement to have an arbitrator determine whether an agreement to arbitrate exists.[1] Hoffman's reliance on Rule R-9 of the 2015 Rules fails for several reasons.

First, Hoffman's argument assumes that an agreement to arbitrate and delegate authority to an arbitrator exists between the parties. As detailed below, there is no arbitration agreement between the Owners and Hoffman. Hoffman's argument relies upon incorporation of Section 4.6 of the A201, which the parties specifically excluded in the Agreements.

Additionally, the 2015 Rules could not have been incorporated into the Agreements because they did not exist when the parties entered the Agreements. In Idaho, "[a]dditional terms that post-date the original agreement are necessarily unavailable for inspection; thus, the original agreement cannot incorporate them by reference." *City of Meridian* v. *Petra, Inc.*, 299 P.3d 232, 243 (Idaho 2013). Hoffman and the Owners entered into the Agreements in 2009, 2010, and 2012. Dkt. 9-3, pp. 2-18; Dkt. 9-1, pp. 2-19; Dkt. 9-6. Hoffman failed to submit the AAA rules in effect when the Agreements were executed. Because the 2015 Rules did not exist when the parties signed the Agreements, they were not available to the Owners, and cannot provide a basis for the arbitrator to determine whether the parties agreed to arbitrate.

---

[1] Rule R-9 of the 2015 Rules provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement."

Hoffman has failed to submit any evidence to establish that the parties clearly and unmistakably agreed to arbitrate the underlying dispute or the question of whether an agreement to arbitrate exists. This Court thus has jurisdiction to determine whether an arbitration agreement exists between Hoffman and the Owners.

B.  **The legal standard applicable to motions for summary judgment governs Hoffman's motion.**

Hoffman's motion to dismiss relies upon evidence outside the pleadings and is in reality a motion to compel arbitration. As such, Hoffman's motion is subject to the same legal standard that the Court would apply on a motion for summary judgment.

When ruling on a motion to dismiss, a court must normally convert the motion into one for summary judgment if the court considers evidence outside of the pleadings. *United States* v. *Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003). The summary judgment standard must also be met to grant a motion to compel arbitration. *See, e.g.; Three Valleys Mun. Water Dist.* v. *E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991) ("If there is doubt as to whether such an agreement exists, the matter, upon a proper and timely demand, should be submitted to a jury. Only when there is no genuine issue of fact concerning the formation of the agreement should the court decide as a matter of law that the parties did or did not enter into such an agreement.") (Internal quotation and citation omitted).

In ruling on a motion for summary judgment, the court does not resolve conflicting evidence with respect to disputed material facts, nor does it make credibility determinations. *T.W. Elec. Serv., Inc.* v. *Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Moreover, all inferences must be drawn in the light most favorable to the nonmoving party. *Id.* To deny the motion, the Court need only conclude that a result other than that proposed by the moving party is possible under the facts and applicable law. *Aronsen* v. *Crown Zellerbach*, 662 F.2d 584, 591 (9th Cir. 1981).

Additionally, with respect to presumptions in favor of arbitration, the Supreme Court has held that: "[t]he FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995). In this case, the Owners dispute the existence of an agreement to arbitrate. Therefore, no presumption in favor of arbitration is applicable here.

Based on the foregoing, Hoffman's motion should be decided under the legal standard applicable to motions for summary judgment.

**C.     The Court should deny Hoffman's motion because the Agreements do not require disputes be resolved by arbitration.**

Hoffman contends that the Agreements incorporate by reference Section 4.6 of the A201-1997, which would require the parties to arbitrate this dispute. Dkt. 7, p. 3. Hoffman's argument is without merit because none of the Agreements incorporated Section 4.6 of the A201. To the contrary, Hoffman and the Owners specifically modified Section 9.1.1 of the Agreements, entitled Dispute Resolution, to delete the incorporation of Sections 4.4 through 4.6 of A201. Bowen Decl., ¶¶ 5, 8. The parties never agreed to arbitrate Hoffman's claims at issue in this case. *Id.*, ¶ 9.

When deciding whether parties agreed to arbitrate a certain matter (including arbitrability), federal courts apply ordinary state-law principles that govern the formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (citing *Mastrobuono*, 514 U.S. at 62-63, and n. 9). The Agreements each have choice-of-law provisions, Section 9.2.4, providing that Idaho law governs. Dkt. 9-1, p. 17; Dkt. 9-3, p. 17; Dkt. 9-6, p. 18. Idaho law therefore governs interpretation of the contracts between the Owners and Hoffman.

        1.     <u>The plain language of the Agreements establishes that the parties did not agree to arbitrate this dispute.</u>

Under Idaho law, if a contract's terms are clear and unambiguous, the contract's meaning and legal effect are questions of law, and the meaning of the contract and

intent of the parties is determined from the plain meaning of the contract's own words. *Taylor v. Just*, 138 Idaho 137, 140, 59 P.3d 308, 311 (Idaho 2002). When interpreting a contract, "[a] court must look to the contract as a whole and give effect to every part thereof." *Steel Farms, Inc. v. Croft & Reed, Inc.*, 297 P.3d 222, 229 (Idaho 2012).

