UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SBP LLLP, an Idaho limited liability limited partnership; JRS PROPERTIES III LP, an Idaho limited partnership; and J.R. SIMPLOT FOUNDATION, INC., an Idaho corporation,<br><br>Plaintiffs,<br><br>v.<br><br>HOFFMAN CONSTRUCTION COMPANY OF AMERICA, an Oregon corporation,<br><br>Defendant. | Case No. 1:19-cv-00266-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I.   INTRODUCTION

Pending before the Court is Defendant Hoffman Construction Company of America's ("Hoffman") Motion to Dismiss. Dkt. 6. On December 12, 2019, the Court held oral argument and took the motion under advisement. Upon review, and for the reasons set forth below, the Court finds good cause to DENY Defendant's Motion to Dismiss at this time because there are factual disputes as to whether the parties agreed to arbitrate.

## II.   BACKGROUND

From 2009 to 2012, Hoffman entered into three separate contracts with SBP LLLP ("SBP"), JRS Properties III LP ("JRS"), and J.R. Simplot Foundation, Inc. ("Foundation")

(collectively, the "Plaintiffs") to demolish and construct certain improvements on real property located in Ada County.

In 2009, Hoffman and SBP entered into a written contract based on a standard form agreement drafted by the American Institute of Architects ("AIA"), specifically the AIA Document A121-2003,[1] as modified by the parties ("SBP Agreement"). Dkt. 9-3. On or about July 28, 2009, Hoffman signed the agreement that, for a specified price, it would work as a construction manager for the construction of certain improvements on real property located in Ada County and owned by SBP; SBP subsequently signed the agreement on or about October 14, 2009.

In February 2010, Hoffman and Foundation entered into a written contract based on the AIA Document A121-2003 standard form agreement, as modified by the parties ("Foundation Agreement"). Dkt. 9-1. Hoffman agreed that, for a specified price, it would work as a construction manager for the construction of certain improvements on real property located in Ada County and owned by Foundation.

In January 2012, Hoffman and JRS entered into a written contract based on the AIA Document A133-2009 standard form agreement, as modified by the parties ("JRS Agreement"). Dkt. 9-6. Hoffman agreed that, for a specified price, it would work as a construction manager for the demolition and subsequent construction of certain improvements on real property located in Ada County and owned by JRS.

---

[1] The AIA has a variety of standard form contracts. The "A121" refers to a specific draft form, while "2003" refers to the year that form was created. There are often prior and later versions of a form; in theory there could be an A121-1997, A121-2003, A121-2009, etc. This naming convention is consistent throughout this Order.

**MEMORANDUM DECISION AND ORDER- 2**

On May 31, 2019, Hoffman filed a demand for arbitration and mediation with the American Arbitration Association, claiming breach of contract damages for costs it had incurred associated with delays to the contracted construction on all three projects. On July 1, 2019, Hoffman filed an amended demand for arbitration and mediation.

On June 14, 2019, Plaintiffs filed a complaint in District Court for the Fourth Judicial District of Idaho. On June 17, Plaintiffs filed an amended complaint in which they alleged two causes of action. The first cause of action requested a judicial declaration under Idaho Code § 10-1201 that the SBP Agreement, Foundation Agreement, and JRS Agreement (collectively "the Agreements") do not include agreements to arbitrate with Hoffman. The second cause of action requested a stay of Hoffman's arbitration demand under Idaho Code § 7-902(b).

On July 11, 2019, Hoffman removed the case to this Court on diversity jurisdiction grounds pursuant to 28 U.S.C. § 1332. Hoffman is an Oregon corporation and Plaintiffs are Idaho companies and partnerships. The underlying action concerns Hoffman's arbitration claim for $4,665,988.65.

On July 18, 2019, Hoffman filed the pending motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). The motion is now ripe.

