UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SBP LLLP, an Idaho limited liability limited partnership, JRS PROPERTIES III LP, an Idaho limited partnership; and J.R. SIMPLOT FOUNDATION, INC., an Idaho corporation,<br><br>　　　　　　　Plaintiffs,<br>v.<br><br>HOFFMAN CONSTRUCTION COMPANY OF AMERICA, an Oregon corporation,<br><br>　　　　　　　Defendant. | Case No. 1:19-cv-00266-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Pending before the Court is Defendant Hoffman Construction Company of America's ("Hoffman") Motion for Summary Judgment. Dkt. 50. On January 22, 2021, the Court held a hearing and took the matter under advisement. For the reasons set forth below, the Court DENIES the motion.

## II. BACKGROUND

This case involves three related construction contracts and a determination of whether they included a provision to arbitrate disputes arising from them. From 2009 to 2012, Hoffman entered into three separate contracts with SBP LLLP, JRS Properties III LP, and J.R. Simplot Foundation, Inc. (collectively "Plaintiffs") to demolish and construct certain improvements on real property located in Ada County. All three written contracts

were based in part on an American Institute of Architects standard form document A201-1997, but also expressed that incorporation of that document was only *as modified* by the parties.[1]

Due to costs it had allegedly incurred from delays in construction, Hoffman filed a demand for arbitration with the American Arbitration Association claiming various breaches of the three contracts. A couple weeks later, Plaintiffs filed a complaint in Idaho state court, and later an amended complaint, in which they alleged two causes of action. The first cause of action requested a judgment declaring, under Idaho Code § 10-1201, that the contracts do not include agreements to arbitrate with Hoffman. The second cause of action requested a stay of Hoffman's arbitration demand under Idaho Code § 7-902(b).

Hoffman removed the state court case to this Court on the basis of diversity jurisdiction, and later moved to compel arbitration under 9 U.S.C. § 4. Dkt. 6; *see also* Dkt. 26, at 4 (explaining that Hoffman's motion was in fact a motion to compel arbitration). The Court denied Hoffman's motion to compel arbitration, concluding that "there are factual disputes as to whether the parties agreed to arbitrate." *Id.* at 1. In doing so, the Court initially noted that none of the contracts "directly reference arbitration." *Id.* at 9. The Court later explained that "the parties clearly intended to incorporate the A201-1997 into the [contracts], but only 'as modified.'" *Id.* at 10–12. The Court concluded that the phrase "as modified" is facially ambiguous. Turning then to parol evidence, the Court determined that

---

[1] The American Institute of Architects has a variety of standard form contracts. The "A201" refers to a specific draft form, while "1997" refers to the year that form was created. There are often prior and later versions of a form; in theory there could be an A121-1997, A121-2003, A121-2009, etc. This naming convention is consistent throughout this Order.

MEMORANDUM DECISION AND ORDER - 2

the "parties purposefully excluded language . . . and explicit references to arbitration" from one section of the contracts, and that all three contracts "lack express references to Section 4.6—the arbitration section—of A201-1997," leaving the Court with a factual dispute as to whether the parties intended to include an arbitration provision. *Id.* at 17. Accordingly, the Court concluded that Hoffman failed to carry its burden of showing that the Court should compel arbitration. *Id.* at 18.

The Court then granted a temporary restraining order staying arbitration for twenty-eight days (Dkt. 27), which the Court later extended until either Hoffman objects or a bench trial is held to decide whether Plaintiffs agreed to arbitrate the matter (Dkt. 32). The stay has not been dissolved and remains in force. On September 25, 2020, Hoffman filed the instant Motion for Summary Judgment, which proceeded through a routine course of briefing. The Court held a hearing on the matter and now issues its ruling.

### III. LEGAL STANDARD

Summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court's role at summary judgment is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Zetwick v. Cty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017) (citation omitted). In considering a motion for summary judgment, the Court must "view[ ] the facts in the non-moving party's favor." *Id.* To defeat a motion for summary judgment, the respondent need only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* (citation omitted). A court

must enter summary judgment if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## IV. DISCUSSION

Although the Court previously denied Hoffman's motion to compel arbitration because of a facial ambiguity in the contracts and factual disputes as to what the parties meant by the "as modified" language, Hoffman now contends that summary judgment is appropriate based on evidence obtained during discovery. Before diving into Hoffman's arguments more fully, a preliminary point is necessary. An overarching argument or theme of Hoffman's motion is legally incorrect.

