DOUGLAS S. OLES, WSBA #9366
ALIX K. TOWN, ISB #11065
OLES MORRISON RINKER & BAKER, LLP
701 Pike Street, Suite 1700
Seattle, WA 98101
Telephone (206) 623-3427
Facsimile (206) 682-6234
oles@oles.com
town@oles.com

Attorneys for Defendant
Hoffman Construction Company of America

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SBP LLLP, an Idaho limited liability limited partnership; JRS PROPERTIES III LP, an Idaho limited partnership; and J.R. SIMPLOT FOUNDATION, INC., an Idaho corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>HOFFMAN CONSTRUCTION COMPANY OF AMERICA, an Oregon corporation,<br><br>Defendant. | Case No. 1:19-cv-00266-DCN<br><br>**HOFFMAN CONSTRUCTION COMPANY OF AMERICA'S PRE-TRIAL BRIEF** |

Pursuant to the Court's order of February 26, 2021, Hoffman Construction Company of America ("Hoffman") hereby submits its pre-trial brief. Hoffman requests that the Court compel arbitration because the A133/A121 incorporates a modified set of A201-1997 General Conditions, and those conditions unambiguously require the parties to arbitrate disputes that cannot be resolved through mediation.

HOFFMAN CONSTRUCTION COMPANY OF AMERICA'S PRE-TRIAL BRIEF
Page 1

I.      STATEMENT OF FACTS

Between December 1, 2008 and June 9, 2010, the three Simplot plaintiffs and Hoffman entered into contract to build parts of the new Simplot headquarters complex in Boise. The work included an office complex with parking and support facilities and the Simplot Foundation Park and Studio Complex. The contracts also called on Hoffman to demolish structures, prepare the site, and mobilize for the work. Exs. 2000, 2001, 2017. The parties utilized standard contract forms published by the American Institute of Architects ("AIA") – specifically the A133/A121 and A201. Through several months of negotiation, they modified those forms, but the final contracts (and *every* draft) incorporated A201 General Conditions by reference, and *every* version of those General Conditions (including the final ones) included an Article 4.6 that refers disputes first to mediation and thereafter to binding arbitration.

The original published version of the AIA-A121 form contained a Disputes clause (Art. 9.1.1) that simply referred the reader to the detailed Disputes language in Article 4 of the General Conditions. When Hoffman suggested clarifying Art. 9.1.1 to mention both mediation and arbitration, Simplot responded that it would keep things "simple" if the parties avoided adding what would be a duplicative reference to arbitration in those forms. Ex. 2005. Although the parties therefore did not add a reference to arbitration in the A121/A133 forms, neither party requested or even discussed removing the more detailed arbitration language from General Condition 4.6. Although the Court will (once again) see "redlined" versions of the General Conditions, Simplot will be unable to show any draft or other version where the arbitration language was removed from Article 4.6.

Hoffman has a policy of insisting on arbitration, especially in circumstances where its customer is a large corporate entity that might be viewed preferentially by a local jury. Just as Hoffman would never agree to resolve disputes under a contract with Apple Corporation in the

HOFFMAN CONSTRUCTION COMPANY OF AMERICA'S PRE-TRIAL BRIEF
Page 2

courts of Cupertino, Hoffman would never have agreed to resolve potential disputes with a local jury in Boise.

The evidence will show that Simplot never proposed removing the arbitration clause from the incorporated General Conditions, and it never stated unwillingness to resolve disputes through arbitration. Instead, Simplot asks the Court to draw an inference that Simplot intended to reject arbitration, based merely on the fact that Simplot did not agree to adding a clause (in A121/A133) that would have reiterated the arbitration agreement already set forth in the General Conditions.

The negotiators for both parties were familiar with the AIA contract forms, which routinely incorporate the A201 General Conditions and which have for many decades specified arbitration as the final means of dispute resolution. As indicated above, Hoffman favored arbitration as a neutral forum, but it also believed that sophisticated customers like Simplot would prefer arbitration for the benefits of privacy and speed in resolving disputes. In this case, Simplot is asking the Court to disregard unambiguous language in General Condition 4.6, even though Simplot never proposed to change it.

Section 1.2 ("General Conditions") of the A133 states "[f]or the Construction Phase, the General Conditions of the contract shall be the AIA Document A201-1997 General Conditions of the Contract for Construction, as modified, which is incorporated herein by reference." Exs. 2000, 2001, 2017. General Condition (GC) 4.6.1 ("Arbitration") in the A201 states that "[a]ny claim arising out of or related to the Contract … shall, after decision by the Architect or 30 days after submission of the Claim to the Architect, be subject to arbitration." *Id*. GC 4.6.2 states that "[c]laims not resolved by mediation shall be decided by arbitration which … shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect." *Id*.

