DOUGLAS S. OLES, WSBA #9366
ALIX K. TOWN, ISB #11065
OLES MORRISON RINKER & BAKER, LLP
701 Pike Street, Suite 1700
Seattle, WA  98101
Telephone (206) 623-3427
Facsimile (206) 682-6234
oles@oles.com
town@oles.com

Attorneys for Defendant
Hoffman Construction Company of America

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SBP LLLP, an Idaho limited liability limited partnership; JRS PROPERTIES III LP, an Idaho limited partnership; and J.R. SIMPLOT FOUNDATION, INC., an Idaho corporation,<br><br>                    Plaintiffs,<br><br>     vs.<br><br>HOFFMAN CONSTRUCTION COMPANY OF AMERICA, an Oregon corporation,<br><br>                    Defendant. | Case No. 1:19-cv-00266-DCN<br><br>**HOFFMAN CONSTRUCTION COMPANY OF AMERICA'S POST-TRIAL BRIEF** |

In pre-trial motions, the plaintiffs (hereinafter "**Simplot**") claimed there was an issue as to which "modified" general conditions were incorporated into their contracts with Hoffman Construction Company ("**Hoffman**"). That issue was resolved when Simplot conceded that true copies of the signed contracts are contained in Exhibits 2000, 2001 and 2017, and those contracts all provide for disputes to be resolved by binding arbitration in General Condition (GC) 4.6.2.

With no remaining dispute as to the wording of the contracts as signed, there is no ambiguity that justifies admitting extrinsic evidence as to Simplot's subjective intent. At trial, however, Simplot shifted to arguing that when a cross-reference to GC's 4.3 through 4.6 was deleted from the A121 form during contract negotiations, Simplot's subjective (unstated) intent was to delete the referenced GCs. Simplot admits that it never proposed any such deletion in its "redline" edits, and Simplot made no effort to show that the arbitration language in GC 4.6.2 is ambiguous. Under Idaho law, the Court should reject Simplot's evidence of alleged subjective intent and should enforce the contracts as signed.

It is undisputed that all three contracts contain merger clauses, reciting that the signed agreements and documents incorporated therein represent "the entire and integrated agreement" between the parties, superseding "all prior negotiations, representations or agreements".[1] Under Idaho law, Simplot is permitted to adduce parole evidence <u>only</u> to explain ambiguous contract terms – not to contradict a plainly stated clause like GC 4.6.2. Based on the facts presented at trial, the Court should enforce the arbitration clause that was admittedly printed in all three signed contracts, and the Court should lift its stay against arbitration.

**I.     STATEMENT OF FACTS**

A. <u>Summary of Trial Witnesses</u>

---

[1] *See* par. 9.2.2 in Exs 2000.16, 2001.16 & 2017.17.

Plaintiffs' first witness, **Scott Simplot**, is chairman of the board of the Simplot Company. He admitted having essentially no personal knowledge of the facts at issue. He did, however, confirm John MacDonald's authority to negotiate the relevant contracts with Hoffman. (Tr. I, 9:7-10) Mr. Simplot has little knowledge of those contracts, admitting that he never read them closely enough to know that they incorporated the AIA-A201 General Conditions by reference. (*Id.*, 16:2-9) When shown a copy of the contract that he signed (Ex. 2017), he acknowledged that it includes GC 4.6 providing for arbitration of disputes. (*Id.*, 17:1-8) Mr. Simplot also admitted that his information about contract negotiations came from John MacDonald, and he probably never saw any written communication stating that arbitration was unacceptable to Simplot. (*Id.*, 19:2-17) On redirect, Simplot's counsel tried to create an issue because the parties' third contract (Ex. 2017) refers to the A201-1997 conditions, while the ones actually attached to the signed contract are the A201-2007. (*Id.*, 22:1-22) As pointed out on re-cross, however, that argument is a 'red herring' because both versions of the A201 GCs contain the identical arbitration clause. (*Id.*, 23:6 to 24:12)

Simplot's second witness, **John MacDonald**, was Plaintiffs' project manager and principal contract negotiator. He acknowledged that the final contracts contained both the signed A121 form and a set of General Conditions that had been modified from the standard published A201 form. (*Id.*, 84:14 to 85:4) He also confirmed the "as modified" General Conditions were the ones printed in the two final signed contracts that he negotiated. (*Id.*, 86:1-19) He admitted that those signed contracts each included at least two clauses incorporating the A201 GCs by reference. (*Id.*, 116: 5-22) He also confirmed that <u>he</u> was the person who circulated the final forms of contracts for the parties' signatures, and those final drafts included GC 4.6. (*Id.*, 124:13 to 125:8)

