DOUGLAS S. OLES, WSBA #9366
ALIX K. TOWN, ISB #11065
OLES MORRISON RINKER & BAKER, LLP
701 Pike Street, Suite 1700
Seattle, WA  98101
Telephone (206) 623-3427
Facsimile (206) 682-6234
oles@oles.com
town@oles.com

Attorneys for Defendant
Hoffman Construction Company of America

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SBP LLLP, an Idaho limited liability limited partnership; JRS PROPERTIES III LP, an Idaho limited partnership; and J.R. SIMPLOT FOUNDATION, INC., an Idaho corporation,<br><br>             Plaintiffs,<br><br>vs.<br><br>HOFFMAN CONSTRUCTION COMPANY OF AMERICA, an Oregon corporation,<br><br>             Defendant. | Case No. 1:19-cv-00266-DCN<br><br>**HOFFMAN CONSTRUCTION COMPANY OF AMERICA'S [PROPOSED] FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

## I.    FINDINGS OF FACT

1. The commercial clauses in the three contracts at issue in this case were developed by the parties through mutual negotiations in late 2008 and 2009.  They negotiated modifications to several standard contract forms published by the American Institute of Architects (**AIA**).  The first two contracts, signed in 2009, were modified from A121-2003 and A201-1997.

(Exs. 2000 & 2001)  The third contract, signed in early 2012, was modified from A133-2009 and A201-2007.  (Ex. 2017)

2.  At trial, it was undisputed that Exhibit 2000 comprises all commercial terms of the final written contract that was signed by Hoffman Construction Company of America ("**Hoffman**") and J.R. Simplot Foundation, Inc. (Tr. I, 86:10-87:13)

3.  At trial, it was undisputed that Exhibit 2001 comprises all commercial terms of the final written contract that was signed by Hoffman and SBP LLLP. (Tr. I, 86:10-87:13)

4.  At trial, it was undisputed that Exhibit 2017 comprises all commercial terms of the final written contract that was signed by Hoffman and JRS Properties III LP.

5.  Each of the parties' three signed contracts includes a set of A201 General Conditions ("**GCs**") which in turn include an Article 4.6 stating that when a dispute cannot be resolved by mediation, it shall be subject to binding arbitration.  (Exs. 2000.51, 2001.60, and 2017.42)

6.  Simplot had the final versions of the complete contracts in its possession, including the arbitration clause in Article 4.6, when Simplot signed those contracts.  (Tr. I, 86:1-19, 124:13-125:8)

7.  The signed contracts (Exs. 2000, 2001, and 2017) each contain an Article 9.2.2 (Extent of Contract), reciting that each signed contract "represents the entire and integrated agreement between the Owner and the Construction Manager and supersedes all prior negotiations, representations or agreements, either written or oral". (Exs. 2000.16, 2001.16, and 2017.17)

8.  During contract negotiations, the Simplot companies (hereinafter collectively "**Simplot**") were primarily represented by John MacDonald, although Simplot's outside counsel Wayne Meuleman also played an assisting role.  (Tr. I, 33:8-14, 106:7-15) Similarly, Hoffman was primarily represented by Cade Lawrence, with support from Hoffman's general counsel Dan Harmon.  (Tr. II, 37:18-38:13)

9.  On February 4, 2009, Hoffman proposed deleting sections 9.1.1 through 9.1.6 from the A121-1997 document (Ex. 2003.22, aka Ex. 1001-R), and those provisions included an arbitration clause in Art. 9.1.3.  It was undisputed at trial, however, that sections 9.1.1 through 9.1.6 related only to Hoffman's preconstruction phase and not to the construction phase at issue in this case.  (Ex. 2003.14; Tr. II, 111:14 to 112:14)

10. In February 2009, the parties switched from the A121-1997 to the A121-2003 form as a basis for their contract negotiations.

