UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SBP LLLP, an Idaho limited liability limited partnership; JRS PROPERTIES III LP, an Idaho limited partnership; and J.R. SIMPLOT FOUNDATION, INC., an Idaho corporation,<br><br>                Plaintiffs,<br>v.<br><br>HOFFMAN CONSTRUCTION COMPANY OF AMERICA, an Oregon corporation,<br><br>                Defendant. | Case No. 1:19-cv-00266-DCN<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

The Court held a bench trial in this matter on July 28-29, 2021. Dkts. 75, 77. The trial transcript was filed on August 31, 2021. Dkts. 78, 79. The parties then submitted post-trial memorandums (Dkts. 80, 82) and proposed findings of fact (Dkts. 81, 83) on September 13, 2021. The Court took the matter under advisement and now enters the following findings of facts and conclusions of law.

## I. FINDINGS OF FACT

1. From 2009 to 2012, Hoffman Construction Company of America ("Hoffman") entered into three separate contracts (collectively, the "Contracts") with SBP LLLP ("SBP"), JRS Properties III LP ("JRS"), and J.R. Simplot Foundation, Inc. ("Foundation") (collectively, "Simplot") to develop and construct certain improvements on real property located in Boise, Idaho.

2. In 2009, Hoffman and SBP executed a written contract with an effective date of December 1, 2008, based on a standard form agreement published by the American Institute of Architects ("AIA") referred to as A121-2003, as revised by the parties, which incorporates by reference the AIA A201-1997 General Conditions as modified ("SBP Agreement"). Trial Ex. 2001; Tr. Vol. I[1], 40:19–41:2.

3. In February 2010, Hoffman and Foundation executed a written contract with an effective date of December 1, 2008, based on the SBP Agreement ("Foundation Agreement"). Trial Ex. 2000.

4. In January 2012, Hoffman and JRS executed a written contract with an effective date of June 9, 2010, based on the standard form agreement published by the AIA referred to as A133-2009, but revised by Hoffman to provide the same language as the SBP Agreement, which incorporates by reference the AIA A201-1997 General Conditions as modified ("JRS Agreement"). Trial Ex. 2017.

5. The parties intended that the basic terms of the SBP Agreement would be a "template" for the Foundation Agreement and the JRS Agreement and, regarding provisions pertinent to the issues before this Court, each Contract contains identical terms. Tr. Vol. I, 13:14–22; 18:9–15; 31:18–32:13; Tr. Vol. II, 71:3–18.

6. During contract negotiations, Simplot was primarily represented by John MacDonald, although Simplot's outside counsel, Wayne Meuleman, also played an assisting role. Tr. Vol. I, 33:8–14, 106:7–15. Similarly, Hoffman was primarily

---

[1] Volume I of the bench trial transcript ("Tr. Vol. I") is located at Dkt. 78; Volume II ("Tr. Vol. II") is located at Dkt. 79.

represented by Cade Lawrence, with support from Hoffman's general counsel, Dan Harmon. Tr. Vol. II, 37:18–38:13.

7. Section 1.2 of the SBP Agreement states:

   For the Construction Phase, the General Conditions of the contract shall be the AIA Document A201-1997, General Conditions of the Contract for Construction, as modified, which is incorporated herein by reference. For the Preconstruction Phase, or in the event that the Preconstruction and Construction Phases proceed concurrently, A201-1997 shall apply to the Preconstruction Phase only as specifically provided in this Agreement.

   Ex. 2001.3. The words "as modified" in reference to the AIA Document A201-1997 were inserted into the standard published language during negotiations by agreement of the parties. Trial Ex. 1006, 2001.20; Tr. Vol. I, 75:6–76:10. MacDonald understood that "as modified" in Section 1.2 meant any change made in either A121 or A201 directly or by reference. Tr. Vol. I, 62:12–23; 64:17–65:1; 114:1–8. Specifically, MacDonald intended to delete incorporation of A201, Section 4.6, from the signed contract understanding that the AIA intended to provide for arbitration in the executed agreement for "a reason." Tr. Vol. I, 109:17–25.