There is no agreement to arbitrate between the Owners and Hoffman based on the plain language of the Agreements. Nothing in the Agreements mentions arbitration or incorporates Section 4.6 of the A201 relied upon by Hoffman. *Id*. Dkt. 9-1; Dkt. 9-3, pp. 2-18; Dkt 9-6. Indeed, Section 9.1.1 of the Agreements titled Dispute Resolution only identifies mediation as a dispute resolution method. Dkt. 9-1, p. 17; Dkt. 9-3, p. 17; Dkt. 9-6, p. 18. Hoffman therefore relies upon extrinsic evidence in the form of the A201 in an attempt to create an agreement to arbitrate. Dkt. 7 at pp. 7-8.

Hoffman's reliance on Section 4.6 of A201 fails because the Agreement does not incorporate the entire A201 by reference. In Idaho, incorporation by reference requires that "the terms to be incorporated are adequately identified and readily available for inspection by the parties." *City of Meridian*, 154 Idaho at 435. In *City of Meridian*, the Idaho Supreme Court addressed incorporation of standard form AIA documents and held "With respect to the availability of the A101 and the A201, these are standard American Institute of Architects forms and have been in service since 1992. Thus, the A101 and A201 existed at the time the CMA was executed and were presumably readily available for inspection." *Id*. at 243.

Unlike the contracts in *City of Meridian*, the Agreements in this case do not adequately identify or incorporate the entire standard form A201 for incorporation. Among other things, the Section 1.2 relied upon by Hoffman provides: "the General Conditions of the Contract shall be the AIA Document A201-1997, General Conditions of the Contract for Construction *as modified* is incorporated herein by reference." Dkt. 9-1, p. 4; Dkt. 9-3, p. 4; Dkt. 9-6, p. 5 (emphasis added). The A201 is incorporated only

"as modified" based on the plain language of the Agreements. As detailed below, the parties modified the A201 incorporation by deleting the language in Section 9.1.1 of the standard form A121 and A133 that would otherwise have incorporated Section 4.6 of A201-1997.

Construing the Agreements to incorporate the entire A201, including Section 4.6, would also violate the requirement to construe the Agreements as a whole and give effect to each provision. The Idaho Supreme Court has held that a court's interpretation fails to give effect to every part of the contract when it renders words in the contract superfluous. *Steel Farms, Inc.*, 297 P.3d at 229.

Here, the Agreements incorporate by reference a number of provisions in the standard A201-1997 that do not relate to arbitration. For example, Section 2.3.2.5 of the Agreements incorporates Section 3.10 of the A201-1997 (Dkts. 9-1 and 9-3, p. 7; Dkt. 9-6, p. 8), Section 2.4 of the Agreements incorporates 3.12.10 of A201-1997 (Dkts. 9-1 and 9-3, p. 8; Dkt. 9-6, p. 9), Section 2.5 of the Agreements incorporates Section 10.3 of the A201-1997, and Section 5.3.1 of the Agreements incorporates Section 7.3.3 of the A201-1997 (Dkts. 9-1 and 9.3, p. 10; Dkt. 9-3, p. 11). *Id.* These provisions would be rendered superfluous if the entire A201 were incorporated into the Agreements. The only reasonable interpretation of the Agreements is that they incorporate the A201 only to the extent specifically referenced to in the Agreements. There is no reference in the Agreements to Section 4.6 of A201-1997 upon which Hoffman's motion relies.

Additionally, while Section 1.2 of the JRS Agreement references the A201-1997, Hoffman appears to contend that the AIA A201-<u>2007</u> is incorporated into the JRS Agreement. Dkt. 9-7, p. 2 (emphasis added). Hoffman fails to explain this inconsistency in any way.

It is clear and unambiguous on the face of the signed Agreements that there is no agreement to arbitrate disputes. Hoffman's motion should therefore be denied.

RESPONSE TO HOFFMAN CONSTRUCTION COMPANY OF AMERICA'S MOTION TO DISMISS [DKT. 6] – Page 11

2.  <u>Even if Hoffman's extrinsic evidence were considered, Section 4.6 of the A201-1997 would not be incorporated into the Agreements by reference</u>.

To support its position, Hoffman ignores portions of the extrinsic evidence that it submitted and seeks to limit this Court's review of extrinsic evidence to Section 4.6 of the A201. Even if this Court were to consider Hoffman's extrinsic evidence, a comprehensive review of Hoffman's own evidence establishes that the parties did not intend to arbitrate.

The exhibits to the Reyes Decl. show that the parties deleted the following language from Section 9.1.1 of the Agreements that would have incorporated Section 4.6 of the A201: "During both the Preconstruction and Construction Phases, Claims, disputes or other matters in question between the parties to this Agreement shall be resolved as provided in Sections 4.3 through 4.6 of A201 – 1997..." Dkt. 9-3, p. 27. Hoffman admits that the document reflecting this deletion is part of the contract between the parties. Dkt. 9, ¶ 3. Hoffman and the Owners made the same modifications to each Agreement. Bowen Decl., ¶ 8.