### III. APPLICABLE LEGAL STANDARD

In its response to Hoffman's motion to dismiss for lack of subject matter jursidiction, Plaintiffs observe that Hoffman relied on evidence outside the pleadings in its motion. Accordingly, Plaintiffs argue that Hoffman's motion to dismiss is in fact a motion to compel arbitration and therefore should be reviewed under a motion for summary

**MEMORANDUM DECISION AND ORDER- 3**

judgment standard. In its reply, Hoffman implicitly concedes that Plaintiffs are correct. *See* Dkt. 13, at 8. ("While a summary judgment standard may properly apply to this motion . . . ."). When the Court asked during oral argument if the pending motion might be more properly construed as a motion to compel, both parties agreed, and Hoffman explicitly acknowledged the Court has subject-matter jurisdiction over the case.

Although the pending motion is formally styled as motion to dismiss, the Court considers it a motion to compel under 9 U.S.C. § 4 of the Federal Arbitration Act ("FAA" or the "Act").[2]

## IV. LEGAL STANDARD

"The district court, when considering a motion to compel arbitration which is opposed on the ground that no agreement to arbitrate has been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991) (quoting *Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 54 & n.9 (3d Cir. 1980)). Thus, however the original motion was formally styled, a motion to compel arbitration is decided according to the standard similar to the one used by district courts in resolving summary judgment motions pursuant to Federal Rule of Civil

---

[2] The FAA does not statutorily require a motion to compel to be entitled as such, but rather that "the party must 'petition' the court for an order directing arbitration to proceed." *Brown v. Dorsey & Whitney, LLP.*, 267 F. Supp. 2d 61, 66 (D.D.C. 2003) (quoting *Thompson v. Nienaber,* 239 F. Supp. 2d 478, 483 (D.N.J. 2002)). "Courts, therefore, have allowed the party to 'petition' the court [to compel arbitration] through the use of a motion to dismiss for lack of subject-matter jurisdiction." *Id.*; *see also Craft v. Campbell Soup Co.*, 177 F.3d 1083, 1084 (9th Cir. 1999), *abrogated on other grounds, Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) (agreeing with both parties that the defendant's motion for summary judgment was a *de facto* petition under 9 U.S.C. § 4 for an order to compel arbitration).

Procedure Rule 56. *Concat LP v. Unilever, PLC*, 350 F. Supp. 2d 796, 804 (N.D. Cal. 2004) (citation omitted).[3]

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering a motion for summary judgment, the Court must "view[ ] the facts in the non-moving party's favor." *Id*. To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id*. (citation omitted).

The Court must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on

---

[3] Even if the Court had construed Hoffman's motion as a motion to dismiss for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), it would still review the pending motion under the standard applicable for a motion for summary judgment. "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Wichansky v. Zoel Holding Co., Inc.*, 702 F. App'x 559, 560 (9th Cir. 2017) (citation omitted). A factual attack, often referred to as a "speaking motion," challenges the truth of the allegations in the complaint that give rise to federal jurisdiction; the court does not presume those factual allegations to be true. *Norkunas v. Wynn Las Vegas, LLC*, 343 F. App'x 269, 270 (9th Cir. 2009); *Thornhill Pub. Co. v. General Tel. & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). "[W]hen ruling on a jurisdictional motion involving factual issues which also go to the merits, the trial court should employ the standard applicable to a motion for summary judgment," *Trentacosta v. Frontier Pacific Aircraft Industries, Inc.*, 813 F.2d 1553, 1558 (9th Cir. 1987) (internal quotation marks and citations omitted), and the court may consider evidence such as declarations or testimony to resolve factual disputes, *id.*; *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). Hoffman filed its 12(b)(1) motion as a "speaking motion" because the Court would need to determine whether or not the parties agreed to arbitrate—a factual issuing going to the merits—in determining whether it had jurisdiction. Accordingly, the Court would need to evaluate the motion under the standard of law applicable to a motion for summary judgment.