Specifically, in an attempt to establish that the contracts are not ambiguous and that their merger clauses make them the sole source of what the contracts contain, Hoffman ironically uses extrinsic evidence. Hoffman points to certain deposition testimony and emails—discussed more fully below—that Hoffman suggests resolve the facial ambiguity. But, if the Court is to consider parol evidence as to a term of a contract's meaning, the law demands that it first be established that a term of the contract is ambiguous. *Buku Props., LLC v. Clark*, 291 P.3d 1027, 1033 (Idaho 2012) ("Only when a document is ambiguous is parol evidence admissible to discover the drafter's intent."); *Steel Farms, Inc. v. Croft & Reed, Inc.*, 297 P.3d 222, 229 (Idaho 2011) ("Parol evidence may be considered to aid a trial court in determining the intent of the drafter of a document if an ambiguity exists." (cleaned up)). Moreover, Hoffman cannot use its favored parol evidence to establish what it thinks the contracts meant and then argue that other unfavorable parol evidence on the

same issue should not be considered. Thus, to be clear, the parol evidence presented here cannot and does not change the Court's conclusion that the "as modified" language contained in the contracts is facially ambiguous. *See* Dkt. 26, at 9–13.[2] Rather, the evidence Hoffman puts forth is merely indicative of the parties' intent.

Turning to Hoffman's arguments, Hoffman makes two claims that certain parol evidence conclusively answers the question of what the parties intended by "as modified." Neither argument satisfies Hoffman's burden on summary judgment.

Hoffman first argues that the evidence demonstrates the A201-1997 forms were available for Plaintiffs' review at the time the contracts were presented for signing. The evidence Hoffman refers to are emails and their attachments, which include the A201-1997 forms sent to Plaintiffs during the contract negotiations. Dkt. 50, at 5. Plaintiffs counter that there is nothing in the emails or attachments that show any *final* revisions made to the A201-1997 forms. Plaintiffs also note that there is nothing to show that these *drafts*, as they are clearly marked, were attached to the signed contracts.

Plaintiffs make persuasive points. There is still no evidence before the Court that a modified A201-1997 was available as a separate document for inspection by the parties *at*

---

[2] As the Court previously explained, "[n]one of the [contracts] directly reference arbitration in the signed documents." Dkt. 26, at 9. Rather, they seek to incorporate the A201-1997 form by reference "as modified." *Id.* at 10. The Court further stated that "the parties clearly intended to incorporate the A201-1997 into the [contracts], but only 'as modified.' The parties did not attach a modified version of the . . . A201-1997 to the signed [contracts]. The question therefore is: what did the parties mean by 'as modified?'" *Id.* The Court continued, "Because no version of the A201-1997 was attached to the [contracts], Hoffman's explanation calls for the Court to compare a standard A201-1997 form with either the [contracts] and/or draft edits to determine how the A201-1997 was modified, i.e., to examine parol evidence." *Id.* at 12. Additionally, the Court concluded that "as modified" is ambiguous because the "parties included references to specific provisions of A201-1997 in the [contracts], but there is no reference to Section 4.6 of A201-1997 in the signed contracts." *Id.* Nothing presented in the instant motion changes these conclusions.

MEMORANDUM DECISION AND ORDER - 5

*the time of signing*. And there is still no evidence that the Plaintiffs accepted the changes made to the redlined A201-1997 document, or that the document emailed was the final version. Indeed, the emails themselves say as much, as they ask Plaintiffs to finalize the documents and send them back to Hoffman for signature. Dkts. 51-1, at 2; 51-4, at 2; 51-1, at 7. It is possible that in finalizing the documents, changes were made to the arbitration aspects of the drafts. The Court is at a loss as to why the finalized documents that were in fact incorporated by reference into the contracts at the time of signing have not been provided since they would be the most helpful in deciding this issue. Without them, the Court must still look to evidence of the parties' intent.

Hoffman next argues that deposition testimony from Plaintiffs' chief contract negotiator, John MacDonald, confirms that the "as modified" language includes the *entire* A201-1997 form, and therefore the standard form's language, including the arbitration clause, was agreed to by the parties. In other words, Hoffman argues that witnesses for both parties concur that the "as modified" language meant to include A201-1997's arbitration clause, removing any genuine issue as to a material fact. In particular, Hoffman points to the following deposition testimony from MacDonald:

> Q. And the final General Conditions as they were incorporated into the signed agreement and as they were modified through the negotiation process, those final General Conditions continued to have clauses in them that called for arbitration in disputes, right?
>
> A. They did.