On May 31, 2019, Hoffman filed a demand for arbitration and mediation with the American Arbitration Association. Dkt. 9 at Ex. 5. Hoffman claims extended general conditions costs associated with substantial delays to the Project that occurred while Simplot took time to decide what it wanted to build, and due to some unplanned weather conditions. *Id*. On June 17, 2019, Simplot filed a complaint in District Court for the Fourth Judicial District of Idaho, seeking to block arbitration. On July 11, 2019, Hoffman removed the case to this Court.

On July 18, 2019, Hoffman moved to dismiss Simplot's complaint on the basis that the A201 General Conditions (as modified and adopted by the parties) plainly included an arbitration clause. Dkt. 6. On December 20, 2019, the Court ruled that:

> [T]here is ambiguity at least on the face of the written contracts in what the parties meant by incorporating A201-1997 'as modified' into their Agreements. … While the signed agreement in *City of Meridian* wholly incorporated the standard A101 and A201 forms by reference, here, the Agreements only incorporated A201 'as modified.' Dkt. 11, at 10. While standard A201 forms are presumably readily available for inspection at the time of the signing, there is no evidence in front of the Court that a *modified* A201-1997 was available as a separate document for inspection by the parties at the time of signing.

Dkt. 26 at 12.

On September 25, 2020, Hoffman moved for summary judgment on the basis that there was no genuine dispute as to what the contract term "as modified" meant under Section 1.2 of the parties' A121/A133 contracts. In its opposition to Hoffman's motion, Simplot's counsel tried to raise a fact issue by claiming that Hoffman had failed to show that the A201 arbitration clause conditions "were attached to the signed Agreements." Dkt. 53 at 3-4. In its reply brief, Hoffman included sworn deposition from Simplot's designated contract negotiator (John MacDonald) confirming that the final signed contracts included a modified version of the General Conditions that *included* the Article 4.6 arbitration provision. Although Simplot offered no alternative version

of the final contracts that excluded the arbitration clause, The Court denied summary judgment, holding that:

> There is still no evidence before the Court that a modified A201-1997 was available as a separate document for inspection by the parties *at the time of signing*. And there is still not evidence that the Plaintiffs accepted the changes made to the redlined A201-1997 document, or that the document emailed was the final version. … It is possible that in finalizing the documents, changes were made to the arbitration aspects of the drafts. The Court is at a loss as to why the finalized documents that were in fact incorporated by reference into the contracts at the time of signing have not been provided since they would be most helpful in deciding this issue.

Dkt. 58 at 5-6.

At the trial in this case, the evidence will clearly establish (as Mr. MacDonald has already admitted) that the final forms of the Hoffman/Simplot contracts included a modified version of the A201 General Conditions that in turn included an arbitration clause. The evidence will also show that the final General Conditions (providing for arbitration of disputes) were not only available to Simplot when the contracts were finalized. In fact, Simplot was the party in control of accepting the redline edits to the published AIA forms, and Simplot therefore actually created the final versions of the General Conditions that specified arbitration.

The parties have agreed that the contracts found at Docket 9 are the final versions of the contracts, including the A201 General Conditions which were finalized at the same time as the A121. Further, there is no version of the draft or final General Conditions that fails to include a requirement for arbitration in Article 4.6.

The Court's second summary judgment ruling included the following:

> While helpful to Hoffman's case, the evidence that Hoffman highlights simply does not conclusively answer the question of whether the parties intended to include an arbitration agreement. For instance, the testimony from MacDonald that Hoffman points out seems to indicate that the arbitration clause was in the form. However, when the testimony is viewed in the context of all the conflicting evidence, it could mean that the form simply still had the arbitration clause, not that the parties intended to agree to or include that clause in the contracts, particularly in light of

> MacDonald's testimony that provisions could be excluded by reference. … In short, the Court cannot glean from the cold record a conclusive decision for Hoffman while also providing reasonable inferences to Plaintiffs.