Mr. MacDonald said that he held the subjective (unstated) belief that if Simplot deleted a cross-reference to GC's 4.3 through 4.6 in section 9.1.1 of the A121 document, that deletion would have the effect of also deleting all the language in GC's 4.3 through 4.6. (*Id.*, 64:24 to 65:1) He

admitted that he never told Hoffman that Simplot refused arbitration, allegedly because "this was a sensitive and difficult issue." (*Id.*, 91:20 to 92:5) What he actually wrote to Hoffman was merely that the cross-reference to GC's 4.3 through 4.6 was being deleted "to keep this one simple." (Ex. 2005.2 and Tr. I, 93:2-5)  Mr. MacDonald also admitted that he had no clear memory of ever discussing his intent with Hoffman. (*Id.*, 93:14 to 94:5)

John MacDonald admitted that regardless of his alleged subjective intent, Simplot repeatedly sent draft General Conditions back to Hoffman in which there was no substantive edit to GC 4.6. (*See, e.g.*, Exs 2005.39 & 2008.43)  He acknowledged that no one from Simplot ever sent Hoffman any draft that proposed deleting GC 4.6. (Tr. I, 96:17-22)  He also admitted sending Hoffman an email in which Simplot's attorney (Wayne Meuleman) confirmed that "all is acceptable" in the draft A201 GCs other than seven items that had nothing to do with arbitration. (*Id.*, 107:12 to 108:5)  Mr. MacDonald also admitted that the draft GCs being exchanged at that time continued to include the arbitration clause. (*Id.*, 108:6-12 and 112:18 to 113:1)

Under Mr. MacDonald's theory, Simplot's deletion of a cross-reference to GCs 4.3 through 4.6 would have removed a considerable number of GCs that were unrelated to arbitration.  For example, his theory would have led to deleting a time limit on contractor claims (*Id.*, 119:7-10) and the promise of compensation for differing site conditions. (*Id.*, 119:15-23)  During cross-examination, Mr. MacDonald apparently realized that it was not credible to contend that Simplot intended to delete all these clauses, so he retreated and said he could not really recall what he intended to delete from the GCs. (*Id.*, 121:12 to 123:6)  Mr. MacDonald confirmed that "there's nothing written" in which Simplot stated that it did not want arbitration. (*Id.*, 126:2 to 127:1)

Simplot's third witness was **Mark Bowen**, who worked under John MacDonald and apparently succeeded him as Simplot's project manager in 2010. (Tr. II, 6:2-13)  Mr. Bowen confirmed that when the third Simplot/Hoffman contract was signed, it was intended to have

HOFFMAN'S POST-TRIAL BRIEF
Page 3

General Conditions identical to what John MacDonald negotiated in the first two contracts. (*Id.*, 32:8-10) Like Mr. MacDonald, he tried to argue that Mr. MacDonald intended to delete GCs 4.3 through 4.6 (*Id.*, 12:19-23), but he admitted that he had no direct interface with Hoffman in negotiating the contracts (i.e. his testimony was pure hearsay), and he therefore relied on John MacDonald. (*Id.*, 15:1-10) Mr. Bowen knew of no record communicating Simplot's intent to delete any GCs that were printed in the signed contracts. (*Id.*, 32:20-25) He also confirmed that the final signed contracts (Exs. 2000 & 2001) included General Conditions with an arbitration clause in GC 4.6. (Id., 15:22 to 16:16) Significantly, Mr. Bowen also confirmed that throughout the years of Hoffman's construction project in Boise, the contracts used in the field to administer the work were the final signed versions that included the arbitration provision. (*Id.*, 26:16 to 27:2) Mr. Bowen also conceded that each of the Simplot/Hoffman contracts included a merger clause, and he understood that a merger clause excludes any previous oral or written discussions. (*Id.*, 27:3 to 28:1; and 28:16-20) In short, Mr. Bowen made Hoffman's case by confirming that the signed contracts (including an arbitration clause) were controlling.