11. Over a period of several months, the parties negotiated to modify the standard AIA forms by exchanging emails with their respective proposed revisions.  Many of these revisions are reflected in the "redline" versions of A121-2003 and A201-1997 that Cade Lawrence sent to John MacDonald on February 23, 2009.  (Ex. 2006)  One of Simplot's proposed modifications was to delete a cross-reference to General Conditions 4.3 through 4.6 in Article 9.1.1 of the A121-2003.  Hoffman proposed to add a sentence in that same article to state that if mediation failed to settle a claim, the parties would utilize arbitration "in accordance with A201 1997, Article 4.6".  (Ex. 2003.22 & 2006.19)

12. On February 4, 2009, Simplot sent a "new version" of the A121 and A201 documents for review by Hoffman.  With regard to Article 9.1.1 in the A121-2003, it continued to delete the cross-reference to GCs 4.3 through 4.6, but it did not add Hoffman's proposed sentence about arbitration.  (Ex. 2005.16) Simplot's modified versions did, however, retain the full text of the arbitration clause in GC 4.6.  (Ex. 2005.39) By way of explaining Simplot's preferred language for the Dispute Resolution clause in Article 9.1.1 of the A121-2003, Simplot's John MacDonald stated only:  "I like to keep this one simple and I agree with Wayne's (Simplot Counsel) language.  If you feel it's critical, then we can take a look at it."  (Ex. 2005.2)

13. At trial, Mr. MacDonald testified that his subjective intent was to remove arbitration as part of the contract disputes process.  He admitted, however, that he had no clear memory of ever discussing this intent with Hoffman.  (Tr. I, 93:14 to 94:5)

14. Both of Hoffman's trial witnesses testified that Hoffman had a strong company policy favoring arbitration as a disputes remedy, and Simplot's John MacDonald admitted being aware of that policy.  (Tr. II, 41:5-21; 58:8 to 59:9; Tr. I, 56:22-23)  On behalf of Hoffman, Cade Lawrence testified that he never understood Simplot's contract edits as a refusal to accept arbitration as a dispute process.  (Tr. II, 58:8 to 59:9)  Hoffman expected that if Simplot insisted on deleting arbitration, it would have communicated that position as part of its "redline" edits to the A201 General Conditions.  (Tr. II, 70:1-18; 75:17 to 76:6)

15. It was undisputed at trial that Simplot never conveyed any draft of the three contracts at issue that struck out or proposed to delete the arbitration clause in GC 4.6. (Tr. I, 105:2-7, 117:25-118:6).

16. It was undisputed at trial that the arbitration clause in GC 4.6 was part of all three printed contracts as signed by Simplot. (Tr. I, 124:24-125:8; Tr. II, 26:21-24)

17. It was undisputed at trial that the versions of contract that were actually used by the parties to administer the multi-year construction projects in Boise included General Conditions containing the arbitration clause in GC 4.6. (Tr. II, 26:16 to 27:2)

18. It was undisputed that on or about March 9, 2009, Hoffman's Dan Harmon met in Boise with Wayne Meuleman, the outside counsel for Simplot. (Tr. II, 42:14-43:11) They discussed some remaining issues in contract negotiation, including Mr. Meuleman's concern about leaving GC 4.3.10 in the General Conditions. (Tr. II, 44:22-45:10) Mr. Meuleman's understanding that GC 4.3.10 was still in the contracts appears to contradict Simplot's contention that GC's 4.3 through 4.6 had already been removed by deleting the cross-reference in Article 9.1.1 of the A121-2003 document.

19. On March 27, 2009, Mr. Meuleman wrote an email memo to John MacDonald that listed his comments in response to "Hoffman's revisions". With regard to the General Conditions in the A201 document, Mr. Meuleman stated that "all is acceptable except" a list of seven items, none of which related to dispute resolution. (Ex. 2008.2) On March 30, 2009, John MacDonald forwarded Wayne Meuleman's memo to Cade Lawrence as a statement of Simplot's position. (*Id*.) The draft contracts forwarded to Hoffman on March 30, 2009 attached Simplot's latest proposed versions of the modified A121 and A201 documents, and they continued to include the arbitration clause in GC 4.6. (Ex. 2008.43)

20. On May 13, 2009, as the modified versions of the A121 and A201 continued to evolve, Cade Lawrence sent the "latest contract documents with revisions from our discussions with you on 4/3/09". (Ex. 2009.1) That latest version continued to include the binding arbitration clause in GC 4.6. (Ex. 2009.43)

21. On May 19, 2009, the parties were preparing to finalize their first two contracts, but Cade Lawrence wrote to John MacDonald that the parties were "running into an AIA software issue". (Ex. 2010) Since the electronic drafts of the modified documents originated with Simplot, only Simplot could remove the word "DRAFT" from the pages. Mr. Lawrence

therefore sent the modified contract forms to Simplot to finalize them for signature. (Exs. 2011 & 2012)