8. Also, during negotiations of the SBP Agreement, Simplot and Hoffman agreed to delete the following standard published language from Section 9.1.1 of Article 9 entitled "Dispute Resolution":

   During both the Preconstruction and Construction Phases, Claims, disputes or other matters in question between the parties to this Agreement shall be resolved as provided in Sections 4.3 through 4.6 of A201 – 1997 except that during the Preconstruction Phase, no decision by the Architect shall be a condition precedent to mediation or arbitration.

   and inserted the following language proposed by MacDonald:

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 3

> § 9.1 DISPUTE RESOLUTION
> (Paragraph deleted)
> § 9.1.1 In an effort to resolve any claim, dispute or other matter in question arising out of or related to this Agreement or breach thereof, either party may request mediation in accordance with the Construction Industry Mediation Rules of the American Arbitration Association, the costs of which shall be equally shared by the parties.

Tr. Vol. I, 49:9–15; 51:13–52:16; 109:18–25; Exs. 1006, 2001.16, 2001.26.

9. For the JRS Agreement, because the A121-2003 was no longer available, Hoffman modified the standard published language of A133-2009 to provide the "exact verbiage as previously agreed to on the expired A121 form", including Section 1.2 and Section 9.1.1, and also deleted the "check the box" option for electing arbitration in Section 9.2.4. Tr. Vol. II, 11:25; Trial Ex. 1007, at bates 518, 538, and 539.

10. For the JRS Agreement, there is no evidence before the Court that Hoffman provided the relevant Simplot parties with a copy of the A201-1997 General Conditions at the time it was executed. Tr. Vol. I, 21:20–22:22; Tr. Vol. II, 12:1–12. Scott Simplot testified that he didn't recall seeing the A201 document and that had he seen A201—specifically Section 4.6—he would have said something because he understood that issue was already settled, and arbitration was "off the table." Tr. Vol. I, 13:7–13; 17:9–16. Also, there is no evidence before this Court that the provisions of the A201- 2007 were edited to conform with the A201-1997 provisions agreed upon by reference in the JRS Agreement and in the SBP Agreement and Foundation Agreement.

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 4

11. In the initial exchanges of proposed contract terms, Lawrence emailed MacDonald on February 4, 2009, transmitting the 1991 edition of A121 and a document entitled MODIFICATIONS TO STANDARD FORM OF AGREEMENT BETWEEN OWNER AND CONSTRUCTION MANAGER AIA A121 (1991). Trial Ex. 1001_corrected. There is conflicting testimony regarding which party prepared the MODIFICATIONS. Although MacDonald was uncertain who drafted the .pdf document of the MODIFICATIONS, he referred to the language inserted in 9.1.1 as "Wayne's (Simplot counsel) language." Tr. Vol. I, 45:8–46:20. Lawrence testified that his office converted a .pdf of the MODIFICATIONS to Microsoft Word in order to use "Track Changes" to identify revisions. Trial Exs. 1001_corrected, 2003.1; Tr. Vol. II, 59:10–60:11. Pertinent to the issue before the Court, the MODIFICATIONS changed the provisions of Article 9 of the 1991 A121 by deleting Sections 9.1.1 through 9.1.6, and modifying 9.2 and 9.2.1, as follows:

9.2 DISPUTE RESOLUTION

9.2.1 In an effort to resolve any claim, dispute or other matter in question arising out of or related to the Agreement or breach thereof, either party may request mediation in accordance with the Construction Industry Mediation Rules of the American Arbitration Association, the cost of which shall be equally shared by the parties. (Mediation is a methodology used to for [sic] settlement of a dispute but it does not have any legal means for enforcement of a resolution. We would recommend Mediation as stated be the first step in a conflict but after that point, either "arbitration" or "litigation" would be required to settle the issue. We would recommend the use of binding arbitration but are open to discuss. CLL)

Lawrence added his comments to the revised 9.2 in parenthesis with his initials CLL. Trial Ex. 1001_corrected. The comments in parentheses associated with the

initials "CLL" in red text are Lawrence's comments (Tr. Vol. I, 46:5–15; Tr. Vol. II, 64:19–65:21) and the edits in red text are also Lawrence's (Tr. Vol. I, 45:21–50:1).

12. In response, MacDonald emailed Lawrence later on February 4, 2009, transmitting the 2003 newer version of A121 and the 1997 version of A201. In his email, MacDonald responded to Lawrence's redline edits and comments shown in red text in the MODIFICATIONS. Tr. Vol. I, 53:8–55:6. Specifically, in reference to Dispute Resolution in Section 9.1.1 of A121-2003, MacDonald stated he would like to "keep this one simple and I agree with Wayne's (Simplot counsel) language," which provided for only mediation. Trial Ex. 1003. MacDonald inserted the language proposed in the MODIFICATIONS to Article 9, Section 9.2, providing only for mediation and omitting Lawrence's comment to 9.2, as shown in Trial Exs. 1001_corrected; 2003.