Furthermore, Section 9.2.2 of the signed Agreements expressly provides: "[i]f anything in any document incorporated into this Agreement is inconsistent with this Agreement, *this Agreement shall govern*." Dkt. 9-1, p. 17; Dkt. 9-3, p. 17; Dkt. 9-6, p. 18 (emphasis added). The Owners and Hoffman specifically modified Section 9.1.1 of the Agreements to delete language incorporating Section 4.6 of the A201 and exclude any reference to arbitration. At most, this creates an inconsistency with respect to arbitration and the modified Section 9.1.1 of the Agreements supersedes Section 4.6 of the A201.

Despite having unequivocally deleted the language of the Agreements which would have specifically incorporated Section 4.6 of the A201-1997, Hoffman now strains contract interpretation in an attempt to avoid litigating its claims. The extrinsic evidence submitted by Hoffman shows that the parties did not incorporate Section 4.6 of A201-1997 into any of the Agreements.

3. <u>Should the Court find the Agreements to be ambiguous, parol evidence should be admissible to determine the parties' intent</u>.

Hoffman appears to contend that ambiguities exist in the Agreements based on its reliance on extrinsic evidence. Hoffman's own extrinsic evidence establishes that the parties deleted language from Section 9.1 of the Agreements that would have incorporated Section 4.6 (Arbitration) of A201-1997. At best, Hoffman can argue that deleting this language created an ambiguity as to whether the parties agreed to arbitrate. Any such ambiguities in the Agreements should be resolved by reference to parol evidence which shows that the parties did not agree to arbitrate.

In Idaho, "Parol evidence may be considered to aid a trial court in determining the intent of the drafter of a document if an ambiguity exists." *Steel Farms, Inc.*, 297 P.3d at 229. "A contract term is ambiguous when there are two different reasonable interpretations or the language is nonsensical." *Id.*

To the extent an ambiguity exists here, parol evidence during contract negotiations shows that the intent of the parties was not to arbitrate disputes. For example, on Hoffman's behalf, Lawrence sent the Owners' representative an email dated February 4, 2009, attaching the 1991 version of AIA A121 document with Hoffman's comments to certain sections of the A121. Bowen Decl., ¶ 6, Ex. 1. Lawrence's comments to Section 9.2.1, titled Dispute Resolution, recommends "the use of binding arbitration" with his initials, CLL. *Id.*, Ex. 1, p. 22. Although Hoffman initially proposed using the 1991 version of A121, the parties agreed to use the 2003 version of A121 as the base form for the Agreements because the 1991 version was no longer published. *Id.*, ¶ 6. Section 9.2.1 of the 1997 version of A121 to which Lawrence comments by his email is identical to the language of Section 9.1.1 of the 2003 version of A121 and Section 9.1.1 of the 2009 version of the A133. *Id.* The Owners rejected Hoffman's proposal to add the arbitration language to the Agreements. *Id.*

Lawrence sent the Owners' representative another email dated February 23, 2009, attaching both the A121 and the A201-1997 documents. Bowen Decl., ¶ 7, Ex. 2. Among several comments and proposed revisions, Hoffman proposed adding the following to Section 9.1.1 of A121: "If Mediation does not settle the claim, dispute or other matter, *Arbitration shall be utilized in accordance with A201 1997, Article 4.6.*" *Id.*, Ex. 2, p. 19 (emphasis added). The Owners again rejected Hoffman's proposal to add the arbitration language to the Agreements. *Id.*

Lawrence's emails do not contradict the plain terms of the Agreements. They do, however, establish that neither Hoffman nor the Owners intended to arbitrate disputes arising from or related to any of the Agreements. There would be no reason for Hoffman to propose language requiring arbitration in Section 9.1.1 of the Agreements if the parties intended that Section 4.6 of the A201 control.

The Owners and Hoffman executed the Agreements based on the omission of any agreement to arbitrate disputes and deletion of language in the standard 2003 A121 and 2009 A133, which would have incorporated by reference Sections 4.3 through 4.6 of the A201. Bowen Decl., ¶ 8. The intent of the Owners and Hoffman was to exclude arbitration from the Agreements. *Id.*, ¶ 9. The Court should therefore deny Hoffman's motion to dismiss.

## IV.
## CONCLUSION

Based on the foregoing, the Owners request that this Court deny Hoffman's motion to dismiss.

DATED this __8th__ day of August, 2019.

_____
Joseph Southers, Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on the __8th__ day of August, 2019, a true and correct copy of the foregoing document was served by the method indicated below upon the following parties:

| Michael A. Maurer<br>LUKINS & ANNIS, P.S.<br>717 W. Sprague Ave., Ste. 1600<br>Spokane, WA 99201-0466<br>mmaurer@lukins.com | [ ] U.S. Mail<br>[ ] Hand Delivered<br>[ ] Facsimile<br>[ ] Overnight Mail<br>[ ] Electronic Mail<br>[✓] CM/ECF |
|---|---|

_/s/ Joseph Southers_
Joseph Southers