which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The respondent cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment; rather the respondent must set forth the "specific facts," supported by evidence, with "reasonable particularity" that precludes summary judgment. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

## V.  DISCUSSION

### 1. Governing Law

As a threshold matter, the parties initially disputed whether federal or state law governs. Hoffman relied on the Federal Arbitration Act, 9 U.S.C. §§ 1 to 16, in moving to compel, but Plaintiffs originally contended that Idaho's Uniform Arbitration Act governs. *See* Idaho Code §§ 7-901–902. The Court will resolve this dispute for the sake of clarity, but "it is largely an academic one because the federal and state acts are "'virtually identical.'" *Burch-Lucich v. Lucich*, No. 1:13-CV-00218-BLW, 2013 WL 5876317, at *4 (D. Idaho Oct. 31, 2013) (quoting *Mason v. State Farm Mut. Auto Ins. Co.*, 177 P.3d 944, 947 n. 1 (Idaho 2007).

The Federal Arbitration Act applies to contracts involving interstate commerce. *See* 9 U.S.C. § 2. The contract at issue here involves an Oregon corporation contracting to participate in construction projects in Idaho. This would plainly seem to involve interstate commerce, and neither side makes a contrary argument. The Court therefore concludes that the Federal Arbitration Act governs. *See generally Allied–Bruce Terminix Cos. v. Dobson,* 513 U.S. 265, 274–75 (1995) (the interstate-commerce requirement should be construed broadly to include all activities that merely affect interstate commerce).

As both parties agreed during oral arguments, a district court's role in FAA matters is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cunico Corp. v. Custom Alloy Corp.*, 668 F. App'x 777, 777–78 (9th Cir. 2016) (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). A court may "decide as a matter of law that the parties did or did not enter into" an arbitration agreement "[o]nly when there is no genuine issue of fact concerning the formation of the agreement." *Id.* (quoting *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991). If court determines that the parties have entered into a valid arbitration agreement, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Chiron Corp.*, 207 F.3d at 1130 (internal quotation marks and citation omitted).

### 2. The Existence of an Arbitration Agreement

The Court's first task in deciding whether to compel arbitration is to determine whether an arbitration agreement exists. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *BG Grp., PLC v. Republic of Argentina*, 572 U.S. 25, 34 (2014) (quoting *United Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)); *see also Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524 (2019) (stating "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists") (citing 9 U.S.C. § 2). Whether a party has submitted to arbitration is first and

foremost a matter of contractual interpretation that must hinge on the intent of the parties. *Id.* Courts apply ordinary state law principles governing the formation of contracts to evaluate such claims. *Davis v. O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007), *overruling on other grounds recognized by Ferguson v. Corinthian Coll., Inc.*, 733 F.3d 928, 937 (9th Cir. 2013). If there is doubt as to whether an "express, unequivocal agreement" to arbitrate exists, the matter should be submitted to a factfinder. *Three Valleys Mun. Water Dist.*, 925 F.2d at 1141 (agreeing with the Third Circuit that there if is a doubt as to whether an agreement to arbitrate exists, the matter "should be submitted to a jury") (citation omitted). As the party moving to compel arbitration, Hoffman bears "the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia v. Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)).

Here, the Court applies Idaho contract law in interpreting the Agreements. The parties entered into the Agreements in Idaho, Plaintiffs are Idaho residents, and the Agreements relate to Hoffman constructing property in Idaho. *See Kelly v. Wengler*, 822 F.3d 1085, 1095 (9th Cir. 2016) (applying Idaho contract law to a stipulation entered into in Idaho where the plaintiffs were Idaho residents and the stipulation related to the defendant's business in Idaho).