Dkt. 50, at 3. Hoffman also refers to deposition testimony that none of Plaintiffs' seven objections to the A201-1997 form, expressed in an email exchange, related to dispute

resolution. *Id.* at 6–7.

For their part, Plaintiffs maintain that evidence during the parties' contract negotiations shows that they did not intend to agree to arbitration. Plaintiffs first point to the Court's previous finding that the parties purposefully excluded arbitration language from the contracts during negotiations on several occasions:

> In reviewing the standard [form] text, the proposed modifications and draft comments, and the final version of Section 9.1, the Court finds that the parties purposefully excluded the language that "the Agreement shall be resolved as provided in Sections 4.3 through 4.6 of A201-1997" and explicit references to arbitration from Section 9.1. It is clear based on the redline drafts of the SBP Agreement that at least SBP and Hoffman discussed using binding arbitration to settle disputes and consciously decided not to include Hoffman's proposed language that "[a]rbitration shall be utilized in accordance with A201[-]1997, Article 4.6" in their signed contract. All of the Agreements lack express references to Section 4.6—the arbitration section—of A201-1997.

Dkt. 53, at 5 (quoting Dkt. 26, at 17). Plaintiffs also highlight MacDonald's testimony that the parties agreed that provisions could be "included by reference, [and] could be excluded by reference" and that the intent of striking the reference to arbitration was "to delete the option of arbitration." *Id.* at 6. MacDonald also testified that that his understanding of the contracts was that the intent of the edits was to not include arbitration.

Plaintiffs further point to testimony from Cade Lawrence, who negotiated on behalf of Hoffman, that attempts were made—to no avail— to reinsert references to arbitration in the contracts. As to the seven objections in the email exchange, Plaintiffs assert that qualifying language in the emails regarding those seven objections and when the exchange took place show that the seven objections were

MEMORANDUM DECISION AND ORDER - 7

related to Hoffman's revisions *at that time*, rather than all the revisions made throughout the entire course of negotiations. In short, Plaintiffs assert that there remains a genuine dispute as to a material fact—whether the "as modified" language in the contracts incorporated an arbitration clause.

The Court agrees with Plaintiffs. The conflicting evidence indicates that a genuine dispute still exists, especially because the Court must view the facts in the light most favorable to Plaintiffs, as they are the non-movants. *Zetwick*, 850 F.3d at 441. Viewed through that lens, Plaintiffs' position against inclusion of an arbitration agreement is supported by the evidence they have submitted.

While helpful to Hoffman's case, the evidence that Hoffman highlights simply does not conclusively answer the question of whether the parties intended to include an arbitration agreement. For instance, the testimony from MacDonald that Hoffman points out seems to indicate that the arbitration clause was in the form. However, when the testimony is viewed in the context of all the conflicting evidence, it could mean that the form simply still had the arbitration clause, not that the parties intended to agree to or include that clause in the contracts, particularly in light of MacDonald's testimony that provisions could be excluded by reference. Additionally, it is unclear whether the seven objections were merely objections at one juncture of the negotiations, or an all-inclusive list of Plaintiffs objections. On the evidence before the Court, the former conclusion is a reasonable one because the evidence of previously removing references to arbitration seems to show that Plaintiffs objected to arbitration.

In short, the Court cannot glean from the cold record a conclusive decision for Hoffman while also providing reasonable inferences to Plaintiffs. A bench trial will need to be held for the Court to weigh the competing stories, testimonies, and credibility of the witnesses; to assess the exhibits and other evidence; and to determine whether the parties intended to agree to arbitrate disputes by incorporating the A201-1997 form "as modified." A genuine dispute as to this material fact remains.

## V. ORDER

IT IS HEREBY ORDERED:

1. Defendant Hoffman's Motion for Summary Judgment (Dkt. 50) is **DENIED**.

2. The parties are ordered to meet and confer to file a joint proposed trial plan within 14 calendar days of the date of this order.

DATED: January 29, 2021

_____
David C. Nye
Chief U.S. District Court Judge