*Id*. at 8-9. While Mr. MacDonald did testify that he believed provisions could be excluded by reference, the contracts in fact include no reference that excludes or deletes the arbitration clause from the General Conditions. Hoffman is unaware of any document in which Simplot's representatives ever insisted upon or even stated a preference for litigation over arbitration as a means of dispute resolution. If Simplot intended to remove Article 4.6 from the General Conditions, it was reasonably obliged to say so clearly in its communications with Hoffman. On the contrary, Mr. Meuleman, Simplot's attorney, reviewed the A201 and confirmed in writing that "[a]ll is acceptable" except for 7 points that had nothing to do with arbitration. Ex. 2008. We expect Simplot's witnesses to confirm that there was no later communication in which Simplot asked to delete the arbitration clause from the AIA General Conditions that were incorporated into the contracts.

Each of the three contracts contains a standard integration clause, barring parties from relying on unstated or subjective intent in construing the agreements. *See* 2000, 2001, 2017 at § 9.2.2. Asking to keep language simple by declining to add a duplicative arbitration clause in the A121/A133 is hardly a rejection of GC 4.6, and the Court should not allow Simplot to manufacture an "ambiguity" that would nullify a clearly stated arbitration clause.

## II.   ARGUMENT

There are two primary issues to be addressed during the trial: 1. Whether the final as-modified version of the A201 General Conditions (including the arbitration clause) was available to Simplot at the time of signing; and 2. Whether the A121/A133 incorporated the arbitration

clause contained in the modified A201 General Conditions. Hoffman is confident that the evidence will show that both of these questions must be answered affirmatively.

> A. The Final "As Modified" A201 Was Available to the Simplot Entities at the Time the A121/A133 Contracts Were Signed.

Simplot has successfully confused the record in its efforts to create issues of material fact in this case. For example, Simplot's opposition to Hoffman's motion for summary judgment suggested there was an issue as to whether the final "as-modified" version of the A201 was available at the time of signing or whether that final version of the A201 was even before the Court. Dkt. 53 at 3-4. In making such assertions, Simplot's counsel goes beyond the testimony of its witnesses with personal knowledge of the negotiations, and it therefore leads us to a trial even where the essential issues cannot in good faith be disputed. The parties worked together for years on the Boise project, during which time it was undisputed that they were utilizing the negotiated set of General Conditions that the Court will see in Exs. 2000, 2001, 2017 (previously admitted as Docket 9). Those General Conditions always included an arbitration clause, and Hoffman believes that Simplot will be unable to produce any version of the General Conditions that did not include an arbitration clause.

The evidence will show, as Hoffman demonstrated in its last summary judgment reply brief, that Docket 9 is the final incorporated "as-modified" version of both the A121/A133 and the A201 – all of which were available to Simplot at the time of signing. Dkt. 54 at 4. In fact, the principal negotiators for both parties (John MacDonald and Cade Lawrence) have already agreed in their depositions that the documents in Docket 9 were the final contract documents.

> B. The A121/A133 Contracts Incorporated the Arbitration Clause in the A201.

It is a fundamental principle of contract law that courts look to the four corners of an integrated contract and will not change the terms of the parties' agreement unless the terms are

ambiguous. In this case, the Court found the following language in Section 2.1 of the A121/A133 contracts to be ambiguous and sought testimony from the parties as to its meaning:

> For the Construction Phase, the General Conditions of the contract shall be the AIA Document A201-1997, General Conditions of the Contract for Construction, as modified, which is incorporated herein by reference. For the Preconstruction Phase, or in the event that the Preconstruction and Construction Phases proceed concurrently, A201-1997 shall apply to the Preconstruction Phase only as specifically provided in this Agreement. The term "Contractor" as used in A201-1997 shall mean the Construction Manager.

Exs. 2000, 2001, 2017 at § 9-1, 4 of 19. Simplot's counsel has argued that "as modified" referred only to the selection of clauses in the A201 that the parties modified through negotiation. Hoffman's interpretation of the contract, which is consistent with the parties' interpretation during the course of the project, is that the entirety of the modified A201 (whether the individual clause was modified or not) is incorporated into the contract.

Of course, the A121/A133 did not say that only modified clauses were incorporated. It says that the General Conditions (as a whole) are incorporated, as modified. This is the first deficiency in Simplot's argument.

The evidence will show that Simplot's interpretation of the contract must also fail because it does not give effect to the parties' exchanged drafts that led up to the final contracts, it conflicts with the parties' course of performance over multi-year project, and it lacks common sense.

As an initial reality check, why would the parties retain (and use) copies of the General Conditions that included the arbitration clause if they intended to include only the selected paragraphs that had been modified during the contract negotiations in 2009?