Hoffman's first witness was **Dan Harmon**, the Executive Vice-President and General Counsel for Hoffman. He concurred with Mr. Bowen that the merger clauses in the final signed contracts superseded all drafts and pre-contract negotiations. (*Id.,* 39:3-25) Mr. Harmon emphasized that Hoffman insisted on specifying dispute resolution by arbitration, and he was unaware of Simplot ever asking to delete GC 4.6 . (*Id.*, 41:5-21) Mr. Harmon also met with Simplot's counsel (Wayne Meuleman) on March 9, 2009 to discuss remaining contract issues, and Mr. Meuleman said nothing about removing the arbitration provision. (*Id.*, 41:22 to 43:11) In fact, Mr. Meuleman expressed dissatisfaction that the parties had agreed to keep a waiver of consequential damages in the contracts (GC 4.3.10), a point that would have made no sense if Simplot had believed that GCs 4.3 through 4.6 had already been removed from the agreement.

(*Id.*, 44:24 to 46:1) Mr. Harmon confirmed that the arbitration clause remained in each contract, and Simplot never talked about deleting it. (*Id.*, 48:2 to 49:3)

Hoffman's second witness was **Cade Lawrence**, a senior project manager who took the lead in negotiating the Simplot contracts. He confirmed that Simplot never refused to accept arbitration, and he was sure he would recall if Simplot had taken such a position. (*Id.*, 58:8 to 59:9) When Simplot asked to delete a cross-reference to GCs 4.3 through 4.6, Mr. Lawrence reasonably accepted John MacDonald's explanation that this edit was "to keep this one simple". (Ex. 2005.2) He noted that Simplot's comments on the drafts were accompanied by Simplot's updated version of the A201 that continued to include an arbitration clause, and if Simplot wished to delete it, Mr. Lawrence would have expected the arbitration clause to be struck out in the "redline" edits. (Id., 70:1-18; 75:17 to 76:6) Mr. Lawrence also noted that the signed contracts (including the arbitration clause) were the versions given to subcontractors and used to administer the multi-year project. (*Id.*, 72:23 to 73:8) When Mr. Lawrence sent the final SBP contract to Hoffman for signature on 5-19-09, it included the arbitration clause. (Ex. 2011.22) Mr. Lawrence confirmed that the final signed versions (including the arbitration clause) were actually prepared and circulated by Simplot, because only Simplot could remove the word "DRAFT" from the electronic copies. (*Id.*, 82:6 to 83:4) No draft contract was ever marked up to delete the arbitration clause in GC 4.6. (*Id.*, 83:5-8)

On cross-examination, Simplot attempted to argue that Hoffman favored deleting arbitration because in Ex. 1001-R (bates ending …1065), Hoffman initially proposed to delete sections 9.1.1 through 9.1.6 from an A121-1997 draft, including an arbitration clause. This argument was misleading, however, because the proposed deletion applied <u>only</u> during the preconstruction phase, not the construction phase at issue in this case. (*Id.*, 111:14 to 112:14) Simplot's counsel also tried to seize upon deposition testimony in which Mr. Lawrence said that

HOFFMAN'S POST-TRIAL BRIEF
Page 5

after deleting the cross-reference in section 9.1.1 from the A121 document, the "contract" would be silent on what happened after mediation, but the witness pointed to other deposition testimony clarifying that he was referring only to the signed A121 document (which Simplot's counsel was calling "the contract") as distinct from the unsigned A201 General Conditions that always provided for arbitration.  (*Id.*, 108:10 to 109:14)

Even after deleting the cross-reference in section 9.1.1 of the A121, the A121 contracts continued to cross-reference and incorporate the A201 General Conditions by reference.[2]  Those GCs in their final modified form <u>always</u> included arbitration clauses.

## II.   STANDARD OF REVIEW

The Court has previously held that the Federal Arbitration Act ("FAA") is governing here. (Dkt 26, p. 6) Once the Court determines that the FAA applies, "[t]he court's role under the Act is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  In this case, there is a dispute as to the first element but no dispute as to the second.  If the Court finds a valid agreement to arbitrate, "then the Act requires the court to enforce the arbitration agreement in accordance with its terms." *Id*.  Idaho law requires that "[a] court reviewing an arbitration clause will order arbitration unless 'it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Mason v. State Farm Mut. Auto. Ins. Co.*, 145 Idaho 197, 201, 177 P.3d 944, 948 (2007)  quoting *Int'l Ass'n of Firefighters, Local No. 672 v. City of Boise*, 136 Idaho 162, 168, 30 P.3d 940, 946 (2001) (quoting *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650, 106 S. Ct. 1415, 1419 (1986).