22. When the parties' third contract was signed, Mark Bowen had taken over for John MacDonald on behalf of Simplot.  Although the parties worked off different AIA forms (A133-2009 and A201-2007), Mr. Bowen confirmed that Simplot intended to use General Conditions that were identical to those negotiated by John MacDonald on the first two contracts.  (Tr. II, 32:8-10)

23. All three contracts as signed include at least two clauses that purport to incorporate the A201 General Conditions by reference.  (Ex. 2000.1, Ex. 2000.3 at Art. 1.2, Ex. 2001.1, Ex. 2001.3 at Art. 1.2, Ex. 2017.1, Ex. 2017.4 at Art. 1.2)    At trial, Simplot did not challenge that these cross-references were included in the signed contracts, and Simplot did not offer evidence of any request during contract negotiations to delete those cross-references.

24. Where the signed contracts incorporate the A201 General Conditions, they refer to doing so "as modified". On behalf of Simplot, John MacDonald admitted that "as modified" means the A201 General Conditions as printed in Exhibits 2000 and 2001, the two contracts that he negotiated and which were used as a model for the parties' third contract in 2017. (Tr I, 86:1-19)

25. All versions of the three contracts, including final signed versions and all drafts introduced into evidence, include the GC 4.6 which calls for arbitration of disputes before the American Arbitration Association.  (Exs. 2000.51-52, 2001.60-61, 2017.42 at §4.6)

26. In removing a cross reference to GCs 4.3 through 4.6 in Article 9.1.1 of the A121 document, John MacDonald testified that he subjectively intended to delete some or all of those cross-referenced General Conditions.  Simplot offered no evidence of any written communication stating this intent, however, and Simplot's witnesses had no clear memory of discussing that intent with Hoffman during contract negotiations.  Instead, what Simplot wrote to explain its edit to Article 9.1.1 of A121 was merely "to keep this one simple." (Ex. 2005.2 and Tr. I, 93:2-5)

27. No one from Simplot ever sent Hoffman any draft that proposed deleting GC 4.6. (Tr. I, 96:17-22)

28. Simplot's John MacDonald understood that the contracts include a merger clause, and that a merger clause excludes any previous oral or written discussions from the contract. (Tr. II, 27:3-28:1 and 28:16-20)

29. Simplot offered no document stating to Hoffman that Simplot did not want arbitration. (Tr. I, 126:2-127:1)

30. No draft contract was ever marked up to delete the arbitration clause in GC 4.6 (Tr. II, 83:5-8)

## II.    CONCLUSIONS OF LAW

1. The Court has jurisdiction of the parties hereto and the subject matter herein.

2. All exhibits were admitted as evidence by joint stipulation of the parties. (Dkt. 70)

3. The Federal Arbitration Act applies to this case. (Dkt. 26 at 6).

4. The Court's role is limited to" determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cunico Corp. v. Custom Alloy Corp.*, 668 F.App'x 777, 777-78 (9th Cir. 2016) (quoting *Chiron Corp. v. Orto Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

5. If the Court determines that a valid arbitration agreement exists, "the district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Chiron Corp.*, 207 F.3d at 1130 (internal quotation marks and citation omitted).

6. "A written contract that contains a merger clause is complete upon its face. … The purpose of a merger clause is to establish that the parties have agreed that the contract contains the parties' entire agreement. The merger clause is not merely a factor to consider in deciding whether the agreement is integrated; it proves the agreement is integrated." *Howard v. Perry*, 141 Idaho 139, 142, 106 P.3d 465, 468 (2005) (internal citations omitted).

7. Exhibits 2000, 2001, and 2017 are integrated contracts because they each contain a clearly written merger clause.

8. "The parol evidence rule provides '[w]here preliminary negotiations are consummated by written agreement, the writing supersedes all previous understandings and the intent of the parties must be ascertained from the writing.'" *Valley Bank v. Christensen*, 119 Idaho 496, 498, 808 P.2d 415, 417 (1991) *quoting Nysingh v. Warren*, 94 Idaho 384, 385, 488 P.2d 355, 356 (1971). "It is well established in Idaho that '[o]ral stipulations, agreements, and

negotiations preliminary to a written contract are presumed merged therein and will not be admitted to contradict the plain terms of the contract.'" *Id. quoting Ringer v. Rice*, 97 Idaho 105, 108, 540 P.2d 290, 293 (1975).