13. On February 23, 2009, Hoffman sent a redlined draft of A121-2003 to Simplot in Microsoft Word, showing prior edits in redline. He also attached a redlined of A201-1997 which included Section 4.6 Arbitration. In Section 9.1.1, the redline shows the previously deleted standard published language in blue text stricken through and the substituted language (referred to by MacDonald as "Wayne's (Simplot counsel) language" in Exhibit 1003). Lawrence again attempted to reinsert arbitration into Section 9.1.1 of the A121-2003 by adding new language shown in red (also referred

to as magenta in testimony) specifically referencing A201 1997, "Article 4.6." The Word version redline is as follows:

§ 9.1.1 ~~During both the Preconstruction and Construction Phases, Claims, disputes or other matters in question between the parties to this Agreement shall be resolved as provided in Sections 4.3 through 4.6 of A201™–1997 except that, during the Preconstruction Phase, no decision by the Architect shall be a condition precedent to mediation or arbitration.~~ In an effort to resolve any claim, dispute or other matter in question arising out of or related to this Agreement or breach thereof, either party may request mediation in accordance with the Construction Industry Mediation Rules of the American Arbitration Association, the costs of which shall be equally shared by the parties. If Mediation does not settle the claim, dispute or other matter, Arbitration shall be utilized in accordance with A201 1997, Article 4.6.

Dkt. 12, Ex. 2; A121-2003 § 9.1.1 (strikethrough in original); Trial Ex. 1004; Tr. Vol. I, 60:20–61:7; 62:24–65:1.

13. Lawrence's repeated attempts to reinsert into 9.1.1 a reference to Section 4.6 of the A201-1997 illustrates his understanding at that time that deleting the standard language in Section 9.1.1 of the A121, which incorporates Section 4.6 Arbitration by reference, modified the A201 by removing arbitration as the agreed method of dispute resolution. Ex. 1015, Tr. Vol. I, 89:7–24; 90:11–17; 91:6–92:15.

14. MacDonald's repeated rejection of Hoffman's attempt to reinsert reference to Section 4.6 of the A201 into Section 9.1.1 of A121-2033 illustrates his understanding that deletion of the requirement for arbitration in 9.1.1 of the A121-2003 rendered the provision in the A201, Section 4.6, essentially irrelevant. Tr. Vol. I, 114:1–8; Trial Ex. 1015.

15. By email dated June 11, 2009, MacDonald forwarded a .pdf of the final SBP Agreement as revised (Ex. 1006) to Lawrence with the Additions and Deletions Report for the SBP Agreement (Ex. 1006).

16. Hoffman signed the SBP Agreement on July 28, 2009, which includes modified Section 9.1, "Dispute Resolution," and reads as follows:

> In an effort to resolve any claim, dispute, or other matter arising out of or related to this Agreement or breach thereof, either party may request mediation in accordance with the Construction Industry Mediation Rules of the American Arbitration Association, the costs of which shall be equally shared by the parties.

Dkt. 9-3, at 17. Section 9.1 of the Foundation Agreement and the JRS Agreement are identical to Section 9.1 of the SBP Agreement. Dkt. 9-1, at 17; Dkt. 9-6, at 18. Exs. 2001, 2002, and 2017.

17. The Court already found that the parties purposefully excluded the language that "the Agreement shall be resolved as provided in Sections 4.3 through 4.6 of A201-1997" and explicit references to arbitration from Section 9.1. Dkt. 26, at 17.

18. The Court further previously found that it was clear based on the redline drafts of the SBP Agreement that SBP and Hoffman at least discussed using binding arbitration to settle disputes, and consciously decided not to include Hoffman's proposed language that "[a]rbitration shall be utilized in accordance with A201 1997 [sic], Article 4.6" in their signed contract. All of the Agreements lack express references to Section 4.6—the arbitration section—of A201-1997. Dkt. 26, at 17.

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 8

19. MacDonald communicated to Hoffman that binding arbitration was not acceptable to Simplot as a dispute resolution method by discussions with Lawrence, by his emails, and by edits to the contract language, including the Additions and Deletions Report transmitted with the final SBP Agreement. Tr. Vol. I, 51:14–52:16; 128:5–19; Trial Exs. 1006, 1015.