In Idaho, courts first examine the document's express terms of written agreement when deciding contract issues. "A court must look to the contract as a whole and give effect to every part thereof." *Steel Farms, Inc. v. Croft & Reed, Inc.*, 297 P.3d 222, 229 (Idaho 2012). "In the absence of ambiguity, the document must be construed in its plain, ordinary

and proper sense, according to the meaning derived from the plain wording of the instrument." *C & G, Inc. v. Rule*, 25 P.3d 76, 78 (Idaho 2001). "A contract term is ambiguous when there are two different reasonable interpretations or the language is nonsensical." *Potlatch Educ. Ass'n v. Potlatch Sch. Dist. No. 285*, 226 P.3d 1277, 1280 (Idaho 2010) (internal citations omitted). "Whether a contract is ambiguous is a question of law, but interpreting an ambiguous term is an issue of fact." *Id*.

      *a. Ambiguity on the Face of the Agreements*

None of the Agreements directly reference arbitration in the signed documents. However, Hoffman contends that the parties agreed to arbitrate via an AIA form incorporated into the contracts by reference. Plaintiffs argue that the lack of reference to arbitration was intentional; they purposely drafted the contract to exclude mandatory arbitration.

Under Idaho law, "[a] signed agreement may incorporate by reference to another agreement, which is not signed by the parties, if the terms to be incorporated are adequately identified and readily available for inspection by the parties." *Harris, Inc. v. Foxhollow Const. & Trucking, Inc.*, 264 P.3d 400, 416 (Idaho 2011). The Idaho Supreme Court has upheld agreements that incorporate AIA forms by reference. *City of Meridian v. Petra Inc.*, 299 P.3d 232, 242 (Idaho 2013). In *City of Meridian*, the signed agreement included an integration clause which incorporated two documents that the parties and district court concluded were based on A101 and A201 forms. The Idaho Supreme Court held "with respect to the availability of the A101 and the A201, these are standard American Institute of Architects forms and have been in service since 1992." *Id*. at 243. Since the A101 and

A201 documents existed at the time the signed agreement was executed and "were presumably readily available for inspection," the court found that the A101 and A201 standard forms were properly incorporated into the signed agreement. *Id*.

Here, the parties utilized the standard AIA forms A121-2003 and A133-2009 as a basis of the three Agreements. Both AIA forms were designed to allow incorporation of a number of other documents. The Agreements' "General Conditions" Section(s) 1.2 all state:

> For the Construction Phase, the General Conditions of the contract shall be the AIA Document A201-1997, General Conditions of the Contract for Construction, *as modified*, which is incorporated herein by reference. For the Preconstruction Phase, or in the event that the Preconstruction and Construction Phases proceed concurrently, A201-1997 shall apply to the Preconstruction Phase only as specifically provided in this Agreement.

Dkt. 9-1, at 4; Dkt. 9-3, at 4; Dkt. 9-6, at 5 (emphasis added). Form A201-1997, the General Conditions of the Contract for Construction, is a standard form detailing the rights and obligations of parties on a construction project. Here, the parties clearly intended to incorporate the A201-1997 into the agreement, but only "as modified." The parties did not attach a modified version of the AIA Document A201-1997 to the signed agreements. The question therefore is: what did the parties mean by "as modified?"

Plaintiffs argue that the parties modified the A201-1997 document by "deleting the language in Section 9.1.1 of the standard form A121[-2003] and A133[-2009] that would otherwise have incorporated Section 4.6 of A201-1997." Dkt. 11, at 11. Section 4.6 is the arbitration section of A201. Further, the Agreements' A121-2003 and A133-2009 forms explicitly incorporate by reference a number of provisions of the standard A201-1997 that

do *not* relate to arbitration, which Plaintiffs contend "would be rendered superfluous if the entire A201 were incorporated into the Agreements." *Id*. Thus, according to Plaintiffs, "as modified" means A201-1997 was incorporated only to the extent the Agreements specifically referenced certain A201-1997 sections. Further, Plaintiffs rely on *City of Meridian* to support their argument that A201-1997 could not have been wholly incorporated because "[u]nlike the contracts in *City of Meridian,* the Agreements in this case do not adequately identify or incorporate the entire standard form A201 for incorporation." Dkt. 11, at 10.