As a matter of law "[a] court must look to the contract as a whole and give effect to every part thereof." *Steel Farms, Inc. v. Croft & Reed, Inc.*, 297 P.3d 222, 229 (Idaho 2012). Further, "[p]arol evidence may be considered to aid a trial court in determining the intent of the drafter of

a document if an ambiguity exists." *Id*. at 229 (quoting *In re Estate of Kirk*, 907 P.2d 794, 801 (Idaho 1995)).

Only Hoffman's interpretation gives effect to every part of the contract and interprets the contract as a whole. Under the interpretation offered by Simplot's counsel (and not endorsed by Simplot's own negotiator when his deposition was taken), significant portions of the A201 General Conditions would have been *excluded* from the contract. For example, Article 11.1.3 in the Insurance section of the A201 would fall out of the contract because it was never modified from the original published version. Yet, GC 11.1.3 is an important section for Simplot because it required that insurance "be maintained without interruption from date of commencement of the Work until date of final payment and termination of any coverage required to be maintained after final payment." Ex. 2000, 2001, 2017. Cade Lawrence will testify that this insurance requirement was accepted and enforced by both parties. Additionally, under Simplot's recent theory, GC 7.3.1 "Construction Change Directives" would not be incorporated because it is unmodified. Yet, as Cade Lawrence will testify, Simplot issued multiple construction change directives over the course of the project.

Simplot's argument also goes against standard industry practice. Most, if not all, construction contracts have a dispute resolution process that must be followed by both parties. However, only a few clauses in GC 4.4 "Resolution of Claims and Disputes" were modified. If the final General Conditions were selected by picking and choosing the ones that happened to be edited during the exchanges of "redlined" drafts, the result would be a nonsensical set of fragmented provisions. For example, Simplot's proposed reading would leave in the requirement to submit a claim to the Architect (Article 4.4.1) but then remove the requirement of the Architect to make a decision on the claim (Article 4.4.2). Since Simplot merged the "redline" changes into the final version of the A201, both parties would be left to administer the contract without even

knowing which General Conditions were included - unless they went back on each issue to research which clauses had been changed from their original published versions. Hoffman does not expect any of plaintiffs' witnesses to testify under oath that they seriously believed the parties' contracts to consist only of provisions that were edited in the A201 document. Simplot's proposed reading of the contracts ignores reality, and we expect it will be unsupported by any version of the General Conditions that was ever printed.

Finally, a crowning defect in Simplot's argument is that the arbitration clause in GC 4.6 is part of an Article 4 "Administration of the Contract" that <u>was</u> in fact modified. The parties specifically negotiated Article 4. Had they wished to eliminate GC 4.6 "Arbitration," they could have done so. The parties did not, however, do so, and there is no record that Simplot ever asked to modify it. The A121/A133 does not prohibit arbitration, and it specifies no alternative to the arbitration that is specified in GC 4.6. The A201 requires arbitration and specifically states in a *modified* paragraph that "[t]he foregoing agreement to arbitrate and other agreements to arbitrate with an additional person or entity duly consented to by parties to the Agreement shall be specifically enforceable under applicable law in any court having jurisdiction thereof." Exs. 2000, 2001, 2017 (Article 4.6.4). The objective intent of the parties is clear from the face of the document. The parties should be held to their agreement to arbitrate any dispute.

### III.   CONCLUSION

For the foregoing reasons, Hoffman respectfully requests, upon the conclusion of hearing the evidence, that the Court find that the parties agreed to arbitrate and dismiss the Plaintiffs' action.

[SIGNATURE BLOCK ON FOLLOWING PAGE]

DATED this 30th day of June, 2021.

                                                OLES MORRISON RINKER & BAKER LLP

                                                /s/ Alix K. Town
                                                DOUGLAS S. OLES, WSBA #9366
                                                ALIX K. TOWN, ISB #11065
                                                Attorneys for Defendant Hoffman Construction Company of America

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of June, 2021, I caused to be served a true and correct copy of the foregoing by the method indicated below, and addressed to all entities as follows:

| Attorneys for Plaintiffs:<br><br>Wayne Meuleman<br>Joe Meuleman<br>Meuleman Law Group PLLC<br>950 West Bannock Street, Suite 490<br>Boise, ID 83702 | [X] Via ECF<br>[ ] US Mail, Postage Prepaid<br>[ ] Hand Delivery/Legal Messenger<br>[ ] Facsimile<br>[X] Email: wmeuleman@meulamanlaw.com<br>          jmeuleman@meulemanlaw.com |
|---|---|

OLES MORRISON RINKER & BAKER, LLP


By:  /s/ Alix K. Town
       ALIX K. TOWN