---

[2] 2001.1, 2001.3 (par. 1.2), 2000.1, 2000.3 (par. 1.2), 2017.1, and 2017.4 (par. 1.2)

HOFFMAN'S POST-TRIAL BRIEF

Page 6

### III.  BURDEN OF PROOF

During trial, the Court asked the parties to address burden of proof in their post-trial briefing. The plaintiff, traditionally bears this burden, but the law generally requires those seeking to compel arbitration to prove a valid arbitration agreement. *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015); *see also Engalia v. Permanente Med. Grp., Inc.*, 15 Cal. 4th 951, 64 Cal.Rptr.2ed 843, 938 P.2d 903, 916-17 (1997) ("The [party seeking arbitration] bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense."). Therefore, Hoffman can carry its burden of proof by showing that the parties' signed contracts included an arbitration clause, while Simplot bears the burden of proving its defense – i.e. that it subjectively intended not to arbitrate.

### IV.  ARGUMENT

A. <u>The Court Should Reject Simplot's Request to Consider Parol Evidence.</u>

When Hoffman brought its first motion for summary judgment, Simplot raised a genuine issue of material fact by saying it was unclear how the parties had modified the A201-1997 General Conditions. The Court concluded that "the parties clearly intended to incorporate the A201-1997, but only 'as modified' …. The question therefore is: what did the parties mean by 'as modified?'" (Dkt 26, p. 10) The issue as to "as modified" was resolved, however, when Simplot admitted that the final contracts as signed are the documents marked as Exhibits 2000, 2001 and 2017. While the parties' 'redline' modifications were reflected in Ex. 2006, it was undisputed that the final modified versions of all three contracts included the arbitration clause in GC 4.6.

When Hoffman brought its second summary judgment motion, Simplot seemed to question whether the "modified" version of the A201 General Conditions was available to Simplot when the agreements were signed. The Court asked for evidence "to show that these *drafts*, as they are

clearly marked, were attached to the signed documents" and "that a modified A201-1997 was available as a separate document for inspection by the parties *at the time of signing*." (Dkt 58, p. 5) Those issues went away when Simplot's own witnesses acknowledged that Simplot removed the word "DRAFT" and circulated for signature the final contracts that continued to include arbitration clauses.

All witnesses concur that the final signed contracts (Exs. 2000, 2001 and 2017) included General Conditions containing an arbitration clause. Simplot made no effort to argue that the arbitration clause (a standard industry provision) was in any way ambiguous. Hoffman, therefore, objected to allowing extrinsic evidence in support of an interpretation that contradicts the plain language of the signed contracts, and the Court agreed to take this objection under advisement. (Tr., I, 50:2 to 51:5)

> B. <u>Idaho Law Applies the Plain Contract Language and Precludes Contradictory Parol Evidence</u>

The Court initially ordered a trial to resolve the question as to what "as modified" meant in the A121. The trial moved to different issues because Simplot shifted its argument. Most testimony centered on Simplot's alleged subjective intent regarding unambiguous arbitration clauses that Simplot admits were in the signed contracts.

Idaho law is clear that "[t]he parol evidence rule provides '[w]here preliminary negotiations are consummated by written agreement, the writing supersedes all previous understandings and the intent of the parties must be ascertained from the writing.'" *Valley Bank v. Christensen*, 119 Idaho 496, 498, 808 P.2d 415, 417 (1991) quoting *Nysing v. Warren*, 94 Idaho 384, 385, 488 P.2d 355, 356 (1971).

Idaho law further provides that:

> If the written agreement is complete upon its face and unambiguous, no fraud or mistake being alleged, extrinsic evidence of prior or contemporaneous negotiations

> or conversations is not admissible to contradict, vary, alter, add to or detract from the terms of the written contract. … It is well established in Idaho that "[o]ral stipulations, agreements, and negotiations preliminary to a written contract are presumed merged therein and will not be admitted to contradict the plain terms of the contract." … This rule however, applies only when the integrated character of the writing is established.

*Id*. quoting *Ringer v. Rice*, 97 Idaho 105, 108, 540 P.2d 290, 293 (1975). To establish an integrated contract, a party need only demonstrate that it contains a merger clause. *Howard v. Perry*, 141 Idaho 139, 142, 106 P.3d 465, 468 (2005) ("The merger clause is not merely a factor to consider in deciding whether the agreement is integrated; it proves the agreement is integrated.").