9.   Parol evidence is not admissible to contradict GC 4.6 because Exhibits 2000, 2001, and 2017 are integrated contracts and their arbitration clauses are unambiguous.

10. "Only when a document is ambiguous is parol evidence admissible to discover the drafter's intent." *Buku Props. LLC v. Clark*, 291 P.2 1027, 1033 (Idaho 2012)  "A court must look to the contract as a whole and give effect to every part thereof." *Steel Farms, Inc. v. Croft & Reed, Inc.,* 297 P.3d 222, 229 (Idaho 2012).  "In the absence of ambiguity, the document must be construed in its plain, ordinary and proper sense, according to the meaning derived from the plain wording of the instrument." *C&G, Inc. v. Rule*, 25 P.2d 76, 78 (Idaho 2001). The plain wording of GC 4.6 indicates that where disputes cannot be resolved through mediation, they may be referred to binding arbitration.  Both parties concur that GC 4.6 was included in the printed terms of contract as signed by the parties.

11. Each contract includes a mutually modified version of the A201 General Conditions as a separate document incorporated by reference. Exs. 2001.1, 2001.3 (par. 1.2), 2000.1, 2000.3 (par. 1.2), 2017.1, and 2017.4 (par. 1.2).

12. Simplot has argued that this case is analogous to *Glenn H. Johnson Construction Company v. Board of Education*, where the parties had expressly eliminated an arbitration clause that had been part of the General Conditions.   245 Ill.App.3d 18, 614 N.E.2d 208 (1993). Because the parties in that case had specifically eliminated the clause that called for arbitration of disputes, the Illinois court ruled that no arbitration agreement existed between the parties.  *Glenn H. Johnson*, however, is not applicable here, because Simplot and Hoffman never eliminated the clause requiring arbitration (i.e. GC 4.6); instead, they merely removed a cross-reference to GC's 4.3 through 4.6 (while leaving two other cross-references that incorporated the A201 General Conditions).

13. Section 4.6 in the A201 General Conditions unambiguously selects arbitration as the dispute resolution process that is binding on the parties when mediation fails to resolve a dispute. Exs. 2000.51-52, 2001.60-61, 2017.42 at §4.6.

14. The parties are obligated to arbitrate any dispute before the American Arbitration Association because each contract includes a clear arbitration clause in its modified version of the A201 General Conditions. Exs. 2000.51-52, 2001.60-61, 2017.42 at §4.6.

DATED this 13th day of September, 2021.

OLES MORRISON RINKER & BAKER LLP


 /s/ Alix K. Town
ALIX K. TOWN, ISB #11065

Attorneys for Defendant Hoffman Construction
Company of America

**ORDER**

Based on the foregoing, IT IS ORDERED:

A)  The parties have a valid arbitration clause.

B)  The preliminary injunction against arbitration is lifted.

DATED this ____ day of _____, 2021.


_____
The Honorable David C. Nye
Chief Judge
United States District Court



Presented by:


OLES MORRISON RINKER & BAKER LLP


/s/ Alix K. Town
_____
ALIX K. TOWN, ISB #11065

Attorneys for Defendant Hoffman Construction
Company of America

## CERTIFICATE OF SERVICE

I hereby certify that on the 13th day of September, 2021, I caused to be served a true and correct copy of the foregoing by the method indicated below, and addressed to all entities as follows:

| Attorneys for Plaintiffs:<br><br>Wayne Meuleman<br>Joe Meuleman<br>Meuleman Law Group PLLC<br>950 West Bannock Street, Suite 490<br>Boise, ID 83702 | [X] Via ECF<br>[ ] US Mail, Postage Prepaid<br>[ ] Hand Delivery/Legal Messenger<br>[ ] Facsimile<br>[X] Email: wmeuleman@meulamanlaw.com<br>          jmeuleman@meulemanlaw.com |
| --- | --- |

OLES MORRISON RINKER & BAKER, LLP


By:   /s/ Alix K. Town
      ALIX K. TOWN