20. Lawrence's repeated attempts to reinsert arbitration as a dispute resolution method into Section 9.1.1 of the Contracts, all of which were rejected, clearly indicates his understanding that arbitration was not acceptable to Simplot. Hoffman never communicated to MacDonald or Simplot that Hoffman intended to rely on the fact that Section 4.6 in the A201 was not actually redacted or stricken to assert its claims in arbitration. Tr. Vol. I, 74:1–15; Vol. II, 97:22–99:7.

21. Each of the executed Contracts contain the following provision in Section 9.2.2 EXTENT OF CONTRACT: "If anything in any document incorporated into this Agreement is inconsistent with this Agreement, this Agreement shall govern." Trial Exs. 2000.16, 2001.16, 2017.17.

22. Each of the executed Contracts contain the following provision in Section 9.2.4. "The Contract shall be governed by the law of the place where the Project is located." *Id.*

## II. CONCLUSIONS OF LAW

1. The Court has jurisdiction over the parties in this case and the subject matter therein.
2. All exhibits were admitted as evidence by joint stipulation of the parties. Dkt. 70.

3. The Court has already determined that the Federal Arbitration Act governs the Contracts at issue and applies to this case. Dkt. 26, at 6.

4. The Court's role is limited to "determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Cunico Corp. v. Custom Alloy Corp.*, 668 F. App'x 777, 777–78 (9th Cir. 2016) (quoting *Chiron Corp. v. Orto Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

5. "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *BG Grp., PLC* v. *Republic of Argentina*, 572 U.S. 25, 34 (2014) (quoting *United Steelworkers* v. *Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)); *see also Henry Schein, Inc.* v. *Archer and White Sales, Inc.*, 139 S. Ct. 524 (2019) (stating "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists") (citing 9 U.S.C. § 2). Because this dispute involves the existence of an agreement to arbitrate, no presumption in favor of arbitration is applicable here. *Mastrobuono* v. *Shearson Lehman Hutton, Inc.,* 514 U.S. 52, 57 (1995) (holding "[t]he FAA's proarbitration policy does not operate without regard to the wishes of the contracting parties."). Whether a party has submitted to arbitration is first and foremost a matter of contractual interpretation that must hinge on the intent of the parties. *Id*.

6. As the party seeking arbitration, Hoffman bears "the burden of proving the existence

of an agreement to arbitrate by a preponderance of the evidence." *Norcia* v. *Samsung Telecomms. Am., LLC*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting *Knutson* v. *Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014).

7. Courts apply ordinary state law principles governing the formation of contracts to evaluate such claims. *Davis* v. *O'Melveny & Myers*, 485 F.3d 1066, 1072 (9th Cir. 2007), *overruling on other grounds recognized by Ferguson* v. *Corinthian Coll., Inc.*, 733 F.3d 928, 937 (9th Cir. 2013). The Court has also already determined that Idaho contract law applies in this case. Dkt. 26, at 8. The parties entered into the Contracts in Idaho, Plaintiffs are Idaho residents, and the Contracts relate to Hoffman's construction work on property in Idaho. *See, Kelly* v. *Wengler*, 822 F.3d 1085, 1095 (9th Cir. 2016) (applying Idaho contract law to a stipulation entered into in Idaho where the plaintiffs were Idaho residents and the stipulation related to the defendant's business in Idaho). Additionally, the projects are located in Idaho and Section 9.2.4 of the Agreements states "The Contract shall be governed by the law of the place where the Project is located." Trial Exs. 2000, 2001, 2017.

8. Under Idaho law, "formation of a valid contract requires a meeting of the minds as evidenced by a manifestation of mutual intent to contract." *Federal Nat'l Mort. Ass'n* v. *Hafer*, 351 P.3d 622, 629–30 (Idaho 2015). The intent of the parties to contract is determined by the surrounding facts and circumstances. *J.R. Simplot Co.* v. *Bosen*, 167 P.3d 748, 751 (Idaho 2006).

9. When interpreting a contract under Idaho law, "[a] court must look to the contract

FINDINGS OF FACT AND CONCLUSIONS OF LAW - 11

as a whole and give effect to every part thereof." *Steel Farms, Inc.* v. *Croft & Reed, Inc.*, 297 P.3d 222, 229 (Idaho 2012). "In the absence of ambiguity, the document must be construed in its plain, ordinary and proper sense, according to the meaning derived from the plain wording of the instrument." *C & G, Inc.* v. *Rule*, 25 P.3d 76, 78 (Idaho 2001). "A contract term is ambiguous when there are two different reasonable interpretations or the language is nonsensical." *Potlatch Educ. Ass'n* v. *Potlatch Sch. Dist. No. 285*, 226 P.3d 1277, 1280 (Idaho 2010) (cleaned up). "Whether a contract is ambiguous is a question of law, but interpreting an ambiguous term is an issue of fact." *Id*. "Only when a document is ambiguous is parol evidence admissible to discover the drafter's intent." *Buku Props. LLC v. Clark*, 291 P.2 1027, 1033 (Idaho 2012).