In response, Hoffman contends that Plaintiffs' interpretation does not align with the second sentence of the Section 1.2 of the Agreements. In Section 1.2, the parties limited the incorporation of A201-1997 to only those A201-1997 sections "as specifically provided" in the Agreement for the Preconstruction phase of the projects. Hoffman argues this contract language means the parties meant to incorporate only the A201-1997 clauses explicitly referenced in the Agreement for the Preconstruction phase and deliberately chose *not* to do the same for the Construction phase, which is why they incorporated A201-1997 "as modified" rather than "as specifically provided." But Hoffman makes no argument in its written briefing as to how the parties *did* modify A201-1997 or adapt it for their use. Instead, it argues that "the A201 is wholly incorporated into the contract," which means Sections 4.6.1 and 4.6.2 of A201-1997—the form's arbitration sections—are also incorporated into the Agreements. Dkt. 13, at 6. This is because, Hoffman continues, "[w]hen a document is expressly incorporated, there is no need to incorporate each separate clause of the incorporated document." *Id*. In the motion hearing, Hoffman argued for the

**MEMORANDUM DECISION AND ORDER- 11**

first time that "as modified" refers to the red lines, edits, additions, and deletions from the standard A201-1997 General Conditions as seen in Plaintiffs' submissions to the court. Because no version of the A201-1997 was attached to the Agreements, Hoffman's explanation calls for the Court to compare a standard A201-1997 form with either the Agreements and/or draft edits to determine how the A201-1997 was modified, i.e., to examine parol evidence.

In reviewing the Agreements as a whole and giving effect to each provision, there is ambiguity at least on the face of the written contracts in what the parties meant by incorporating A201-1997 "as modified" into their Agreements. The Court agrees with Plaintiffs that this case is factually distinct from the *City of Meridian*. While the signed agreement in *City of Meridian* wholly incorporated the standard A101 and A201 forms by reference, here, the Agreements only incorporated A201 "as modified." Dkt. 11, at 10. While standard A201 forms are presumably readily available for inspection at the time of the signing, there is no evidence in front of the Court that a *modified* A201-1997 was available as a separate document for inspection by the parties at the time of the signing. The Court cannot assume that Section 4.6—the arbitration section—of A201-1997 was incorporated merely because some of A201-1997 was incorporated into the agreement.

The Court finds "as modified" to be ambiguous. The parties included references to specific provisions of A201-1997 in the Agreement, but there is no reference to Section 4.6 of A201-1997 in the signed contracts. This could be because the parties did not want Section 4.6 of A201-1997 to apply to Preconstruction disputes, but it could also be because the parties specifically chose to exclude any references to arbitration. Hoffman's

**MEMORANDUM DECISION AND ORDER- 12**

interpretation—that the standard A201-1997 form was wholly incorporated without any changes—is nonsensical given the plain language of the signed contract. If Hoffman's interpretation is correct, the parties would have no reason to expressly state A201-1997 was incorporated only "as modified." If the parties meant "as modified" to refer to modifications made to the signed Agreements, then the Court must examine how the standard A133-2009's and A121-2003's references to A201-1997 were modified. If they meant "as modified" to refer to a modified A201-1997 document available for the parties to review at signing, Hoffman has been unable to produce it.[4]

Having found that ambiguity exists on the face of the Agreements as to what the parties meant when they incorporated A201-1997 "as modified," the Court considers parol evidence to determine the intent of the drafters.