Here the evidence clearly established three integrated contracts. Each contains a merger clause, and the contracts are integrated. (Exs. 2000.16, 2001.16, and 2017.17 at § 9.2.2; Tr. II, 27:3 to 28:1; and 28:16-20) Therefore, oral stipulations or negotiations may not be admitted to "contradict, vary, alter, add to or detract" from the written agreements. *Valley Bank*, 119 Idaho at 498. Yet, Simplot's position at trial offered extrinsic evidence for precisely this purpose.

This case is similar to *Farnes v. Grover,* 106 Idaho 752, 682 P.2d 1299 (1984), where the parties entered into two identical contracts for the sale of potatoes from two separate fields. The contracts provided that plaintiffs would pay defendant for packaging and selling the potatoes. The defendant would then use his "best efforts" to sell the potatoes. The defendant ended up selling the potatoes for $.85 per 100 pounds, but plaintiffs alleged a separate oral agreement that defendant would sell the potatoes for a net price of at least $2.55 per 100 pounds. The trial court allowed the evidence regarding the $2.55 agreement, and the jury awarded damages based upon the oral agreement. The Court of Appeals vacated the judgment, however, holding that "the oral agreement testimony does contradict the terms of the written contract and should have been excluded." *Id*. at 753, 1300. The court further held that:

> The district court concluded that the written price terms were ambiguous and the court allowed evidence of the oral agreement to be introduced to clarify those terms.

HOFFMAN'S POST-TRIAL BRIEF
Page 9

> However, the consignment agreements provided that [defendant] would sell the potatoes "at such prices" as he could obtain. The contracts specified the amount that [defendant] was to retain to pay for the services which he rendered. The remainder of the proceeds was to be paid to [plaintiffs]. These terms clearly set out the procedure for determining how the proceeds of sales of the potatoes were to be disbursed. The written contracts specifically authorize [defendant] to negotiate the price at which [plaintiffs'] potatoes would be sold. [Defendant] may retain no more of the proceeds for his services than the contracts allow. We conclude that the contract terms were not ambiguous; thus extrinsic evidence could not be introduced to explain the alleged ambiguity.

*Id*. at 754-755, 1301-02.

In this case, we have three contracts with identical General Conditions. The Court initially perceived an ambiguity as to which "modified" GC's were incorporated, but that issue went away when the contents of the signed agreements were admitted. The parties agree that Exhibits 2000, 2001, and 2017 were the parties' complete integrated contracts, and each contract contained an arbitration clause. (Exs. 2000.16, 2001.16, and 2017.17 at § 9.2.2; Tr. I, *Id.*, 84:14 to 85:4; 86:1-19; Tr. II, 27:3 to 28:1; and 28:16-20) Simplot then introduced evidence (less compelling than the facts of *Farnes*) that Simplot had an unstated intent to remove the GC on arbitration that was never expressed to Hoffman. Simplot now asks the Court to find, as the trial court did in *Farnes*, that parol evidence should be allowed to contradict and override terms of the parties' signed contracts. Hoffman requests that the Court follow the binding precedent of the Court of Appeals and reject Simplot's parol evidence.

## V. CONCLUSION

For the reasons stated above, Hoffman respectfully asks the Court to conclude that clear arbitration clauses were admittedly part of the signed contracts and should be enforced, so that the preliminary injunction against arbitration should be lifted.

DATED this 13th day of September, 2021.

                              OLES MORRISON RINKER & BAKER LLP

                              /s/ Alix K. Town
                              ALIX K. TOWN, ISB #11065

                              Attorneys for Defendant Hoffman Construction
                              Company of America

## CERTIFICATE OF SERVICE

I hereby certify that on the 15th[th] day of September, 2021, I caused to be served a true and correct copy of the foregoing by the method indicated below, and addressed to all entities as follows:

| Attorneys for Plaintiffs:<br><br>Wayne Meuleman<br>Joe Meuleman<br>Meuleman Law Group PLLC<br>950 West Bannock Street, Suite 490<br>Boise, ID 83702 | [X] Via ECF<br>[ ] US Mail, Postage Prepaid<br>[ ] Hand Delivery/Legal Messenger<br>[ ] Facsimile<br>[X] Email: wmeuleman@meulamanlaw.com<br>           jmeuleman@meulemanlaw.com |
|---|---|

OLES MORRISON RINKER & BAKER, LLP


By:    /s/ Alix K. Town
       ALIX K. TOWN