10. The Court has already concluded that "[i]n reviewing the Agreements as a whole and giving effect to each provision, there is ambiguity at least on the face of the written contracts in what the parties meant by incorporating A201-1997 "as modified" into their Agreements." Dkt. 26, at 12. The testimony at trial reinforced this finding. An ambiguity exists as to whether the Contracts include the arbitration provision in Section 4.6 of the A201-1997 because the signed Agreements only incorporated the A201-1997 "as modified." Accordingly, "[p]arol evidence may be considered to aid a trial court in determining the intent of the drafter of a document[.]" *Steel Farms, Inc.*, 297 P.3d at 229 (quoting *In re Estate of Kirk*, 907 P.2d 794, 801 (Idaho 1995)).

11. Based on the findings of fact above, Simplot never agreed to arbitrate with Hoffman.

12. An agreement that uses the standard form language of A121-2003's "Dispute Resolution" section clearly incorporates Section 4.6 of A201-1997 into the agreement and binds the signatories to arbitrate disputes. The Court heard testimony that Simplot never intended to agree to arbitration. By striking the language incorporating Section 4.6 in Section 9.1 of the Agreements, Simplot clearly expressed its intent to modify the A201-1997 by deleting the arbitration requirement in Section 4.6. *See, e.g., Parrott* v. *Wallace*, 900 P.2d 214, 220 (Idaho Ct. App. 1995) (finding there must be actual "evidence of intent" that a party intended to delete a contract provision); *U-Haul Co. of Idaho* v. *Armstrong*, 684 P.2d 1008, 1010 (Idaho Ct. App. 1984). The fact that the parties did not actually then delete Section 4.6 in the A201-1997 itself does not change this conclusion because the parties deleted the standard language incorporating Section 4.6 from the actual signed Agreements. *See Glenn H. Johnson Const. Co.* v. *Board of Educ.*, 614 N.E. 2d 208, 212 (Ill. Ct. App. 1993); *In re Premont Independent School Dist.*, 225 S.W.3d 329 (Tx. Ct. App. 2007). Regardless, there was no meeting of the minds on this matter because while Simplot thought it had made its position on arbitration clear, Hoffman unsuccessfully continued to try to insert language requiring arbitration contrary to Simplot's wishes.

13. The Court also heard testimony that Hoffman intended to rely on the specific arbitration provision in Section 4.6 of the A201 despite the deletion of standard

language incorporating that provision in Section 9.1.1 of the signed Agreements. As explained above, however, there was no meeting of the minds on this point because it is not apparent Hoffman ever communicated its intent to Simplot.

14. Principles of merger, incorporation, and integration notwithstanding, the signed Agreements specifically state that: "If anything in any document incorporated into this Agreement is inconsistent with this Agreement, this Agreement shall govern." Trial Exs. 2000.16, 2001.16, 2017.17.

15. The final signed SBP Agreement includes the modified Section 9.1.1, which defines "Dispute Resolution" as follows:

> In an effort to resolve any claim, dispute, or other matter arising out of or related to this Agreement or breach thereof, either party may request mediation in accordance with the Construction Industry Mediation Rules of the American Arbitration Association, the costs of which shall be equally shared by the parties.

The Foundation Agreement's and JRS Agreement's Section 9.1 are identical to the SBP Agreement's Section 9.1, and the parties intended that the Foundation Agreement and JRS Agreement would be consistent with the SBP Agreement. Thus, regardless of what A201 (or any other incorporated document) outlined, Section 9.1.1 governs.

16. Relatedly, there is conflicting evidence regarding whether—or to what degree—A201's General Conditions were incorporated into the Agreements by reference.

17. Hoffman has not proved "the existence of an agreement to arbitrate by a preponderance of the evidence." *Norcia*, 845 F.3d at 1283. There was no meeting

of the minds as to whether the parties agreed to utilize arbitration under Section 4.6 of the A201.

## III. ORDER

1. No arbitration agreement exists under the signed Agreements between the parties in this suit.

2. Litigation as to the underlying disputes may commence in state or federal court at the parties' discretion.

DATED: January 24, 2022

David C. Nye
Chief U.S. District Court Judge