### b. Ambiguity from Parol Evidence

In *Lindberg v. Roseth*, the Idaho Supreme Court held that "[u]nder the parol evidence rule, if the written agreement is complete on its face and unambiguous, no fraud or mistake being alleged, extrinsic evidence of prior contemporaneous negotiations or conversations is not admissible to contradict, vary, alter, add to or detract from the terms of the written contract." 46 P.3d 518, 524 (Idaho 2002) (internal citations omitted). However, "[p]arol evidence may be considered to aid a trial court in determining the intent

---

[4] The Court is aware of only one modified A201-1997 document shared between the parties. Hoffman emailed SBP a redlined A201-1997 on February 23, 2009. Dkt 12, Ex. 2. This document was circulated over five months before Hoffman signed the agreement, and almost eight months before SBP signed the SBP Agreement. There is no evidence that the parties accepted the changes made to the redlined A201-1997 document Hoffman circulated or that this redlined document was the "as modified" document to which the Agreements referred.

**MEMORANDUM DECISION AND ORDER- 13**

of the drafter of a document if an ambiguity exists." *Steel Farms, Inc.*, 297 P.3d at 229 (quoting *In re Estate of Kirk*, 907 P.2d 794, 801 (Idaho 1995)).

The Court will consider the standard AIA contract forms, drafts of the Agreements, and the signed Agreements in its effort to interpret the intent of the drafters. The parties used the standard A121-2003 and A133-2009 contract forms as the basis of their Agreements. The standard A121-2003's and A133-2009's "Dispute Resolution" section, Section 9.1, includes the following terms:

> During both the Preconstruction and Construction Phases, Claims, disputes or other matters in question between the parties to this Agreement shall be resolved *as provided in Sections 4.3 through 4.6 of A201-1997.* . . .

Dkt. 11, at 4 (emphasis added). Sections 4.3 through 4.6 of A201-2007[5] cover the following topics: "§ 4.3 Claims and Disputes"; "§ 4.4 Resolution of Claims and Disputes"; "§ 4.5 Mediation"; and "§ 4.6 Arbitration." Sections 4.6.1 and 4.6.2 under the Arbitration heading of standard A201-2007 are particularly relevant:

> § 4.6.1 Any Claim arising out of or related to the Contract, except Claims relating to aesthetic effect and except those waived as provided for in Sections 4.3.10, 9.10.4 and 9.10.5, *shall*, after decision by the Architect or 30 days after submission of the Claim to the Architect, *be subject to arbitration*. Prior to arbitration, the parties shall endeavor to resolve disputes by mediation in accordance with the provisions of Section 4.5.
>
> § 4.6.2 *Claims not resolved by mediation shall be decided by arbitration* which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration

---

[5] Hoffman provided the 2007 edition of the A201 General Conditions to its motion rather than the 1997 edition but represents to the Court that "both editions of the A201 General Conditions contained the same arbitration language that is relevant to the pending motion." Dkt. 13, at 6 n.3. Plaintiffs agree that Section 4.6 of the A201-1997 form refers to the arbitration dispute resolution section but disagree that Hoffman can rely on A201-2007 to prove that A201-1997 was incorporated the arbitration agreement. Dkt. 11, at 11, 13. Neither party has produced a copy of A201-1997 for the Court to review.

**MEMORANDUM DECISION AND ORDER- 14**

Association currently in effect. The demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect.

Dkt. 9-7, at 24 (emphasis added). An agreement that uses the standard A121-2003's and A133-2009's "Dispute Resolution" section's wording clearly incorporates Section 4.6 of A201-1997 into the agreement and binds the signatories to arbitrate disputes.

Here, Plaintiffs submitted to the Court two working drafts of the SBP Agreement (the first of the Agreements signed). Hoffman emailed the first draft to Plaintiffs on February 4, 2009. Because there was no Word version of A121-1991[6] available, Hoffman sent Plaintiffs a document entitled "Modifications to Standard Form of Agreement Between Owner And Construction Manager AIA A121 (1991)" rather than a redlined draft of A121-1991. Dkt. 12, Ex. 1, Cover Email. Hoffman proposed deleting Section 9.1 in its entirety and modifying Section 9.2. Dkt. 12, Ex. 1, A121-1991 § 9. Below is a recreation of Hoffman's proposed "Dispute Resolution." The modified A121-1991 contract terms are in regular font, Hoffman's accompanying comment is in bold:

> 9.2.1 In an effort to resolve any claim, dispute or other matter in question arising out of or related to this Agreement or breach thereof, either party may request mediation in accordance with the Construction Industry Mediation Rules of the American Arbitration Association, the costs of which shall be equally shared by the parties. **(Mediation is a methodology used to for settlement of a dispute but it does not have any legal means for enforcement of a resolution. We would recommend Mediation as stated be the first step in a conflict but after that point, either "arbitration" or**

---

[6] Although the parties initially drafted their agreements based on the 1991 version of A121, the parties later agreed to use the 2003 version of A121 as the base form for the Agreements as the 1991 version was no longer published. Plaintiffs represent that Section 9.2.1 of the 1997 version of A121 is identical to the language of Section 9.1.1 of the 2003 version of A121 and Section 9.1.1 of the 2009 version of the A133. Dkt. 11, at 2.

**MEMORANDUM DECISION AND ORDER- 15**

> "litigation" would be required to settle the issue. *We would recommend the use of binding arbitration but are open to discuss.* **CLL**)

*Id.* at § 9.2 (emphasis added). "CLL" corresponds to Cade Lawrence's (Hoffman's representative) initials. Dkt. 11, at 2.

On February 23, 2009, only a few weeks later, Hoffman sent another draft to Plaintiffs. This redlined draft was based off a Word version of A121-2003. Hoffman deleted the standard form terms (represented by strike-through) and added new terms (represented in bold) to Section 9.1.1 of A121:

> **§ 9.1.1** ~~During both the Preconstruction and Construction Phases, Claims, disputes or other matters in question between the parties to this Agreement shall be resolved as provided in Sections 4.3 through 4.6 of A201™ 1997 except that, during the Preconstruction Phase, no decision by the Architect shall be a condition precedent to mediation or arbitration.~~ **In an effort to resolve any claim, dispute or other matter in question arising out of or related to this Agreement or breach thereof, either party may request mediation in accordance with the Construction Industry Mediation Rules of the American Arbitration Association, the costs of which shall be equally shared by the parties. If Mediation does not settle the claim, dispute or other matter,** *Arbitration shall be utilized in accordance with A201 1997, Article 4.6.*

Dkt. 12, Ex. 2, A121-2003 § 9.1.1 (emphasis added) (strikethrough in original). This time, no commentary accompanied the draft agreement's text.

Hoffman also attached a redlined version of A201-1997 to its February 23, 2009 email. Dkt 12, Ex. 2. Reviewing the redlined A201-1997 provides little to no clarification as to the parties' intent. This because the Court cannot compare Hoffman's proposed edits to the standard A201-1997 form with an agreed upon modified A201-1997 form. Thus, the Court cannot determine from the February 23, 2009 redlined A201-1997 draft how the parties intended to modify the standard A201-1997 at the time of the signing.

**MEMORANDUM DECISION AND ORDER- 16**

The Court can compare the proposed modifications of A121-1991 and A121-2003 with the parties' final agreement. Hoffman signed the SBP Agreement on July 28, 2009. The contract's final, modified Section 9.1, "Dispute Resolution," reads as follows:

> In an effort to resolve any claim, dispute, or other matter arising out of or related to this Agreement or breach thereof, either party may request mediation in accordance with the Construction Industry Mediation Rules of the American Arbitration Association, the costs of which shall be equally shared by the parties."

Dkt. 9-3, at 17. The Foundation Agreement's and JSR Agreement's Section 9.1 are identical to the SBP Agreement's Section 9.1. Dkt. 9-1, at 17; Dkt. 9-6, at 18.

In reviewing the standard A121-2003 text, the proposed modifications and draft comments, and the final version of Section 9.1, the Court finds that the parties purposefully excluded the language that "the Agreement shall be resolved as provided in Sections 4.3 through 4.6 of A201-1997" and explicit references to arbitration from Section 9-1. It is clear based on the redline drafts of the SBP Agreement that at least SBP and Hoffman discussed using binding arbitration to settle disputes and consciously decided not to include Hoffman's proposed language that "[a]rbitration shall be utilized in accordance with A201 1997 [sic], Article 4.6" in their signed contract. All of the Agreements lack express references to Section 4.6—the arbitration section—of A201-1997.

### c. *Existence of Arbitration Agreement as a Matter of Law*

Giving Plaintiffs, the parties opposing the motion to compel arbitration on the ground that no agreement to arbitrate was made between the parties, "the benefit of all reasonable doubts and inferences that may arise," *Alarcon v. Vital Recovery Servs., Inc.*, 706 F. App'x 394 (9th Cir. 2017) (internal quotation marks and citations omitted), the

**MEMORANDUM DECISION AND ORDER- 17**

Court concludes that Hoffman has failed to carry its burden to demonstrate that there are no genuine disputes of material fact as to the existence of a binding arbitration agreement. Hoffman has not provided any evidence as to how A201-1997 was modified or any evidence that the parties intended to wholly incorporate A201-1997 into the Agreements. On the face of the documents, there is no evidence that the parties intended to be bound by arbitration in their disputes. Parol evidence shows that the parties intentionally removed references to arbitration in the Agreements.

Because there is genuine dispute as to what the contract term "as modified" under Section 1.2 means, Hoffman is not entitled to judgment as a matter of law.

3. **Jury Trial**

Pursuant to 9 U.S.C. § 4, "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." *See also Three Valleys Mun. Water Dist.*, 925 F.2d at 1141 ("If there is doubt as to whether such an agreement [to arbitrate] exists, the matter, upon a proper and timely demand, should be submitted to a jury.") (quoting *Par–Knit Mills, Inc.*, 636 F.2d 51 (3d Cir. 1980)). The "party alleged to be in default" is to demand a jury trial on the issue of whether there was an arbitration agreement "on or before the return day of the notice of application" that the opposing party has petitioned a United States district court to compel arbitration. 9 U.S.C. § 4. "If no jury trial be demanded . . ., the court shall hear and determine such issue." *GIB, LLC v. Salon Ware, Inc.*, 634 F. App'x 610, 611 (9th Cir. 2016) (quoting 9 U.S.C. § 4).

In this case, none of the parties requested a jury trial on or before Hoffman filed its motion to compel. The Court will set a bench trial on the limited issue of whether the parties

**MEMORANDUM DECISION AND ORDER- 18**

agreed to arbitrate. The parties are ordered 1) to meet and confer and 2) to file a joint proposed trial plan within 21 calendar days of the date of this order. The joint proposed trial plan shall address, inter alia, how long the trial is expected to take, when the parties would prefer trial to be scheduled, and what discovery—if any—is needed for trial.

## VI. CONCLUSION

In reviewing the Agreements as a whole and giving effect to each provision, there is ambiguity as whether the Agreements include a valid arbitration agreement. Because there is ambiguity, the Court looks to parole evidence. The Court finds that there is a factual dispute as to whether parties agreed to arbitrate their disputes. Accordingly, the Court does not reach the question of whether the Agreements delegated the arbitrability issue to the arbitrator at this time. Instead it proceeds summarily to a trial to determine whether an arbitration agreement exists.

## VII. ORDER

IT IS HEREBY ORDERED:

1) Defendant Hoffman's Motion to Dismiss (Dkt. 6) is DENIED at this time.
2) The parties are ordered to meet and confer and to file a joint proposed trial plan within 21 calendar days of the date of this order.

DATED: December 20, 2019

_____
David C. Nye
U.S. District Court Judge